**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANCED GYNECOLOGY AND LAPAROSCOPY OF NORTH JERSEY, P.C., AESTHETIC & RECONSTRUCTIVE SURGEONS LLC, ATLANTIC PEDIATRIC ORTHOPEDICS PA, BERGEN SURGICAL SPECIALISTS, P.A., EAST COAST AESTHETIC SURGERY P.C., GARDEN STATE BARIATRICS & WELLNESS CENTER LLC, HACKENSACK VASCULAR SPECIALISTS LLC, HERITAGE GENERAL AND COLORECTAL SURGERY, PA, JERSEY INTEGRATIVE HEALTH & WELLNESS, P.C., NEW JERSEY SPINAL MEDICINE AND SURGERY, P.A., NJ BARIATRIC INSTITUTE LLC, NEW JERSEY SPINE INSTITUTE, P.A. f/k/a SOMERSET ORTHOPEDICS ASSOCIATES, P.A., NORTH JERSEY LAPAROSCOPIC ASSOCIATES, LLC, NEW JERSEY BRAIN AND SPINE, P.C.,  PREMIER OB/GYN GROUP, P.C., PROFESSIONAL ORTHOPAEDIC ASSOCIATES, P.A., JULIE M KELLER MD LLC d/b/a RESTORATION ORTHOPAEDICS, SPINE SURGERY ASSOCIATES & DISCOVERY IMAGING, PC, | Hon. _____, U.S.D.J.<br><br>Hon. _____, U.S.M.J.<br><br>Civil Action No.<br><br><br>**COMPLAINT  AND  JURY DEMAND** |

STEPHEN SILVER PA, SURGXCEL LLC and
TRI-STATE SURGERY CENTER, LLC,

Plaintiffs,

v.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY and CONNECTICUT GENERAL
LIFE INSURANCE COMPANY,

Defendants.

- ii -

# TABLE OF CONTENTS

Page

COMPLAINT AND JURY DEMAND ......................................................... 1

INTRODUCTION ..................................................................................... 2

NATURE OF THE CLAIMS ..................................................................... 3

OVERVIEW OF CIGNA'S VIOLATIONS OF ERISA AND STATE LAWS ........................... 5

OVERVIEW OF CIGNA'S RICO VIOLATIONS .................................... 7

THE PARTIES ......................................................................................... 14

JURISDICTION AND VENUE ................................................................ 19

FACTUAL ALLEGATIONS ..................................................................... 20

    I.     Cigna Underpays the Plaintiffs in Violation of Federal and State Law ................ 20

          A.     The Plaintiffs ............................................................................ 20

          B.     The Plaintiffs' Out-of-Network Status ...................................... 21

          C.     The Cigna Subscribers Regularly Seek Treatment from Plaintiffs for which Cigna Must Reimburse Plaintiffs under the Terms of its Plans. ...... 22

          D.     Emergency Mandates and Reimbursement Requirements. ....... 24

          E.     Cigna Must Reimburse Plaintiffs According to New Jersey Prompt Pay Requirements for Non-ERISA Claims ....................................... 27

          F.     For ERISA Plans, Cigna Must Provide Plaintiffs With a Full and Fair Review. ....................................................................................... 31

          G.     Cigna's Fiduciary Status ........................................................... 33

          H.     Plaintiffs Receive Complete Assignments of Benefits under the Cigna Plans for Treatment Provided to Cigna's Subscribers. ............... 37

          I.     Cigna Grossly and Unlawfully Underpays Plaintiffs' Claims. .... 43

          J.     Cigna Violates the Terms of the Applicable Plans and the ACA Greatest of Three Through Intentional Misrepresentations. ...... 45

          K.     Cigna Benefits From Its Fiduciary Breaches to Plaintiffs' Detriment. ...... 50

          L.     Plaintiffs Exhaust Available Internal Appeals Remedies. .......... 53

    II.     Cigna's Multiple RICO Violations ......................................................... 56

A.  Overview .................................................................................................56

B.  The RICO Enterprises ...........................................................................58

C.  Cigna's Pattern of Racketeering Activity .................................59

    1.  Relatedness ...............................................................................60

    2.  Continuity .................................................................................62

D.  Cigna Illegally Profits From the Repeated Use of the Mails and Wires, and Embezzlement and Conversion of Cigna Plan Enterprise Funds, Through Cigna's Schemes to Defraud. .........................................63

    1.  Cigna Transfers the Full Claim Amount to Its Own Account and Embezzles and/or Converts Cigna Plan Enterprise Assets Based on Fraudulent Misrepresentations Made Through the Fictitious Contracting Scheme. ......................................................67

    2.  Cigna Conspires With Repricing Companies for Improper Cost-Containment Fees Through the Repricing Reduction Scheme. .......................................................................................72

    3.  Cigna Misrepresents the Improper Adjustments on EOBs Through the Mails and/or Wires Through the Contradictory EOB Scheme. ...................................................................................76

    4.  Cigna Conspires with Repricing Companies to Accomplish its Goals Through the Forced Negotiations Scheme. .........................82

    5.  Additional Examples of the Cigna Fraudulent Schemes ..............89

E.  The Impact of Cigna's Conduct ..............................................................102

CAUSES OF ACTION ........................................................................................ 103

COUNT ONE (BREACH OF PLAN PROVISIONS FOR BENEFITS IN  VIOLATION OF ERISA § 502(A)(1)(B)) ................................................................ 103

COUNT TWO (BREACH OF  FIDUCIARY DUTIES OF LOYALTY  AND DUE CARE IN VIOLATION OF ERISA) ................................................................ 105

COUNT THREE (DENIAL OF FULL AND FAIR REVIEW  IN VIOLATION OF ERISA § 503) ................................................................................................ 109

COUNT FOUR (VIOLATION OF 18 U.S.C. § 1962(C)) ......................................... 112

COUNT FIVE (VIOLATION OF 18 U.S.C. § 1962(D) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(C)) ................................................................ 116

COUNT SIX (VIOLATION OF 18 U.S.C. § 1962(A)) ............................................. 120

COUNT SEVEN (VIOLATION OF 18 U.S.C. § 1962(D) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(A)) ................................................................ 122

COUNT EIGHT (BREACH OF CONTRACT – NON-ERISA) ................................. 124

- iv -

COUNT NINE (BREACH OF THE DUTY OF GOOD FAITH AND  FAIR DEALING – NON-ERISA)................................................................................................. 125

COUNT TEN (DECLARATORY JUDGMENT - 28 U.S.C. § 2201)....................................... 129

COUNT ELEVEN (BREACH OF FIDUCIARY DUTY – NON-ERISA)................................ 131

COUNT TWELVE (UNJUST ENRICHMENT)....................................................................... 133

COUNT THIRTEEN (TEMPORARY AND PERMANENT INJUNCTIVE RELIEF)............ 134

COUNT FOURTEEN (VIOLATION OF NEW JERSEY'S COVERAGE AND PAYMENT MANDATES)................................................................................................... 135

COUNT FIFTEEN (VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT)............. 137

JURY DEMAND ..................................................................................................................... 139

NOTICE TO ATTORNEY GENERAL OF ACTION ............................................................. 139

PRAYER FOR RELIEF .......................................................................................................... 140

CERTIFICATION UNDER L. CIV. R. 11.2........................................................................... 144

LOCAL RULE 201.1 CERTIFICATION................................................................................. 145

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs  Advanced Gynecology and Laparoscopy of North Jersey, P.C. ("Advanced Gynecology"), Aesthetic & Reconstructive Surgeons, LLC ("AR Surgeons"), Atlantic Pediatric Orthopedics PA ("Atlantic Orthopedics"), Bergen Surgical Specialists, P.A. ("Bergen Surgical"), East Coast Aesthetic Surgery, P.C. ("East Coast Aesthetic"), Garden State Bariatrics & Wellness Center LLC ("Garden State Bariatrics"), Hackensack Vascular Specialists LLC ("Hackensack Vascular"), Heritage General and Colorectal Surgery, PA ("Heritage General"), Jersey Integrative Health & Wellness, P.C. ("Jersey Integrative"), New Jersey Spinal Medicine and Surgery, P.A. ("NJSMS"), NJ Bariatric Institute LLC ("NJ Bariatric"), New Jersey Spine Institute, P.A. f/k/a Somerset Orthopedics Associates, P.A. ("NJ Spine Institute"), North Jersey Laparoscopic Associates, LLC ("North Jersey Laparoscopic"),  New Jersey Brain and Spine, P.C. ("NJ Brain and Spine"), Premier OB/GYN Group, P.C. ("Premier OB/GYN"), Professional Orthopaedic Associates, P.A. ("Professional Orthopaedic Associates"), Julie M Keller MD LLC d/b/a Restoration Orthopaedics ("Restoration Ortho"), Spine Surgery Associates & Discovery Imaging,  PC ("Spine Surgery Associates"), Stephen G. Silver, PA, SurgXcel LLC ("SurgXcel"), and Tri-State Surgery Center, LLC ("Tri-State Surgery") (collectively, "Plaintiffs"), by and through their attorneys, K&L Gates

- 1 -

LLP, for their Complaint against Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Cigna"), allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this lawsuit to expose Cigna's brazen embezzlement and conversion schemes, through which it maximizes profits by defrauding patients, healthcare providers, and health plans of insurance out of tens of millions of dollars every year.  Cigna cheats out-of-network healthcare providers, like Plaintiffs, by dramatically underpaying them for medically necessary services provided to patient beneficiaries of Cigna's health insurance benefit plans ("Cigna Plans").  Cigna then unlawfully retains funds that rightfully belong to the Cigna Plans and uses them for its own purposes.   The result is that Cigna succeeds in shifting financial responsibility for covered expenses onto the backs of patients, their employers, and Plaintiffs, while Cigna gets rich.

2.    After numerous detailed communications with Cigna management in which Plaintiffs protested Cigna's unlawful processes and procedures, Cigna informed Plaintiffs that it has no compliance department capable of addressing these issues, and encouraged Plaintiffs to initiate legal action in order to prompt Cigna to act.  Plaintiffs have decided to follow Cigna's suggestion.

- 2 -

## NATURE OF THE CLAIMS

3.    Plaintiffs practice in different medical specialties throughout the State of New Jersey, but they have been similarly victimized by the same pattern of unscrupulous conduct by Cigna.

4.    Cigna provides healthcare insurance, administration, and/or benefits to insureds or plan participants pursuant to a variety of healthcare benefit plans and policies of insurance, including employer-sponsored benefit plans and individual health benefit plans.

5.    Cigna serves in the trusted role of third-party administrator for many of the Cigna Plans on behalf of employers who sponsor health insurance benefits for their employees.  Cigna also directly funds some of the Cigna Plans.

6.    Other than Cigna HMO Plans, the Cigna Plans provide enrolled patients ("Cigna Subscribers" or "Subscribers") with access to out-of-network healthcare providers—for which the beneficiaries pay Cigna a handsome premium—giving patients the opportunity to seek the best treatment available in their geographic area. Thousands of Cigna Subscribers have chosen to receive treatment at Plaintiffs' facilities because of the excellent service they provide.  In these situations, the Cigna Plans control the amount Cigna is required to reimburse the out-of-network provider for the medically necessary services rendered to Cigna Subscribers.

- 3 -

7.     Additionally, for emergency treatment provided to Cigna Subscribers, under the terms of the Cigna Plans and by operation of law, all Cigna Plans must reimburse out-of-network providers such as Plaintiffs in an amount that ensures the Subscribers are not financially responsible for more than amounts for which they Subscribers would be otherwise responsible, such as co-payments, co-insurance, and deductibles (the "Patient Responsibility Amounts") had they been treated at an in-network facility.

8.     Cigna, however, has instead set up complex processes and procedures that result in the Cigna Plans reimbursing Plaintiffs at a fraction of their incurred charges instead of the required reimbursement amount under the Cigna Plans. Simultaneously, Cigna draws down from the trust funds of the Cigna Plans the full amount of the healthcare providers' *claims—i.e.,* not the amount *actually reimbursed* to the healthcare providers—and impermissibly retains those funds for its own purposes.  All of this is in direct violation of the terms of the Cigna Plans and applicable cost-sharing mandates under state and federal law.

9.     Accordingly, Cigna's improper payment adjustments, denials and underpayments of claims submitted for reimbursement by Plaintiffs for medically necessary elective and emergency services provided by Plaintiffs to Cigna Subscribers violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and state law.

- 4 -

10.    Cigna's schemes also violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").    As the third party administrator of self-funded ERISA Plans (the "Cigna ERISA Plans"), Cigna has engaged in a pattern of racketeering activity that includes embezzlement and conversion of funds, repeatedly and continuously using the mails and wires in furtherance of multiple schemes to defraud.

### Overview of Cigna's Violations of ERISA and State Laws

11.    As previously noted and explained in detail below, Plaintiffs' claims arise in part from Cigna's breaches of ERISA and state laws through its unlawful pattern and practice of using improper payment adjustments to drastically underpay or outright refuse to pay out-of-network providers like Plaintiffs for claims they have submitted for reimbursement of medically necessary elective and emergency treatment provided to Cigna Subscribers.  Remarkably, Cigna does this in spite of Cigna Plan terms and state and federal mandates for the emergency treatments, and even though the Cigna Plans pre-approved the non-emergency treatments, have accepted the treatments as covered services, and have entered the claims into their electronic payment processing systems based on the Cigna Plan terms.

12.    Since at least 2008, and continuing through the present, Cigna has underpaid Plaintiffs by $55,871,354.05 ($52,601,448.01 incurred and unpaid elective claims charges + $3,269,906.04 incurred and unpaid emergency claims

- 5 -

charges) less Patient Responsibility Amounts not waived by Cigna, on claims for reimbursement of medically necessary elective and emergency treatment provided to the Cigna Subscribers (the "Cigna Claims").  Detailed spreadsheets of the Cigna Claims broken out by elective and emergency claims, and each including the date of service, incurred charges, amount paid, amount owed and Cigna policy number, are attached hereto as Exhibits A and B.[1]

13.    Plaintiffs' incurred charges for the Cigna Claims total approximately $72,757,456.28, reflecting Plaintiffs' usual and customary rates for the particular medical services provided.  But Cigna has paid only a small fraction of this amount,—$16,937,637.50, which represents only 23% of its legal responsibility. Cigna has also continuously waived the Patient Responsibility Amounts under the applicable Cigna Plans through its claims adjudication process, as discussed more fully below.  Accordingly, Cigna is responsible for the full unpaid balance of the Cigna Claims $55,871,354.05 ($52,601,448.01 incurred and unpaid elective claims charges + $3,269,906.04 incurred and unpaid emergency claims charges) less any Patient Responsibility Amounts not waived by Cigna.

─────────────────────

[1] To protect the private health information of the Cigna Subscribers, Plaintiffs filed redacted versions of Exhibits A (elective claims) and B (emergency claims) identifying individual patients using a letter for each Plaintiff and unique number for each patient ("Patient Identifier"). Plaintiffs will provide unredacted versions of Exhibits A and B, including patient names, upon request and in accordance with any confidentiality order that may be entered by the Court.

- 6 -

14.     Because Cigna Subscribers continue to seek treatment by Plaintiffs, the underpayment amounts continue to accrue.

## Overview of Cigna's RICO Violations

15.     Plaintiffs' claims also arise out of Cigna's conduct of the affairs of the Cigna ERISA Plans through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5).  This pattern of racketeering involves Cigna's multiple and repeated uses of the mails and wires in furtherance of distinct but interrelated schemes to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.  It also involves Cigna's multiple acts of embezzlement, theft, and unlawful conversion or abstraction of assets of the Cigna ERISA Plans, in violation of 18 U.S.C. § 664.

16.     Cigna's violations of 18 U.S.C. §§ 1341 and 1343 further at least four distinct schemes to defraud.  The first scheme involves Cigna's use of the mails or wires to misrepresent to Plaintiffs, Cigna Subscribers, and the Cigna Plans, that Cigna drastically underpaid Plaintiffs' claims either because of a contract between an individual Plaintiff and Cigna as an in-network provider, or with a third-party leasing contractor or negotiator couched as a repricing company ("Repricing Company") to accept discounted rates (the "Fictitious Contracting Scheme").  Both explanations are patently false.  While repricing of in-network claims is permissible when there is an existing contract between a provider and Cigna, Plaintiffs are *out-of-network providers* who have not contracted with Cigna or any Repricing

- 7 -

Company.  Cigna profits from improperly withholding these payments from Plaintiffs by transferring ERISA Cigna Plan trust assets to a Cigna controlled bank account (which it otherwise is entitled to do under contracts between the ERISA Cigna Plans and Cigna) and earning interest off of funds that are rightfully Plaintiffs' under the ERISA Cigna Plans.  Cigna also embezzles or converts ERISA Cigna Plan trust assets by charging the ERISA Cigna Plans improper "cost-containment" fees.

17.    Cigna's second scheme to defraud involves its conspiring with the Repricing Companies to underpay Plaintiffs' Cigna Claims via a euphemistically named "cost-containment process" that it misrepresents to the Cigna ERISA Plans as a cost-savings mechanism to save the Cigna ERISA Plans money on out-of-network claims administration (the "Repricing Reduction Scheme").  Through this scheme, every out-of-network claim is sent through the wires to a Repricing Company where the Repricing Company recommends to Cigna that Cigna pay a deeply slashed reimbursement rate.   Cigna invariably adopts that recommendation and processes the claim for (under)payment.  Cigna's contracts with the Cigna ERISA Plans falsely state that this process is only applied to claims for which the Repricing Company has an existing contract with an out-of-network provider.  Cigna uses these gross misrepresentations as cover for its embezzlement or conversion of ERISA Cigna Plan trust assets in the guise of cost-containment fees based on a

- 8 -

percentage of the "savings."   Cigna then pays a commission to the Repricing Companies that is similarly based on a percentage of "savings."

18.    Cigna's third scheme to defraud involves its false and inconsistent statements on Cigna-issued Electronic Remittance Advice or paper Explanation of Benefits forms (collectively, the "EOB") (the "Contradictory EOB Scheme").  When processing a claim by an out-of-network provider, Cigna will state on an ERA or EOB issued to a healthcare provider (a "Provider EOB") that the amounts wrongfully retained by Cigna are not covered under the terms of the pertinent Cigna ERISA Plan or are subject to certain "adjustments" that are inconsistent with the terms of the Cigna ERISA Plans.  For example:

Summary of a claim for services on May 17, 2018

for services provided by █████████

| Amount Billed | $62,405.00 | This was the amount that was billed for your visit on 05/17/2018. |
|---|---|---|
| Discount | $0.00 | CIGNA negotiates discounts with health care professionals and facilities to help you save money. Using an in-network option is one way you can save. Visit myCIGNA.com or call Customer Service to learn more. |
| Amount not covered | $59,420.82 | This is the portion of your bill that's not covered by your plan. You may or may not need to pay this amount. See the Notes section on the following pages for more information.   The total amount of what is not allowed and/ or not covered is $59,420.82 of which you owe $59,420.82. |
| What your plan paid | $2,088.93 | This is a correction of a previously processed claim. |
| What I owe | $60,316.07 | This is the amount you owe after your discount, your plan paid, and what your accounts paid. People usually owe because they may have a deductible, have to pay a percentage of the covered amount, or for care not covered by their plan. Any amount you paid since care was received may reduce the amount you owe. |
| You saved | 3% | You saved $2,088.93 (or 3%) off the total amount billed. This is a total of your discount and what your plan paid.  To maximize your savings, visit www.myCIGNA.com or call customer service to estimate treatment costs, or to compare cost and quality of in-network health care professionals and facilities. |

19.    But on the EOBs issued to the Cigna Subscribers *for the same claims* (the "Patient EOB"), Cigna will report completely different information.   For

- 9 -

example, Cigna may falsely state that Plaintiffs are either contracted with Cigna to accept certain rates, or have agreed with Cigna or a Repricing Company to accept a "discount;" both complete fabrications.  The following Patient EOB for the same claim as referenced in the preceding paragraph contains entirely inconsistent information:

Summary of a claim for services on May 17, 2018

for services provided by █████████████

| | | |
|---|---|---|
| Amount Billed | $62,405.00 | This was the amount that was billed for your visit on 05/17/2018. |
| Discount | $59,420.82 | **You saved $59,420.82.**  CIGNA negotiates discounts with health care professionals and facilities to help you save money. |
| What your plan paid | $2,088.93 | Your plan paid $2,088.93 to █████████████ This is a correction of a previously processed claim. |
| What I owe | **$895.25** | This is the amount you owe after your discount, your plan paid, and what your accounts paid. People usually owe because they may have a deductible, have to pay a percentage of the covered amount, or for care not covered by their plan.  Any amount you paid since care was received may reduce the amount you owe. |
| You saved | **98%** | You saved $61,509.75 (or 98%) off the total amount billed. This is a total of your discount and what your plan paid.<br>To maximize your savings, visit www.myCIGNA.com or call customer service to estimate treatment costs, or to compare cost and quality of in-network health care professionals and facilities. |

20.    In this example, Cigna has told the provider that the unlucky Cigna Subscriber owes it $60,316.07 as the amount not covered under the Subscriber's Plan, but has told the Subscriber that he/she owes the provider only $895.25 because Cigna negotiated a 98% discount with the provider.   In doing this, Cigna misrepresents to Cigna Subscribers that the amounts improperly adjusted by Cigna are "discounts."  This misrepresentation appears on most Cigna Claim Patient EOBs.

- 10 -

21.     Cigna's fourth scheme to defraud involves its conspiracy with the Repricing Companies to force out-of-network providers like Plaintiffs to enter into negotiations for payment of valid claims, with the goal of either coercing or wearing down the providers so they accept drastic underpayments for the claims (the "Forced Negotiations Scheme").  In conspiracy with Cigna, the Repricing Companies send offer letters through the mails designed to intimidate and coerce out-of-network providers such as Plaintiffs to accept the settlement offers.  In some instances, the Repricing Companies will threaten that the services provided to the Cigna Subscriber will not be covered at all, or that they will be reimbursed at a percentage of the Medicare rate.  And, as expected, the Pricing Companies will reimburse the providers even grossly insufficient amounts only if the provider waives all rights to additional payment.

22.     The following is an example of Cigna's Forced Negotiations Scheme, whereby a provider Plaintiff rejected an offer of payment for $30,550 of total incurred charges of $41,680 from MARS, a Repricing Company contracted by Cigna.

> I have received your counter offer. The best that I can offer for this service is $30,550.00. Otherwise, I will have to send the claim back to the payor for processing, with no guarantee of a set payment rate. I cannot accept any counter offers, as this is the absolute maximum that I am authorized to allow. A settlement will help to expedite payment, and create payment clarity. Please email or fax the executed agreement to my attention to begin the payment process.

23.     Once the provider refused the settlement offer, Cigna processed the claim, improperly misstated that the Cigna Plan covering the Cigna Subscriber only

- 11 -

paid a percentage of Medicare, and reimbursed only $1,858.55, or *4.5% of the total incurred charges* for the services rendered by the provider Plaintiff.

| Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Procedure Code Amount | Allowed Amount | Not Covered/ Discount | Deduct/Copay Amount | Coinsurance Amount | DRG / Per Diem / APC Type | DRG / Per Diem / APC Number | DRG/Per Diem Amount Billed | DRG/ Per Diem Benefit Amount | Plan Benefit | See Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

| PATIENT NAME: | | | PATIENT#: 371940A | | | OPERATION LOCATION/GROUP# 24633-9-2443694 RECEIVE DATE: 11/01/2019 PROCESS DATE: 12/17 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PATIENT'S RELATIONSHIP TO SUBSCRIBER: | SUBSCRIBER | | PROVIDER NETWORK STATUS: | OUT OF NETWORK | | | | | | | | | | |
| SUBSCRIBER NAME: | | | SUBSCRIBER#: | U01841748 | | REF#: 9681930696467 | | | | | CHECK#: 00564374251 | | | |
| 10162019 | 43775 | | 36500.00 | | 2351.25 | 34148.75 | | 940.50 | | | 0.00 | 0.00 | 1410.75 | A0 |
| 10162019 | 49905 | | 3180.00 | | 605.97 | 2574.03 | | 242.39 | | | 0.00 | 0.00 | 363.58 | A0 |
| 10162019 | 63235 | | 2000.00 | | 140.37 | 1859.63 | | 56.15 | | | 0.00 | 0.00 | 84.22 | A0 |
| | TOTAL | | 41680.00 | | 3097.59 | 38582.41 | | | | | | | 1858.55 | |

24.   Cigna has repeatedly used the mails and wires in furtherance of each of the four schemes to defraud.  As described more fully below, this includes, among other things:

- Electronic processing of Plaintiffs' claims, including electronic bank transfers and payments, at pre-determined amounts based on improper coding combinations, mainly based on the false premise that Plaintiffs are in-network providers or have contracts with Repricing Companies to accept discounts;

- Transmittal of electronic or mailing of paper Provider EOBs that state that the underpaid claim amounts retained by Cigna are not covered by the Plan, based on Plaintiffs' agreement to accept an in-network or otherwise reduced rate based on a non-existent contract with either Cigna or a Repricing Company, or other improper adjustment; and

- Transmittal of electronic or mailing of paper Patient EOBs to Cigna Subscribers falsely asserting that Plaintiffs agreed to accept a deep discount and that Cigna obtained an extremely favorable savings on the claim to the Cigna Subscribers' benefit.

- 12 -

25.     Through these four schemes, Cigna improperly deprives Plaintiffs and the Cigna ERISA Plans of funds and profits by engaging in any or all of the following conduct, among others:  (1) embezzling and/or converting the amount characterized as a "discount" on the Patient EOB that is rightfully due and owing to the Plaintiffs under the terms of the Cigna ERISA Plans; (2) earning interest on these amounts, and (3) wrongfully profiting through embezzlement and/or conversion of ERISA Cigna Plan trust assets based on cost containment fees calculated as a percentage of the "discounted" amount.

26.     In carrying out these schemes, and through other conduct detailed below, Cigna has not only engaged in predicate acts of mail and wire fraud in violation of 18 U.S.C §§ 1341 and 1343, but has also engaged in multiple acts of embezzlement, theft, or unlawful conversion or abstraction of assets belonging to the Cigna ERISA Plans, in violation of 18 U.S.C. § 664.

27.     The foregoing conduct violates RICO in that Cigna has: (1) conducted and participated in the affairs of multiple enterprises, including the Cigna ERISA Plans and other Cigna Plans for which CIGNA serves as third-party administrator or otherwise as a Plan fiduciary, through the aforementioned patterns of racketeering activity in violation of 18 U.S.C. § 1962(c); (2) conspired with the Repricing Companies and others to do so, in violation of 18 U.S.C. § 1962(d); (3) invested the proceeds of the racketeering activities of multiple enterprises—including Cigna

- 13 -

itself and the Repricing Companies—in violation of 18 U.S.C. § 1962(a); and (4) conspired with the Repricing Companies and others to do so, in violation of 18 U.S.C. § 1962(d).

28.     Plaintiffs have been injured in their business and property and, thus, have standing to pursue a civil RICO action against Cigna under 18 U.S.C. § 1964(c).

## THE PARTIES

29.     Plaintiff Advanced Gynecology is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 2025 Hamburg Turnpike, Suite C, Wayne, New Jersey 07470.  Advanced Gynecology is a company whose physicians practice in the area of general gynecology.

30.     Plaintiff AR Surgeons is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 113 Essex St, Maywood, NJ 07607.  AR Surgeons is a company whose physicians practice in the area of aesthetic and reconstructive plastic surgery.

31.     Plaintiff Atlantic Orthopedics is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 1131 Broad Street, Suite 202, Building B, Shrewsbury, New Jersey 07702.  Atlantic Orthopedics is a company whose physicians practice in the area of pediatric orthopedic medicine.

- 14 -

32.     Plaintiff Bergen Surgical is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 211 Essex Street, Suite 102, Hackensack, NJ 07601.  Bergen Surgical is a company whose physicians practice in the area of vascular medicine.

33.     Plaintiff East Coast Aesthetic is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 125 Prospect Avenue, Hackensack, New Jersey 07601.  East Coast Aesthetic is a company whose physicians practice in the area of aesthetic and reconstructive plastic surgery.

34.     Plaintiff Garden State Bariatrics is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 1430 Hooper Avenue, Suite 203, Toms River, New Jersey 08753. Garden State Bariatrics is a company whose physicians practice in the area of bariatric surgery.

35.     Plaintiff Hackensack Vascular is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 211 Essex Street, Suite 102, Hackensack, NJ 07601.  Hackensack Vascular is a company whose physicians practice in the area of vascular medicine.

36.     Plaintiff Heritage General is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 261

Old Hook Road, Westwood, New Jersey 07675.  Heritage General is a company whose physicians practice in the area of general, colon and rectal surgery.

37.    Plaintiff Jersey Integrative is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 901 Route 23, Second Floor, Pompton Plains, New Jersey 07444.  Jersey Integrative is a company whose physicians practice in the areas of sports medicine and spine care.

38.    Plaintiff NJSMS is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 113 Essex Street, #201, Maywood, New Jersey 07607.  NJSMS is a company whose physicians practice in the area of spine surgery.

39.    Plaintiff NJ Bariatric is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 800 Lanidex Plaza, Suite 100, Parsippany, New Jersey 07054.  NJ Bariatric is a company whose physicians practice in the area of bariatric surgery.

40.    Plaintiff NJ Spine Institute is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 1 Robertson Drive, Suite 11, Bedminster, New Jersey 07921.  Spine Surgery Associates is a company whose physicians practice in the area of spine surgery.

41.    Plaintiff North Jersey Laparoscopic is a privately held limited liability company organized under the laws of the State of New Jersey, with its principal

- 16 -

place of business at 222 Cedar Lane, Suite 201, Teaneck, New Jersey 07666.  North Jersey Laparoscopic is a company whose physicians practice in the area of bariatric surgery.

42.     Plaintiff NJ Brain and Spine is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 680 Kinderkamack Road, Suite 300 (3rd Floor), Oradell, New Jersey 07649.  North Jersey Spine is a company whose physicians practice in the areas of brain and spine surgery.

43.     Plaintiff Premier OBGYN is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 255 W. Spring Valley Avenue, Suite 102, Maywood, New Jersey 07607.  Premier OBGYN is a company whose physicians practice in the area of general gynecology and obstetrics.

44.     Plaintiff Professional Orthopaedic Associates is a privately held association organized under the laws of the State of New Jersey, with its principal place of business at 776 Shrewsbury Avenue, Suite 105, Tinton Falls, New Jersey 07724.   Professional Orthopaedic Associates is a company whose physicians practice in the areas of sports and orthopaedic medicine.

45.     Plaintiff Restoration Ortho is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 113

- 17 -

Essex Street #201, Maywood, New Jersey 07607.  Restoration Ortho is a company whose physicians practice in the areas of sports and orthopaedic medicine.

46.     Plaintiff Spine Surgery Associates is a privately held company organized under the laws of the State of New Jersey, with its principal place of business at 280 Newton Sparta Road, Newton, New Jersey 07860.  Spine Surgery Associates is a company whose physicians practice in the area of spine surgery.

47.     Plaintiff Stephen G. Silver, P.A. is a privately held association in the State of New Jersey, with a principal place of business at 360 Essex Street, Suite 303, Hackensack, New Jersey 07601.  Dr. Silver practices in the area of orthopedic surgery.

48.     Plaintiff SurgXcel is a privately held limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 15 Hoffman Avenue, Lake Hiawatha, New Jersey 07034-2320. SurgXcel is a company who provides medically necessary physician assistant services.

49.     Plaintiff Tri-State Surgery is a limited liability company organized under the laws of the State of New Jersey, with its principal place of business at 3 Winslow Place, Paramus, New Jersey 07652.  Gartner Plastic Surgery is a company whose physicians practice in the area of aesthetic and reconstructive plastic surgery.

- 18 -

50.    Defendant Cigna Health and Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business at 900 Cottage Grove Road, Wilde Building, Bloomfield, CT 06152, and a registered agent located at CT Corporation System, One Corporate Center, Hartford, CT 06103-3220.

51.    Defendant Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business at 900 Cottage Grove Road, Wilde Building, Bloomfield, CT 06152, and a registered agent located at CT Corporation System, One Corporate Center, Hartford, CT 06103-3220.

52.    Cigna is in the business of underwriting, selling, and administering health benefit plans and policies of health insurance.  According to Cigna, it provides benefits under a variety of health benefit plans, including individual health benefit plans and group plans, including employer-sponsored plans.

## JURISDICTION AND VENUE

53.    This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims against Cigna, in Counts One through Three, under ERISA.

- 19 -

54.     This Court also has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims against Cigna, in Counts Four, Five, Six, and Seven, under RICO.

55.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims against Cigna, in Counts Ten through Sixteen, because these claims are so related to Plaintiffs' federal claims that the state law claims form a part of the same case or controversy under Article III of the United States Constitution.  The Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

56.     This Court has personal jurisdiction over Cigna because Cigna carries on one or more businesses or business ventures in this judicial district; there is the requisite nexus between the business(es) and this action; and Cigna engages in substantial and not isolated activity within this judicial district.

57.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this District.

## FACTUAL ALLEGATIONS

## I.     Cigna Underpays the Plaintiffs in Violation of Federal and State Law.

### A.     The Plaintiffs

58.     Plaintiffs are New Jersey provider groups who have and continue to provide medically necessary emergency and elective care to Cigna Subscribers.

- 20 -

Those Plaintiffs who provide emergency medical treatment are required by law to provide such care to any patient, regardless of the patient's ability to pay and regardless of the source of insurance payment.  A patient's ability to pay in no way affects or impedes Plaintiffs' delivery of emergency healthcare.

### B.     The Plaintiffs' Out-of-Network Status

59.     Healthcare providers are either "in-network" or "out-of-network" with respect to a particular insurance carrier.  "In-network" or "participating" providers are those who contract with a health insurer that requires them to accept discounted negotiated rates as payment in full for covered services.

60.     "Out-of-network" or "non-participating" providers are those that do not have contracts with an insurance carrier to accept discounted rates and instead set their own fees for services based on a percentage of charges.

61.     Plaintiffs have been, and remain, willing to become in-network providers with Cigna, provided that Cigna is willing to provide in-network rates that would be sufficient to allow Plaintiffs to sustain themselves, meet their continuing obligations to provide quality healthcare services, and generate a reasonable profit. To date, however, Plaintiffs have been unable to negotiate sustainable in-network rates with Cigna.

- 21 -

C. **The Cigna Subscribers Regularly Seek Treatment from Plaintiffs for which Cigna Must Reimburse Plaintiffs under the Terms of its Plans.**

62.     Despite Plaintiffs' out-of-network status, Cigna Subscribers regularly seek treatment from Plaintiffs.   Plaintiffs have treated thousands of Cigna Subscribers since January 2, 2008.   In many cases, Cigna Subscribers pay significantly higher premiums for the inclusion of "out-of-network" benefits in their Plans in order to have access to out-of-network providers and obtain necessary medical services from the providers and facilities of their choice.

63.     The Cigna Plans reimburse Cigna Subscriber for certain healthcare costs, defined in the plans as "Covered Expenses," which are expenses incurred by the Subscriber for eligible services that are covered under the plan and medically necessary.   When a claim for reimbursement for a covered expense is submitted by a Cigna Subscriber or, through assignment, by a provider or facility, Cigna determines what part of the charge is considered for coverage by the plan.   This amount is known as the "allowed amount."

64.     With respect to elective out-of-network claims, such as those submitted by the similarly situated Plaintiffs, the Cigna Plans state that Cigna's repayment obligation is limited to the "Maximum Reimbursable Charge" ("MRC") for Covered Expenses.   Upon information and belief, in many instances, MRCs for Plaintiffs' claims are the total incurred charges for the services rendered to the Cigna

- 22 -

Subscribers.  The bases Cigna relies on to calculate MRCs, however, intentionally lack transparency to provide cover for Cigna's fraudulent schemes and to confound Plaintiffs and the Cigna Subscribers.  Doing so prevents Plaintiffs and the Cigna Subscribers from being able to determine:  (1) whether their claim has been adequately reimbursed and (2) the correct Patient Responsibility Amount.  Tactics employed by Cigna to obfuscate their actions include non-disclosed databases, coding and payment methodologies, and benefit limitations determined solely by Cigna.

65.    Cigna intentionally obfuscates its bases for the MRC calculations to provide cover for its underpayments to the Plaintiffs, despite the fact that Cigna *pre-approves* covered treatments prior to a Plaintiff's providing such treatment to a Cigna Subscriber.  Pre-approval from Cigna includes confirmation by Cigna that the Plaintiff is an out-of-network provider, that the Cigna Subscriber has a valid health insurance policy, that the services sought are covered under the Cigna Plan terms, and that the payment would be directed to the Plaintiff, and acknowledgement of the Cigna Subscriber's assignment of benefits and authorization forms.  During this process, Cigna also confirms that the financial responsibility of the Cigna Subscriber is limited to the applicable coinsurance and deductible.

66.    Cigna also contracts with Repricing Companies, including MultiPlan, Inc. ("MultiPlan") and Zelis Healthcare Corp. ("Zelis"), to negotiate with providers

and facilities to reprice out-of-network claims pursuant to Cigna's "cost-containment" programs (discussed more fully below).  Upon information and belief, Cigna pays 7% to 11% of the "savings" on out-of-network claims to the Repricing Companies.

67.     These Repricing Companies typically have separate contracts with providers who agree to accept a preordained percentage discount on out-of-network claims and to make the discount available to insurers like Cigna.  Plaintiffs do not have contracts with any Repricing Companies.

68.     In all instances, Plaintiffs' billed amount (or "incurred charges") is relevant and material to the determination of the "allowed amount," which is the amount that Cigna should declare covered by its Plans, and which forms the basis for determining Cigna's reimbursement payment and the Cigna Subscribers' cost-share responsibility.  Cigna, however, determines its allowed amount after it applies improper repricing arrangements and non-existent negotiated discounts to the incurred charges for Plaintiffs' claims.

**D.     Emergency Mandates and Reimbursement Requirements.**

69.     Federal and New Jersey law requires that anyone seeking treatment at an emergency department for what they believe to be an emergency condition be stabilized and treated, regardless of the individual's insurance status or ability to pay.  Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd;

- 24 -

*N.J.S.A.* 26:2H-18.64.  In New Jersey, this "take-all-comers" statute states that "[n]o hospital shall deny any admission or appropriate service to a Patient on the basis of that Patient's ability to pay or source of payment."  Violation of EMTALA and the New Jersey Mandate subjects a provider to a civil penalty of $50,000 under EMTALA, and $10,000 under the New Jersey Mandate, for each violation.

70.     EMTALA and New Jersey regulations mandate that a hospital provide an appropriate medical screening examination to all individuals who come to an emergency department with what they believe to be an emergent or urgent condition, and stabilization treatment, if necessary.  42 U.S.C. § 1395dd(a)-(b); *N.J.A.C.* 8:43G-12.7(c).

71.     The Patient Protection and Affordable Care Act ("ACA") added Section 2719A to the Public Health Services Act ("PHS Act"), 42 U.S.C. § 300gg-19a.  Section 2719A requires any group health plan, or health insurer that provides or covers benefits with respect to services in an emergency department of a hospital, to cover any emergency services: without the need for prior authorization; without regard to the provider's status as an in-network or out-of-network provider; and in a manner that ensures that the patient's cost-sharing requirement (expressed as a copayment amount or coinsurance rate) is the same requirement that would apply if such services were provided in-network.  42 U.S.C. § 300gg-19a(b)(1).  These cost-sharing requirements are expressly incorporated into group health plans covered by

- 25 -

ERISA. *See* 29 U.S.C. § 1185d(a) (certain provisions of the PHS Act, including Section 2719A, "shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart").[2]

72.     Regulations promulgated pursuant to Section 2719A provide that, to satisfy the ACA's cost-sharing obligations, a non-grandfathered plan must pay the greatest of three possible amounts for out-of-network emergency services: (1) the amount negotiated with in-network providers for the emergency service, accounting for in-network co-payment and co-insurance obligations; (2) the amount for the emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as usual, customary and reasonable charges), but substituting in-network cost-sharing provisions for out-of-network cost-sharing provisions; or (3) the amount that would be paid under Medicare for the emergency service, accounting for in-network co-payment and co-insurance obligations. 29 CFR § 2590.715-2719A(b)(3)(i)(A)-(C) (the "Greatest of Three regulation").

---

[2] These requirements do not apply to "grandfathered plans." A plan is grandfathered if it was in existence as of March 23, 2010, and did not undergo certain changes to lose its "grandfathered" status thereafter. *See* 42 U.S.C. § 18011.

- 26 -

73.     The ACA permits balance billing of the providers' charges that exceed the allowable amount as long as there is no state prohibition on balance billing.  29 CFR § 2590.715-2719A(b)(3)(i).

74.     For non-ERISA emergency or urgent care claims submitted prior to August 30, 2018, New Jersey law required insurers such as Cigna to limit their subscribers' responsibility to the amounts they would have paid had they received treatment from an in-network facility, and pay out-of-network providers for the difference between that amount and the out-of-network providers' incurred charges. *See, e.g., Aetna Health, Inc. v. Srinivasan*, 2016 N.J. Super. Unpub. LEXIS 1515 (App. Div. June 29, 2016); *N.J.S.A.* 26:2S-6.1(a); *N.J.A.C.* 11:24-5.3(b).

75.     Thus, for almost all of the emergency or urgent care provided by Plaintiffs to Cigna Subscribers, the Cigna Plans require Cigna to pay the Plaintiffs up to their total incurred charges, less the Patient Responsibility Amount that the Cigna Subscriber would have incurred had the Subscriber sought emergency or urgent care treatment at an in-network hospital, consistent with the coverage and payment mandates described above.

**E.     Cigna Must Reimburse Plaintiffs According to New Jersey Prompt Pay Requirements for Non-ERISA Claims.**

76.     New Jersey prompt pay statutes also require insurance carriers to pay for the services provided by providers and do so promptly for non-ERISA claims.

- 27 -

This process begins with the requirement that the insurance carrier acknowledge receipt of all claims, both emergent and non-emergent, within two working days. *See N.J.S.A.* 17B:27-44.2(d)(5) and *N.J.S.A.* 26:2J-8.1(d)(5).

77.     The New Jersey prompt pay statutes require insurance carriers to pay claims within 30 days after the insurance carrier receives the claim when submitted electronically, or 40 days if received non-electronically, provided the following conditions apply:

> (a) the healthcare provider is eligible at the date of service;

> (b) the person who receives the healthcare service is covered on the date of service;

> (c) the claim is for a service or supply covered under the health benefits plan;

> (d) the claim is submitted with all the information requested by the payer on the claim form or in other instructions that is distributed in advance to the healthcare provider or covered person in accordance with the provisions of section 4 of P.L.2005, c. 352 (C.17B:30-51); and

> (e) the payer has no reason to believe that the claim has been submitted fraudulently.

*N.J.S.A.* 17B:27-44.2(d)(1) and *N.J.S.A.* 26:2J-8.1(d)(1).

78.     Accordingly, when a nonparticipating provider receives an assignment of the right to payment from a covered person, the insurance carrier is required by law to pay the provider.  *See id.*

- 28 -

79.     An insurance carrier's dispute of a portion of the claim does not excuse the carrier from payment of the entire claim:  "(4) Any portion of a claim that meets the criteria established in paragraph (1) of this subsection shall be paid by the payer in accordance with the time limit established in paragraph (1) of this subsection." *N.J.S.A.* 17B:27-44.2(d)(4) and *N.J.S.A.* 26:2J-8.1(d)(4).

80.     New Jersey regulations also mandate that insurance carriers determine coverage promptly and pay promptly to ensure patient access to emergency care regardless of the patient's type of insurance coverage.  Under this regulatory regime, New Jersey law required healthcare insurers to notify their subscribers that they were entitled to have "access" and "payment of appropriate benefits" for emergency conditions on a "24 hours a day," "seven days a week" basis.  *N.J.A.C.* 11:24A-2.5(b)(2).

81.     Prior to August 30, 2018,[3] out-of-network providers could balance bill Cigna Subscribers for charges incurred for emergency services that exceeded the allowed amount.  The OON Act modified the New Jersey prompt pay requirements

---

[3] The New Jersey Out-of-Network Consumer Protection, Transparency, Cost Containment and Accountability Act ("OON Act"), codified at *N.J.S.A.* 26:2SS-1 to -20, went into effect on August 30, 2018.  The OON Act prohibits patient balance billing for emergency services provided by out-of-network providers for non-ERISA self-funded plans.

- 29 -

so they now prohibit out-of-network providers who perform emergency services from balance billing the patient.

82.     Regarding emergency out-of-network payments, the insurer must make a determination within 20 days from the date of receipt of a claim for services whether it considers the claim to be excessive.  *N.J.S.A.* 26:2SS-9(c).  If not, the insurer must promptly pay the claim.  If so, the insurer must notify the provider of this determination within 20 days of receipt of the claim.  If the insurer provides this notification, the insurer and the provider have 30 days from the date of notification to negotiate a settlement.   The insurer may attempt to negotiate a final reimbursement amount with the out-of-network healthcare provider, which differs from the amount paid by the insurer pursuant to the requirements under *N.J.S.A.* 26:2SS-9.

83.     If no settlement is reached after 30 days, the insurer must pay the provider the insurer's final offer for the services.  If the insurer and provider cannot agree on the final offer as a reimbursement rate for these services, the insurer, provider, or patient beneficiary, as applicable, may initiate binding arbitration within 30 days of the final offer, pursuant to §§ 10 or 11 of the OON Act.

84.     Accordingly, New Jersey law requires that non-ERISA claims be paid within 30 days of electronic submission pre-August 30, 2018, and at most 50 days

- 30 -

after submission for disputed claims under the OON Act, whether subject to binding arbitration or not.

85.     New Jersey law also provides interest as a penalty against insurers such as Cigna for overdue payments in the amount of 12% per annum.  The interest must be paid to the healthcare provider at the time the overdue payment is made.  *N.J.S.A.* 17B:27-44.2(d)(9) and *N.J.S.A.* 26:2J-8.1(d)(9).

86.     Because Cigna failed to provide timely payment on the non-ERISA Cigna Claims in accordance with New Jersey requirements, Plaintiffs are entitled to statutory interest in addition to appropriate reimbursement of the underpaid claims.

### F.     For ERISA Plans, Cigna Must Provide Plaintiffs With a Full and Fair Review.

87.     As discussed above, many of the Cigna Claims are covered by employer-sponsored health benefit plans governed by ERISA, for which Plaintiffs may pursue civil remedies under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). These civil remedies include, among other things, the right to recover benefits due under the terms of ERISA plans, 29 U.S.C. § 1132(a)(1)(B), and the right to obtain appropriate equitable relief to enjoin violations of ERISA and the terms of ERISA plans, 29 U.S.C. § 1132(a)(3).

88.     Among the requirements of ERISA that Plaintiffs may judicially enforce against Cigna are the procedural protections mandated by 29 U.S.C. § 1133

- 31 -

when an ERISA plan issues an "adverse benefit determination," which is "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit" under an ERISA plan.  29 C.F.R. § 2560.503-1(m)(4).

89.    Specifically, upon issuing an adverse benefit decision, an ERISA plan must provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review of the decision by the fiduciary denying the claim. 29 U.S.C. § 1133.

90.    ERISA regulations issued pursuant to 29 U.S.C. § 1133 explain that, when an administrator of an ERISA plan issues an adverse benefit decision, it must provide written notification, in a manner calculated to be understood by the recipient, of the following: (i) the specific reason(s) for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; (iv) a description of the plan's review procedures and the time limits applicable to such procedures, including notice that the claimant has a right to bring a claim under ERISA to challenge the decision; and (v) any internal rule, guideline, protocol, or

- 32 -

other similar criterion [that] was relied upon in making the adverse determination. 29 C.F.R. § 2560-503.1(g)(1)(i)-(v).

91.    Moreover, these regulations make clear that, in the case of post-service claims submitted pursuant to group health plans, the required notification must be issued "within a reasonable period of time, but not later than 30 days after receipt of the claim." 29 C.F.R. § 2560-503.1(f)(2)(iii)(B).  This time period "may be extended one time by the plan for up to 15 days, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which the plan expects to render a decision."  *Id.*  If such an extension is necessary "due to a failure of the claimant to submit the information necessary to decide the claim, the notice shall specifically describe the required information." *Id.*

### G.    Cigna's Fiduciary Status

92.    Cigna, among other things, insures and administers employee health and welfare benefit plans, including the Cigna Plans.

93.    Most of the Cigna ERISA Plans are Administrative Services Only ("ASO") plans, for which Cigna serves as third party administrator.   Upon information and belief, Cigna serves as the named Claims Administrator for these plans and has discretion over the payment of claims.  As the designated Claims

- 33 -

Administrator in the ASO Cigna Plans, Cigna is an "administrator" under ERISA. 29 U.S.C. § 1002(16)(A)(i).

94.     Cigna also offers fully-insured plans, which are funded by Cigna itself, not the sponsoring employees.

95.     The majority of the Cigna Plans are ASO plans governed by ERISA, in that they are non-governmental employee health and welfare benefit plans maintained by employers for the benefit of their employees, and do not fall within any ERISA safe-harbor provision.

96.     ERISA provides that a person is a fiduciary with respect to a plan to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  The term "person" is defined broadly to include a corporation such as Cigna.  *Id.* § 1002(9).

97.     Upon information and belief, the ASO Cigna Plans designate Cigna as the authorized claims review fiduciary for any applicable Cigna Claims.  In doing so, the ASO Cigna Plans delegate to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the Cigna Plans.

- 34 -

98.     Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Cigna Plans also delegate to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial.

99.     Upon information and belief, Cigna includes substantially similar delegation provisions in all of its ASO Cigna Plans.

100.    Upon information and belief, Cigna also serves as the authorized claims review fiduciary for the other Cigna ERISA Plans and non-Cigna ERISA Plans at issue in this case, in that Cigna has discretionary authority over the payment of claims.

101.    As described above, Cigna is also a fiduciary in its role as claims administrator of each of the Cigna Plans at issue in this case, in that each plan delegates to Cigna discretionary authority over plan assets and administration.  In this fiduciary capacity, Cigna has processed claims and/or addressed appeals on behalf of all of the Cigna Plans at issue in this case.

102.    Cigna, as an ERISA fiduciary, must "discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries," including Plaintiffs, as assignees of the Cigna Subscribers.  29 U.S.C. § 1104(a)(1)(A)(i).

- 35 -

103.   In performing services to the Cigna ERISA Plans, Cigna must not cause the Plan to engage in a transaction Cigna knows or should know constitutes a transfer to, or use by or for the benefit of, Cigna of any Cigna ERISA Plans assets.  29 U.S.C. § 1106(a)(1)(D).

104.   As the Cigna Plans' fiduciary, Cigna must not "deal with the assets of the plan in [its] own interest or for [its] own account …."  29 U.S.C. § 1106(b)(1).

105.   The ASO Cigna Plans delegate to Cigna, as their fiduciary, discretionary authority to perform an ERISA-required full and fair review of each claim denial that has been appealed by a Plaintiff or a Plaintiff's duly authorized representative.  29 U.S.C. § 1133(2).  Accordingly, the ERISA regulations require that Cigna also provide upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to Plaintiffs' individual claims for benefits.  29 C.F.R. § 2560-503.1(h)(2)(iii).

106.   A document, record, or other information shall be considered "relevant" to a claim if such document, record, or other information:

(i)     Was relied upon in making the benefit determination;

(ii)    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii)   Demonstrates compliance with the administrative processes and safeguards required in making the benefit determination; or

- 36 -

(iv)   In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560-503.1(m)(8).

107.   For group health plans, the ERISA regulations require additional information be provided to claimants beyond the above information, including that claimants have 180 days following the receipt of a notification of an adverse benefit decision to appeal the claim, and that the review does not afford deference to the initial adverse benefit decision and is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit decision that is the subject of the appeal, nor the subordinate of such individual.  29 C.F.R. § 2560-503.1(h)(3).

**H.   Plaintiffs Receive Complete Assignments of Benefits under the Cigna Plans for Treatment Provided to Cigna's Subscribers.**

108.   Upon registration with Plaintiffs, all patients, including the Cigna Subscribers, execute an Assignment of Benefits form ("AOB").  In AOB contracts, the Cigna Subscribers assign to Plaintiffs their rights to benefits under the Cigna Plans.

- 37 -

109.   These AOB contracts provide for the assignment to Plaintiffs of all rights, benefits, and causes of action under an applicable Cigna Plans, as well as for payment of any benefits directly to Providers.

110.   The AOBs also provide for Plaintiffs to act as a Cigna Subscriber's authorized agent and representative to pursue actions to recover benefits under the applicable Cigna Plan.

111.   For example, the AOB for Plaintiff AR Surgeons states:

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any penalties or equitable relief) under my health insurance policy or benefit plan to Aesthetic & Reconstructive Surgeons, LLC and Richard Winters MD, Stephanie Cohen (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service, including without limitation, the right of one or more of the Providers, or their attorney (or other representative) to (i) execute, in my name and on my behalf, any form, document or Instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State Laws, rules, regulations or requirements (collectively, "Laws"), (ii) pursue penalties for and exclusively on behalf of Providers against any insurance policy or benefit plan for failure of the plan administrator (or other fiduciary) to timely produce or respond to requests (including appeals) for all information relating to any plan documents as required by any applicable Laws, (iii) to assert claims and initiate legal action for breach of fiduciary duty against and person or entity, and (iv) to endorse for me any checks made payable to me for benefits and claims collected toward my account.

112.  As an additional example, the AOB for Plaintiff Spine Surgery Associates states:

- 38 -

I hereby assign and convey directly to the above designated provider, as my Statutory Derivative Beneficiary (SBD), commonly known as designated authorized representative or assignee, all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services, treatments, therapies, and/or medications rendered or provided by the above-named health care provider, regardless of its managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments. I hereby authorize above designated provider to release all medical information necessary to process my claims to the fullest extent allowed under the Health Insurance Portability Accountability Act (HIPAA). I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.

I expressly assign to above designated provider any and all rights that I may have to enforce my legal rights under the Employee Retirement Income Securities Act (ERISA), Patient Protection and Affordable Care Act (PPACA), Sarbanes-Oxley Act (SOX), NJ Open Public Records Act and any other applicable state and federal law related to my healthcare benefits. This includes any and all relief to the above noted fullest extent permissible. This includes but is not limited to; 1) obtain information regarding the claim to the same extent as me; 2) submit evidence; 3) make statements about facts or law; 4) make any request including providing or receiving notice of appeal proceedings; and 5) participate in any administrative and judicial actions; and enforce any and all ERISA provisions. This also includes bringing civil action to; 1) enjoin any act or practice which violates any provision of ERISA; 2) obtain other appropriate equitable relief; 3) redress any violations of the above law; and 4) to enforce any provisions of my healthcare benefit plan terms.

I hereby authorize any and all plan administrators or fiduciaries, insurer and attorney to release to above designated provider my designated authorized representative(s)/Assignee(s) any and all plan documents, including but not limited to all Governing Plan Documents, written explanations of how level of benefit payments are determined, Summary Plan Description, Administrative Service Only (ASO) agreements and Certificate for PPACA Grandfathered Health Plan.

- 39 -

Additionally, I authorize the release of any and all financial disclosures as mandated by (SOX), (ERISA), (HIPAA) and any other state and federal law(s). This includes but not limited to insurance policy and/or settlement information, 835 EDI [Invoice to Plan Sponsor] and 837 EDI (ANSI X12 Format), 5500 Form (Plan Annual Return)(Direct or Indirect fee's), upon written request, from the Designated Authorized Representative(s) in connection with healthcare services provided by above designated provider.

I hereby consent to any and all causes of action allowed under applicable state and federal laws related to my health care benefit plan, employee benefit plan, plan administrator, insurance carrier or fiduciary in my name, with derivative standing, at provider's expense. This includes but is not limited to; 1) pursuing claims, causes of action or right against any liable party, insurance company, employee benefit plan, health care benefit plan, plan administrators or plan fiduciaries; and 2) claim any applicable statutory penalties and fee's on behalf of the plan participant, beneficiary or the plan to the extent of state and federal law(s). This assignment is valid for any and all administrative and judicial reviews under PPACA (health care reform legislation), ERISA, Medicare and applicable federal and state law(s). A photocopy, computer generated, or any other reproduction of this signature and assignment is to be considered valid, the same as if it was the original.

113.    Some of the Plaintiffs' AOBs also provide an alternative to assignment through the addition of Limited Power of Attorney ("LPOA") language.    For example, the AR Surgeons LPOA states:

In the event the insurance carrier responsible for making medical payments to Aesthetic & Reconstructive Surgeons, LLC and Richard Winters MD, Stephanie Cohen for medical services rendered to me does not accept my assignment of benefits rights, or my assignment is challenged or deemed invalid, I execute this limited/special power of attorney and appoint and authorize Provider and his/her/its attorney (or other representative) as my agent and attorney in fact, to assert any and all of my benefit and non-benefit rights for and on my behalf, including, without limitation, to bring any appeal, pre-litigation demand, demand

- 40 -

for payment, arbitration, lawsuit, independent dispute resolution or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination and payment of benefits under any insurance policy or benefit plan, I agree that any recovery shall be applied to payment due my Provider, and attorney fees and costs. To this end, Provider has exclusive settlement authority.

114.   As an additional example, the LPOA for Plaintiff NJSI states:

I, [patient], hereby appoint New Jersey Spine Institute to serve as my Agent ("Agent") and to exercise the powers and discretions set forth below:

To submit insurance claims to my health insurance carrier, benefits plan, PIP carrier, Workers' Compensation carrier, plan administrator, payor, or third party for reimbursement payments for all medical services rendered by New Jersey Spine Institute, and to exercise any appeals and other rights under my policy or benefits plan on my behalf;

To file suit and to obtain counsel and enter into legal or other actions on my behalf, including arbitration/dispute resolution processes, against my health insurance carrier benefits plan PIP carrier Workers' Compensation carrier, plan administrator, payor, or third party for any claims relating to reimbursement payments for medical services rendered by New Jersey Spine Institute.  This authorization includes the pursuit of declaratory, equitable, and compensatory relief, or other legal remedies;

To appoint an attorney to represent me directly for the collection of all insurance benefits through the carriers themselves, plan administrator payor or third party;

To appoint an attorney to represent me directly in appealing a claim to the appropriate federal agency for all federal plans;

To act on my behalf and report any suspected violations of proper claims practices to the proper regulatory authorities.

- 41 -

115.   Cigna has consented to the assignments, or otherwise waived the applicability of any anti-assignment clauses that may be in the Cigna Plan documents, through an extended course of dealing.  Among other things, Cigna not only remits its grossly inadequate payments directly to Plaintiffs, but forces Plaintiffs to pursue Cigna's internal appeals process, only to frustrate Plaintiffs once they are engaged in that process, without citing to any purported anti-assignment clauses.   Cigna also forces Plaintiffs to negotiate with third-party Repricing Companies for reimbursements they are already owed by sending Plaintiffs EOBs with express directions to negotiate with Cigna's Repricing Companies prior to balance billing the Cigna Subscribers.  This and other conduct described more fully below constitutes Cigna's waiver of any anti-assignment clause in the Cigna Plan documents and consent to its subscribers' assignments of Plan benefits to the Plaintiffs, or at a minimum, constitutes an extended course of dealing that is inconsistent with any anti-assignment clauses.

116. Moreover, this unlawful conduct by Cigna in perpetrating the fraudulent schemes—such as forcing negotiations for additional payments already due and owing to Plaintiffs under the Cigna Plans—estops Cigna from attempting to apply any anti-assignment provisions in the Cigna Plan to the Cigna Claims.  Cigna cannot have it both ways.

- 42 -

## I.   Cigna Grossly and Unlawfully Underpays Plaintiffs' Claims.

117.   During the period from approximately January 2, 2008, through and including October 16, 2019, Plaintiffs, as out-of-network providers, submitted 7,632 claims for reimbursement for medically necessary, covered, emergent and elective services rendered to Cigna Subscribers.

118.   Specifically, Plaintiffs provided medically necessary services to the Cigna Subscribers within the scope of the out-of-network benefits provided under the Cigna Plans, as follows:

   a.   During the period from approximately January 2, 2008, through and including October 16, 2019, Plaintiffs submitted 7,390 claims for reimbursement for medically necessary, covered, elective services rendered to Cigna Subscribers.

   b.   During the period from approximately February 26, 2010, through and including September 9, 2019, Plaintiffs submitted 277 claims for reimbursement for medically necessary, covered, elective services rendered to Cigna Subscribers.

119.   Plaintiffs' incurred charges for these claims for services rendered to the Cigna Subscribers total approximately $72,757,456.28.

- 43 -

120.   For out-of-network benefits for elective treatment, Cigna calculates the allowed or reimbursable amount to providers based on incurred charges, as described more fully below.

121.   For emergency services, the ACA Greatest of Three regulation and New Jersey law require Cigna to reimburse Plaintiffs at least at the in-network rate at which Cigna would reimburse contracted providers for the same services.

122.   Plaintiffs are therefore entitled to the total incurred charges for the elective and emergency claims at issue, less Patient Responsibility Amounts not waived by Cigna.

123.   Moreover, Cigna consistently waives Patient Responsibility Amounts on claims for elective and emergency services. These amounts are also due and owing to the Plaintiffs under the terms of the applicable Cigna Plans.  Through Cigna's actions in waiving the Patient Responsibility Amounts, Cigna has deprived Plaintiffs from balance billing the Cigna Subscribers for these amounts. Accordingly, Cigna should be responsible to the Plaintiffs for the Patient Responsibility Amounts they unilaterally waived.

124.   To date, however, Cigna has paid Plaintiffs a paltry portion of the $72,757,456.28 incurred by Plaintiffs for the Cigna Claims.  Cigna has only reimbursed Plaintiffs $16,937,637.50, or only 23% of its responsibility.  The current

- 44 -

unpaid balance due to the Plaintiffs by Cigna, therefore, is $55,871,354.05 as of the filing of this Complaint, and grows daily.

**J.    Cigna Violates the Terms of the Applicable Plans and the ACA Greatest of Three Through Intentional Misrepresentations.**

125.   Cigna's general business practice is to treat most claims as if Plaintiffs were contracted with Cigna or a Repricing Company to accept deeply discounted reimbursement rates.  When out-of-network providers, such as Plaintiffs, submit claims for reimbursement, generally through an electronic standard form required by HIPAA under 45 U.S.C. §164, the Cigna Plans will accept for processing or deny each billing code, or Current Procedural Technology ("CPT") code, billed by the provider for the services rendered.  Cigna calculates its reimbursement rates using as a ceiling the total billed charge amount for each CPT code accepted for processing on the electronic standard claim form.

126.   After the claims are accepted by the Plans for processing, Cigna's policy and practice is to pay most, if not all, claims at a pre-determined rate as if all providers were contracted with either Cigna or a Repricing Company to accept a discounted reimbursement rate.  Cigna electronically submits through the wires an electronic EOB.  Cigna may also send a paper EOB to the provider through the mail. The EOBs transmitted to out-of-network providers, like Plaintiffs, state that the claims have only been partially paid pursuant to improper coding combinations

- 45 -

including group numbers, for example,  "CO-" or "PR-," which signify "contractual

obligation" or "patient responsibility,"  and reason codes, for example,  "45" which,

according to the ANSI X12 Standard Transaction Reason Codes, is defined as:

> Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement. Usage: This adjustment amount cannot equal the total service or claim charge amount; and must not duplicate provider adjustment amounts (payments and contractual reductions) that have resulted from prior payer(s) adjudication. (Use only with Group Codes PR or CO depending upon liability).

127.   The CO/PR-45 code combination significantly and improperly limits

payment to out-of-network providers like Plaintiffs, although they should only be

applied where there is a contract that limits the total compensation the provider may

receive in exchange for providing treatment to Cigna Subscribers.  Group code "PR,"

in fact, should never be used where a provider contract limits the total compensation

the provider agrees to accept in exchange for providing treatment to Cigna

Subscribers.  Even where "-45" is an appropriate reason code, this adjustment should

never be borne by the patient.

128.   Plaintiffs are not within Cigna's network, however, and have not

entered into any contract with Cigna or a Repricing Company.  Plaintiffs do not have

contracts to accept a discount with any Repricing Company nor do they accept

single-claim adjustments greater than 10% to 20%.  These single-claim adjustments

are only agreed upon after extensive negotiations on a case-by-case basis.

- 46 -

129.   In addition to the "CO," "PR," and "-45" coding combination, which is the most prevalent misused combination employed by Cigna to conceal its intentional underpayment practice, Cigna also uses other improper coding combinations to conceal its intentional underpayment practice by misrepresenting to out-of-network providers, such as Plaintiffs, that the underpayments are justified.

130.   It is Cigna's standard business practice to intentionally misapply these coding combinations on its initial Provider EOBs, including those issued to Plaintiffs, based on non-existent Cigna or Repricing Company contracts.  According to Cigna, such applications "cannot be turned off" or modified.  The resulting reductions, in many cases over 90% of incurred charges for the Cigna Claims, are intentionally improper.  Accordingly, the Cigna Claims were drastically underpaid.

131.   Cigna's improper practice of underpaying out-of-network claims based on false premises is contrary to the Plans and law.

132.   Significantly, the Cigna Subscribers who seek treatment from Plaintiffs pay higher premiums, in many instances substantially higher premiums, for the right under the Plans to receive medical treatment from the provider of their choice, including from out-of-network providers such as the Plaintiffs.  Cigna's practice of underpaying Plaintiffs for the rendering of medical treatment and shifting nearly the entirety of such claims to the Cigna Subscribers by applying improper coding combinations or forced balance billing by Plaintiffs falls far below the reasonable

- 47 -

expectations of Plaintiffs—expectations that they will be paid at the appropriate rate up to incurred charges for elective claims, and using the Greatest of Three regulation for emergency/urgent care claims, less appropriate Patient Responsibility Amounts for all types of treatment.

133.  Moreover, the Repricing Companies coerce providers into accepting their unreasonably low settlement offers (despite Plaintiffs' entitlement to reimbursement under the Cigna Plan terms), by stating that the only other option for providers is to balance bill their patients.  Providers will only resort to balance billing their Cigna Subscriber patients as a last resort because they confirm, prior to performing the medically necessary services to the Cigna Subscriber, that such services are covered under the Cigna Plans.  Plaintiffs cannot even accurately determine the appropriate Patient Responsibility Amounts until the appropriate amount has been first reimbursed under the Cigna Plans.  In addition, in some instances, where the OON Act applies, such balance billing is prohibited.  Based on these scenarios, after first knowingly applying a fictitious discount to Plaintiffs' claims as a fraudulent basis for the initial underpayments, Cigna then knowingly extorts settlements for slightly higher than the initial reimbursed payment amount.  These settlements still leave Plaintiffs with a large unpaid claims balance.  In exchange for these slightly higher reimbursement rates, providers are forced to

- 48 -

waive their right to seek additional payment or interest, or to balance bill the Cigna Subscribers.

134.   Cigna takes advantage of out-of-network providers, including Plaintiffs, knowing that they have little choice other than to waste valuable administrative resources fighting for payment or to initiate legal action to seek enforcement of the Cigna Plan provisions and the law in order to be paid according to the Cigna Plans.

135.   Moreover, despite numerous detailed communications with Cigna management in which Plaintiffs brought to Cigna's attention its application of improper coding combinations and forced, improper negotiations, Cigna informed Plaintiffs that Cigna has no compliance department capable of addressing these issues and encouraged Plaintiffs to initiate legal action in order to prompt Cigna to act.

136.   The Cigna Plans expressly state that Cigna is the Claims Administrator and fiduciary with authority and control over interpreting the Cigna Plans and determining reimbursement under the Cigna Plans for each of the claims at issue in this case.  Cigna exercises discretion, authority, control and oversight in determining if the Cigna Plan benefits will be paid and the amounts of Plan benefits that will be paid.

- 49 -

137.   Cigna's improper administration of the Cigna Claims resulted in the payment of, on average, a mere 23% of the incurred charges for the medical services rendered.  This is a gross abuse of any discretionary authority that Cigna may be granted under any Cigna Plan.

## K.    Cigna Benefits From Its Fiduciary Breaches to Plaintiffs' Detriment.

138.   It is Cigna's general business practice to misrepresent the "contractual obligation," "patient responsibility," and "45" reason codes, as well as other improper coding combinations, in order to benefit itself and lower the reimbursement amount paid to Plaintiffs.

139.   Cigna's misrepresentations have resulted in a breach of its fiduciary duty to the Cigna Plans, Cigna Subscribers and to Plaintiffs, as assignees and/or agents of the Cigna Subscribers.  Cigna uses its various schemes to underpay Plaintiffs and justify retaining large portions of Cigna Plan trust funds already transferred from Cigna Plan bank accounts to Cigna's bank account.

140.   Upon information and belief, when Cigna accepts the claim CPT codes for processing, the full incurred charge amount for each CPT code is drawn from the Cigna Plan bank account and moved into a Cigna owned bank account.  For out-of-network claims, Cigna is required, as the Cigna Plans' agent, to pay Plaintiffs directly from the Cigna Plans' bank account to the out-of-network providers' bank

- 50 -

account.  45 C.F.R. § 164.  Cigna's starting point for reimbursement is 100% of the accepted CPT code billed.

141.   Cigna, however, pays only a small portion of this amount to Plaintiff providers, embezzling or converting the remaining Cigna Plan funds that are due and owing to Plaintiffs under the Cigna Plans, in a Cigna-owned interest bearing bank account.

142.   After extremely arduous provider appeals and negotiations with the Repricing Companies, Cigna sometimes makes additional payments on claims months and years after the initial underpayment.  Cigna will reprocess these claims as if they are new claims within their system, but Cigna will already be in possession of the full dollar amount of the initial claim.  The subsequently processed "new" claims do not require additional communications between Cigna and the Cigna Plans because Cigna will not need to remove additional funds from the Cigna Plans' bank accounts to pay these claims.

143.   The ERA data received by Plaintiffs confirms that all payments, both initial and subsequent, come from a Cigna owned bank account, rather than the Cigna Plans' own account.  In order to make such payments, Cigna must already be in possession of the Plan funds.

144.   Cigna wrongfully profits by: embezzling or converting the "savings" on ERISA Cigna Plan assets; wrongfully retaining non-ERISA Plan amounts that

- 51 -

are due and owing to Plaintiffs under the Cigna Plans; embezzling and/or converting Cigna ERISA Plans assets improperly retained that are due and owing to Plaintiffs under the terms of the Cigna ERISA Plans; earning interest on these amounts; and embezzling and/or converting Cigna ERISA Plans assets into cost-containment fees calculated as a percentage of savings on the same amount wrongfully retained by Cigna.

145.   Finally, Cigna also benefits from the "cost containment process," through indirect patient steering.   Cigna counts on most providers, including Plaintiffs, to not appeal for additional reimbursement or to accept the deeply discounted pre-payment offers communicated to the providers through Repricing Companies prior to Cigna's initial claims payment.

146.   If a provider rejects the pre-payment offer, receives an underpayment on the processed claim and further rejects subsequent negotiated offers from a Repricing Company, they may balance bill the patient (prior to August 30, 2018, for emergency services) the Patient Responsibility Amount. However, this amount now includes the required cost-sharing percentage under the Plan, as well as the grossly inflated amount "not covered" by Cigna who shifts responsibility for payment to the Cigna Subscriber.   Because this Patient Responsibility Amount is improperly inflated, the patient will likely forego out-of-network treatment from providers based on the large and inaccurate bill they are now required to pay.

- 52 -

## L.    Plaintiffs Exhaust Available Internal Appeals Remedies.

147.   Available appeals avenues under the Cigna Plans applicable to the Cigna Claims have either been exhausted or rendered futile by Cigna's refusal to correctly process appeals according to 29 C.F.R. § 2560.503-1.

148.   Upon information and belief, such Plans generally provide for administrative appeal of claim decisions to be processed by Cigna.  The Plaintiffs routinely file such internal appeals with the result being that Cigna adheres to their initial decision.

149.   Plans that are self-funded by the employer or other organization include provisions for appealing claims decisions.  The self-funded plans typically provide for internal appeals with Cigna and, where required, an external appeal per the summary plan description or to the Department of Labor (ERISA).  The Plaintiffs have timely requested such internal appeals for the claims under the self-funded Plans at issue.

150.   Nearly all of the claims under self-funded Plans for which the Plaintiffs have completed the internal appeals with Cigna have resulted in Cigna simply affirming its initial decision or making a slightly higher additional payment, providing little or no analysis, and leaving the claims still grossly underpaid. According to Cigna, most appeals are not even sent to the Cigna appeals department, but are instead re-routed as "reconsiderations."   Accordingly, because seeking

- 53 -

appeals results in little or no adjustment to the initial payment, and because Cigna refuses to provide any meaningful response to these appeals, or in many cases, simply reaffirms its initial reimbursement without explanation, it would be futile for the Plaintiffs to continue to seek internal or external appeals with Cigna for any further claims payments.

151.   Like the self-funded Plans, to the extent some of the claims at issue are covered by non-ERISA Plans, Plaintiffs have likewise completed the internal appeals with Cigna.  Cigna, however, simply affirmed their initial decision or paid slightly higher amounts, providing little or no analysis, and leaving the claims still grossly underpaid.  Accordingly, any additional attempts to appeal the Cigna Claims would be futile.

152.   Regardless of whether Cigna has conducted or refused to conduct the appeal procedures set forth in Cigna's own documents, Cigna has failed to fully pay the Plaintiffs for the healthcare services they have provided to Cigna Subscribers. Approximately $56 million remains due and owing to the Plaintiffs by Cigna for the services provided to the Cigna Subscribers from approximately January 2, 2008, to October 16, 2019.  These claims continue to accrue.

153.   Moreover, Cigna has failed to follow the proper notice and appeal requirements pursuant to 29 C.F.R. § 2560.503-1(g) that require Cigna to adequately explain the basis for its dramatic underpayments to the Plaintiffs.  In particular,

- 54 -

Cigna has issued adverse benefit determinations as defined under 29 C.F.R. § 2560.503-1(m) for the Cigna Claims and has failed or refused to:  (a) provide the specific reason or reasons for the denial of claims; (b) provide the specific Plan provisions relied upon to support the denials; (c) provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; (d) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and (e) notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

154.   In addition, in their appeals to Cigna for the Cigna Claims, Plaintiffs have requested in vain the following information related to the denials of the Cigna Claims:  (a) all contracts detailing any and all contractual obligations with Cigna; (b) plan documents specifically identifying a "Legislative Fee" schedule; (c) the identity of the "Originating Payer" [the Plan]; (d) the "reassociation" and trace information from the Plan; (e) plan documents specifically identifying the adjustment reason utilized in the EOB; and (f) the Cigna definition and/or explanation of all standardized Claim Adjustment Reason Code utilized in its ERA. Cigna has refused to provide the above requested information in violation of 29 U.S.C. § 1133(2), and 29 C.F.R. §§ 2560.503-1(h) and (m)(8).

155.   Exhaustion is therefore deemed futile pursuant to 29 C.F.R. § 2560.503-1(l) because Cigna failed to provide a clear basis for its denials and has refused to produce the requested documents necessary for Plaintiffs to evaluate the Cigna Claims denials.  Cigna thus offered no meaningful administrative process for challenging its denials of the Cigna Claims.

156.   This action is timely commenced within six years after the Plaintiffs were notified by Cigna that it was rejecting or dramatically underpaying Plaintiffs' claims for the services provided to Cigna Subscribers, and otherwise within six (6) years after each of the Plaintiffs' claims against Cigna accrued.  In addition, to the claims herein based on Cigna's breach of fiduciary duty and related claims are also timely filed within six (6) years from March 2018, when Plaintiffs first began to suspect Cigna's fraudulent activities and misrepresentations in derogation of its fiduciary duties.  *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir.1996); 29 U.S.C. § 1113.

## II.   Cigna's Multiple RICO Violations

### A.   Overview

157.   Even worse than Cigna's simple refusal to pay Plaintiffs, as required by the terms of its Plans and applicable law, are the fraudulent and other unlawful tactics that Cigna has used to conduct and participate in the affairs of the Cigna Plans.  In doing so, Cigna has engaged in multiple violations of RICO, 18 U.S.C. §§ 1961-1968.

- 56 -

158.   Each of the Cigna ERISA Plans and other self-funded plans for which Cigna provides ASO services is an enterprise within the meaning of  18 U.S.C. § 1961(4), in that each has an independent legal existence.

159.   Cigna has also conducted or participated in the affairs of these enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5), and conspired to do so.  In doing so, Cigna has violated 18 U.S.C. §§ 1962(c) and 1962(d).

160.   Moreover, Cigna has invested the proceeds of its racketeering activity into one or more enterprises, and conspired to do so.  In doing so, Cigna has violated 18 U.S.C. §§ 1962(a) and 1962(d).

161.   This pattern of racketeering activity involves Cigna's multiple and repeated use of the mails and wires in furtherance of at least four distinct but interrelated schemes to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

162.   The pattern of racketeering activity also involves Cigna's multiple and repeated acts of embezzlement and/or conversion of ASO Cigna Plan funds in violation of 18 U.S.C. § 664.

163.   Plaintiffs have been injured in their business and property through Cigna's multiple RICO violations and, thus, have standing to bring this action under RICO's civil enforcement provision, 18 U.S.C. § 1964(c).

- 57 -

## B.      The RICO Enterprises

164.    At all relevant times, all of the subject Cigna ERISA Plans have been "enterprises," within the meaning of 18 U.S.C. § 1961(4), as each is an independent legal entity distinct from Cigna, and each is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

165.    The non-ERISA plans for which Cigna acts as third party administrator and/or provides ASO services are likewise entities with independent legal existences distinct from Cigna and thus are also enterprises within the meaning of 18 U.S.C. § 1961(4) (as used herein, the Cigna ERISA Plans and the non-ERISA plans for which Cigna acts as third party administrator and/or provides ASO services are referred to as the "Cigna Plan Enterprises").

166.    At all relevant times, the Cigna Plan Enterprises have been and continue to be engaged in activities affecting interstate commerce, including but not limited to, providing health insurance coverage benefits through employer self-funded health benefit plans of insurance to patients across state lines.

167.    The Cigna Plan Enterprises exist for the legitimate purpose of providing the Cigna Subscribers with health insurance coverage for medically necessary treatment provided by in-network and out-of-network providers under the terms of the Cigna ERISA Plans.  However, Cigna conspired to conduct or participate in the

- 58 -

conduct of the affairs of the Cigna Plan Enterprises through a separate and distinct "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

### C.   Cigna's Pattern of Racketeering Activity

168.   Since at least January 2008, and continuing through the present, Cigna has conducted and participated in the conduct of the affairs of the Cigna Plan Enterprises, through a pattern of racketeering within the meaning of 18 U.S.C. § 1961(5), and conspired to do so.

169.   The pattern of racketeering activity includes embezzlement or conversion for Cigna's own use of the Cigna Plan Enterprises assets in violation of 18 U.S.C. § 664, and multiple acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

170.   Cigna (a) used the mails and wires (b) in the foreseeable furtherance of (c) a scheme or artifice to defraud (d) involving material deceptions (e) with the intent to deprive Plaintiffs and other similarly situated out-of-network providers of property.

171.   Cigna's schemes to defraud, predicate acts of mail and wire fraud and predicate acts of embezzling or converting the Cigna Plan Enterprises assets in furtherance of these schemes to defraud are described in detail in Section II(D) below. Cigna's racketeering acts together have the following features:

1.    *Relatedness*

172.   Cigna's acts of racketeering are not isolated events.  Rather, all are related to each other in that they have similar purposes, results, participants, victims, methods of commission, and other distinguishing characteristics.  All of the acts were done for the benefit of Cigna and in furtherance of Cigna's agenda.

173.   Cigna's predicate acts of racketeering were and continue to be directed at the same overarching goals of harming Plaintiffs financially by deceiving Plaintiffs, Plaintiffs' patient Cigna Subscribers, and the Cigna Plan Enterprises that:  (a) based on (non-existent) contracts with Cigna or third-party Repricing Companies, Plaintiffs accepted deep discounts on their rate of reimbursement for Cigna covered claims; (b) based on other improper coding combinations, it was appropriate for Cigna to drastically reduce the amount reimbursed to Plaintiffs; (c) based on (non-existent) contracts with Repricing Companies, as well as other adjustments made by Cigna through the use of improper coding combinations, Cigna and the Repricing Companies are entitled to cost-containment fees; (d) pursuant to the Cigna issued Patient EOB, Cigna Subscriber patients are not required to pay any amounts not reimbursed to Plaintiffs or in addition to the incorrectly calculated Patient Responsibility Amount; (e) pursuant to the Cigna issued Provider EOB, large portions of the Cigna claims submitted for reimbursement are not-covered, and require Plaintiffs to negotiate with Cigna's contracted Repricing Companies for additional

payment prior to balance billing patients; and (f) Plaintiffs must accept deeply discounted reimbursement rates to avoid expending numerous hours of administrative resources seeking payment of what is already due and owing to them under the terms of the Cigna Plan Enterprise agreements, in exchange for giving up rights to seek future payment, interest or to balance bill patients.

174.   Cigna has specifically targeted out-of-network providers, including Plaintiffs, in pursuit of its unlawful goals.  It sought to punish Plaintiffs for failing to contract with Cigna for unreasonably low rates that would not cover Plaintiffs' operating costs, by depriving them of money owed to them under the terms of the Cigna Plan Enterprise agreements through a mail and wire fraud scheme, the intent of which was to divert Cigna Plan Enterprise assets from Plaintiffs to deprive Cigna Subscribers economically of their choice.   Plaintiffs are the intended and actual victims of each separate act of racketeering described herein.

175.   Cigna has participated in, authorized, and/or ratified the specific acts of mail and wire fraud and embezzlement and conversion alleged herein.  It has issued false and misleading transmissions and statements over the mails and wires designed to mislead Plaintiffs, the Plaintiffs' Cigna Subscriber patients, and the Cigna Plan Enterprises that Cigna has saved the Cigna Plan Enterprises and Cigna Subscribers money by obtaining favorable discounts from Plaintiffs.  It has also used the mails and wires to create the false impression that Cigna pays what it is legally obligated to pay

- 61 -

out-of-network providers for services rendered to Cigna Subscribers, to the significant financial detriment of Plaintiffs.

176.   Cigna and its officers and employees expressly designed and authorized the racketeering acts and participated actively in them.

## 2.   *Continuity*

177.   Cigna's related racketeering acts have extended from at least January 2008 to the present.

178.   Cigna's related predicate acts also involve a continued threat of long-term racketeering activity.

179.   Upon information and belief, Cigna's schemes to defraud have generated hundreds of millions of dollars in revenue for itself and the third-party Repricing Companies.

180.   The related predicate acts therefore involve a continued threat of long-term racketeering activity.  There is no foreseeable ending point to Cigna's acts of racketeering against Plaintiffs and similarly situated out-of-network providers.

181.   In addition, the predicate acts and offenses described herein are Cigna's regular way of doing business and thereby threaten long-term illegal conduct against the public at large.

> **D.    Cigna Illegally Profits From the Repeated Use of the Mails and Wires, and Embezzlement and Conversion of Cigna Plan Enterprise Funds, Through Cigna's Schemes to Defraud.**

182.    Cigna's schemes to defraud have operated to deceive Plaintiffs, the Cigna Subscribers, and/or the Cigna Plan Enterprises into believing, *inter alia,* that: (a) Plaintiffs are in-network and that Plaintiffs' claims should therefore be processed as in-network claims; (b) Plaintiffs' claims submitted to Cigna for reimbursement should be paid at deeply discounted amounts based on contracts with Cigna or Repricing Companies that do not actually exist; (c) Cigna provides savings to Cigna Subscribers by negotiating discounts with providers, such as Plaintiffs, and as a result, the Cigna Subscribers owe little or nothing on an out-of-network provider claim; and (d) large portions of the out-of-network provider claims are not covered and that Plaintiffs must negotiate with Repricing Companies and accept drastic underpayments for amounts due and owing under the terms of the Cigna Plan Enterprise agreements.

183.    These schemes to defraud advance Cigna's overarching goal of wrongfully retaining Cigna Plan Enterprise assets, earning profits from these wrongful retentions through increased administrative fees and interest, maintaining and increasing enrollment in Cigna administered health benefit plans, and patient steering. They do so through the fraudulent administration of the Cigna Plan Enterprises, knowingly transmitting through the mails and wires, incorrect information to the Cigna Plan Enterprises, Cigna Subscribers and Plaintiffs.

- 63 -

184.   Cigna, its officers, and agents, have used the wires and mails to effectuate Cigna's schemes to defraud by transmitting material misrepresentations and omissions about the Plaintiffs' non-existent contractual relationships with Cigna and/or Repricing Companies to the Plaintiffs, Cigna Subscribers and Cigna Plan Enterprises, to justify the underpayments on the Cigna Claims, the "discounts" allegedly accepted by the Plaintiffs and the cost-containment fees "earned" by Cigna under its ASO contracts with the individual Cigna Plan Enterprises.  The time, place, and nature of these misrepresentations are described more fully in Sections II(D)(1) through (5), below.

185.   Cigna's false representations were material in that they were capable of influencing the decisions of those to whom the statements were directed in ways having an adverse financial impact on the Plaintiffs.  At all relevant times, such adverse financial impact was not only foreseeable, but was and is the specifically intended result of Cigna's fraudulent schemes.  Cigna intended and intends for the Cigna Plan Enterprises, Cigna Subscribers and out-of-network providers, such as Plaintiffs, to act in reliance on Cigna's material misrepresentations and concealments, by accepting that Cigna appropriately reimburses Plaintiffs for the medically necessary treatment they provided to the Cigna Subscribers.

186.   In fact, the Cigna Plan Enterprises, Cigna Subscribers and out-of-network providers, such as Plaintiffs, have relied on Cigna's material

- 64 -

misrepresentations to the Plaintiffs' detriment, precisely as Cigna intended.  Due to Cigna's misrepresentations that Plaintiffs have accepted discounts for their services, the Cigna Plan Enterprises incorrectly believe Cigna is saving the Plans money, the Cigna Subscribers believe they are saving money, and the Plaintiffs believe they must negotiate with a Repricing Company for additional payments despite their entitlement to be paid under the terms of the Cigna Plan Enterprise agreements. Plaintiffs thereby have lost money and are forced to expend limited administrative resources negotiating for payments to which they are already entitled—a direct and intended result of Cigna's schemes to defraud.

187.   Cigna acted with the specific intent to deceive and for the purpose of depriving Plaintiffs of property.  Cigna specifically intended to cause Plaintiffs such injury.

188.   All acts of mail and wire fraud alleged herein were ordered by Cigna and performed by persons acting as agents on behalf of Cigna.  In fact, Cigna's name is on the various HIPAA standard transactions to the Cigna Plan Enterprises and Plaintiffs, as well as on the Patient and Provider EOBs, that have been used in furtherance of Cigna's schemes to defraud.

189.   All acts of embezzlement and/or conversion of the Cigna Plan Enterprises assets were ordered by Cigna and performed by persons acting as agents on behalf of Cigna.   In fact, Cigna's ASO agreements with the Cigna Plan

- 65 -

Enterprises, sent through the mails or wires, assert that Cigna may earn cost-containment fees, which it may withdraw directly from the Cigna Plan Enterprise bank account, when an out-of-network provider has a contract with either Cigna or one of its Repricing Company.  Not only does Cigna fraudulently represent that the Plaintiffs' Cigna Claims underpayments are based on non-existent contracts, but the cost-containment fees are calculated as a percentage of savings.  Cigna also misrepresents that the Cigna Plan Enterprise must fund the Plan bank account for the full value of the claims, cost-containment fees and taxes to ensure the Cigna Plan Enterprise is not under-funded.  Despite this fraudulent misrepresentation, Cigna underpays the Cigna Claims from the Cigna Plan Enterprise assets and wrongfully retains and earns interest on Cigna Plan Enterprise assets on amounts that are due and owing to Plaintiffs under the terms of the Cigna Plan Enterprise Agreements.

190.   Cigna's acts in furtherance of its schemes to defraud in violation of 18 U.S.C. §§ 1341 and 1343, and its acts of embezzlement and wrongful conversion of the Cigna Plan Enterprise assets in violation of 18 U.S.C. § 664, represent a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

- 66 -

1.   *Cigna Transfers the Full Claim Amount to Its Own Account and Embezzles and/or Converts Cigna Plan Enterprise Assets Based on Fraudulent Misrepresentations Made Through the Fictitious Contracting Scheme.*

191.   One means that Cigna used to implement its schemes to defraud is its common improper use of the "contractual obligation," "patient responsibility," and "45," coding combinations.

192.   Cigna is required to follow national standards mandated by HIPAA for electronic healthcare transactions (these standards do not apply to paper transactions).  The ACA added section 1173(g) of the Social Security Act, which directs the Secretary of Health and Human Services to adopt a single set of operating rules for each such transaction, which shall "reflect the necessary business rules affecting health plans and healthcare providers and the manner in which they operate pursuant to standards issued under [HIPAA]."   42 U.S.C. § 1320d-2(g).

193.   Health and Human Services regulations provide for an administrative simplification process through standards, implementation specifications (ASC X12 Standards for Electronic Data Interchange Technical Report Type 3) and operating rules (National Automated Clearing House Association and CAQH Committee on Operating Rules for Information Exchange ("CORE")), which are expressly incorporated by reference into the regulations. 45 CFR § 162.  The implementation

- 67 -

specifications required by the regulations ensure uniform application of the administrative simplification process.  Operating rules are defined as "the necessary business rules and guidelines for the electronic exchange of information that are not defined by a standard or its implementation specifications."  *See* 77 FR 48007; 45 CFR § 162.  The operating rules set certain requirements for transactions that are governed by HIPAA.  They specify the information that must be included when conducting standard transactions, making it less costly, more efficient and more uniform for Providers and Healthcare Plans to use electronic means to handle administrative transactions.  *Id.*

194.   For example, because healthcare insurance transactions involve electronic payments, certain HIPAA transactions must comply with the uniform operating rules for the exchange of Automated Clearing House ("ACH") electronic fund transfer payments among financial institutions that are used in accordance with Federal Reserve regulations and maintained by the Federal Reserve and the Electronic Payments Associations, known as the National Automated Clearing House Association or "NACHA."  *Id.*  In addition, the CORE developed operating rules for the healthcare industry.

195.   Additionally the "CO-," "PR-" and "-45" codes are standard CORE Claim Adjustment Group Codes ("CAGC") and a Claim Adjustment Reason Code used uniformly throughout the healthcare industry for medical billing.  *Id.*

- 68 -

196.   Cigna's claims process for out-of-network claims, including the Cigna Claims, violates the HIPAA standard transaction rules under 45 C.F.R. § 164.

197.   For example, for each self-funded Cigna Plan Enterprise contracted with Cigna through an ASO, the employer agrees to set up a benefit plan bank account with a bank designated by Cigna that is established and maintained by the employer or in its nominee's name.  According to Cigna's contract requirements, the employer must fund the designated bank account in an amount sufficient to pay the Cigna Plan Enterprise benefits, charges, fees per the employer's and Cigna's contracted arrangement, including cost-containment fees, and any sales or use taxes or other charges imposed by any governmental authority.  Cigna is also permitted by the ASO agreement to draw additional funds from the employer bank account if it determines an underpayment requires additional payment under the Cigna Plan Enterprise terms.

198.   Based on this contracted agency relationship between Cigna and the Cigna Plans Enterprise bank accounts, Cigna has access to Cigna Plan Enterprise assets and is able, per the ASO agreement, to move the entire value of a claim accepted by the Plan for processing, to the Cigna owned account.  Cigna then transfers a pre-determined reimbursement amount through the wires from their bank account to the provider's bank account through an EFT.  The standard transaction regulations require that for an out-of-network provider, the financially responsible

- 69 -

party, or the Cigna Plan Enterprise, must be the originator of the payment.  The standard transaction data provided by Cigna, however, demonstrates that Cigna violates this rule by issuing the ACH payment from the Cigna bank account instead of the Cigna Plan Enterprise's bank account.

199.   Cigna ignores this direct payment requirement and instead fraudulently misrepresents, based on post-transfer coding combinations, most commonly "contractual obligation," "patient responsibility" and "-45" CORE combinations, that the Plaintiffs agreed to a discount based on (non-existent) contracts with Cigna or a Repricing Company.  Cigna's use of improper CORE coding combinations is intended as a justification to providers such as Plaintiffs, and to the Cigna Plan Enterprises if they later request an audit under the ASO agreement, that the drastically underpaid claims were appropriately paid at the legally required amounts.

200.   To further complicate the traceability of the transactions, Cigna requires out-of-network providers to use clearinghouses to make the ACH payments.  Every time a payment is filtered through an ACH payment, its transaction number changes.  Accordingly, providers are unable to verify that the proper amount has been paid to them by tying the amount approved by the Cigna Plan Enterprise and deducted from the Cigna Plan Enterprise bank account by Cigna to the reimbursement amount on the ERA.

- 70 -

201.   Through fraudulent use of the CORE coding combinations, along with the ASO agreement cost-containment process application requirements discussed more fully below, Cigna communicates a fraudulent message to the Cigna Plan Enterprises, Cigna Subscribers and Plaintiffs, through the mails and wires, allowing Cigna to embezzle or convert Cigna Plan Enterprise assets that should have been paid to the out-of-network provider under the terms of the Cigna Plan Enterprise agreements, and cost-containment fees improperly "earned" based on Cigna's fraudulent misrepresentations.

202.   The Cigna Plans Enterprises' form ASO language provides that a Plan may audit, at its own cost, a mere two-hundred and twenty-five (225) claims from the past two years not previously audited every year if the employer has over 5,000 employees or every two years otherwise.   The form ASO only permits claims adjustments to be made for those 225 audited claims.   Through limiting the Cigna Plans Enterprises' rights in the Cigna-drafted ASO agreements, Cigna minimizes the likelihood that a Cigna Plan Enterprise audit would reveal Cigna's large-scale payment scheme.   Moreover, Cigna is fully aware that employers very rarely invoke the audit provision in their ASO agreements.

203.   By this conduct, Cigna knowingly disseminated "information" through the mails and wires to the Cigna Plans Enterprises that was false and/or misleading, and calculated to harm Plaintiffs.

- 71 -

2.      *Cigna Conspires With Repricing Companies for Improper Cost-Containment Fees Through the Repricing Reduction Scheme.*

204.   Through the Repricing Reduction Scheme, Cigna conspires with Repricing Companies to pay itself, from embezzled and/or converted Cigna Plan Enterprise assets, extra "cost-containment fees" as a benefit from misapplication of the "contractual obligation," "patients responsibility" and "45" CORE coding combinations for processing claims submitted by Plaintiffs as subject to a (non-existent) contract.

205.   Upon information and belief, Cigna's cost-containment process generally works as follows:

a.     A provider may enter into an out-of-network contract with a third party Repricing Company, whereby the provider agrees to have its billed charge reduced in accordance with a specified contract rate or schedule.  Under the contract, the provider accepts payment of this reduced claim (including the patient's cost-share obligation) as payment in full.

b.     Upon information and belief, Cigna's ASO agreements with ASO Cigna Plan Enterprises, which agreements are drafted by Cigna, state that Cigna "may apply discounts available under available third-party contracts or through negotiation of the billed [incurred] charges."  In these instances, Cigna will

- 72 -

apply that contract rate to the provider's billed charge, arriving at the "allowed amount" of the claim.

        c.    Upon information and belief, Cigna's cost-containment fee is approximately 29% to 35% "of net savings," which is the difference between the claim priced under the alleged third-party Repricing Company contract and the provider's billed charge. Cigna is permitted under the ASO agreement with the Cigna Plan Enterprises to pay itself these "cost-containment fees" directly from the Cigna Plans Enterprise bank accounts.

        d.    Upon information and belief, Cigna pays 7% to 11% of the 29% to 35% cost-containment fees to their contracted Repricing Companies for their services. The cost-containment fees paid to Cigna and the Repricing Companies are calculated on the basis of a percentage of savings, which provides an incentive for Cigna and the Repricing Companies to conspire to pay Plaintiffs the least amount on a claim to maximize their profits.

206. Upon information and belief, Cigna pays itself and the Repricing Companies cost-containment fees irrespective of whether the cost-containment process actually saves the specific Plan any money. Indeed, it collects this fee even when the cost-containment process ends up costing a Cigna Plan Enterprise *more* than what the plan terms would provide.

- 73 -

207.   Cigna's ASO misrepresents to the Cigna Plan Enterprises that "while applying cost-containment discounts may result in higher payments than if the MRC is applied, whereas application of MRC may result in the patient being balance billed for the entire unreimbursed amount, applying these discounts avoids balance billing and substantially reduces the patient's out-of-pocket cost."

208.   This statement is true when a provider has actually contracted with a Repricing Company to accept an agreed upon discount.  Where providers such as Plaintiffs do not have such contracts, however, the cost-containment process provides cover for Cigna to improperly earn additional profits.  For example, Cigna's cost-containment fee is calculated at the time the claim is initially processed.  Cigna often issues additional reimbursement amounts, sometimes up to the full incurred charges on a claim, when out-of-network providers seek additional payment through Cigna's forced negotiation process.  When the cumulative amount the provider is reimbursed on such a claim exceeds the total value of the claim less the initial cost-containment fee, then the Cigna Plan Enterprise actually loses money through Cigna's cost-containment process.

209.   The following hypothetical example further demonstrates how Cigna misleads the Cigna Plan Enterprises into believing they are saving money through Cigna's cost-containment process.  A provider submits a claim for $100 and Cigna processes the claim and initially reimburses $10.  Cigna's fee is based on 30% of

savings, so Cigna earns a $30 fee (30% x $90).  The provider contacts Cigna or its Repricing Company for additional payment through the negotiation process and demonstrates that the cost-containment process was improperly applied to the claim. Through multiple negotiations, Cigna reprocesses the claim and pays $100 or 100% of the claim.  The Cigna Plan Enterprise has now paid $30 to Cigna as a cost-containment fee even though the Cigna Plan Enterprises realized $0 in savings. Therefore, Cigna has used the cost-containment process to convert or embezzle $30 from Cigna Plan Enterprise assets.

210.   Notably, Cigna can only properly invoke the cost-containment process, and the significant fee that it entails, where Cigna possesses a benefits claim that is subject to an existing contract with a Repricing Company.  Cigna has admitted that it sends all out-of-network claims to a Repricing Company, who adjust every out-of-network claim based on there being a contract, whether or not a contract actually exists, or other improper coding combination.  Cigna uses these adjustments to fraudulently communicate to the Cigna Plan Enterprises that it saved the Plan and its beneficiaries money through discounts that also reduce Patient Responsibility Amounts.

211.  Cigna  has  applied  its  "cost-containment"  process  to  the  Cigna Plaintiffs' claims.  Despite Plaintiffs having no contracts with third-party Repricing Companies, Cigna has applied a predetermined "contract rate" based on non-existent

- 75 -

third party Repricing Company contracts, regardless of whether the governing terms of the applicable Cigna Plan Enterprise agreement would dictate a different allowed amount.

### 3. *Cigna Misrepresents the Improper Adjustments on EOBs Through the Mails and/or Wires Through the Contradictory EOB Scheme.*

212.  Once a claim is processed, Cigna will transmit to the provider, through the wires, an ERA which must contain certain information that complies with the standard transaction rules.  The provider may also receive or request a paper EOB through the mails, which must match the information on the ERA.  Cigna, however, is not required to comply with any standard rules regarding Patient EOBs, which are sent by Cigna through the mails and/or wires.

213.  Based on Cigna's use of the "contractual obligation" or "patient responsibility" adjustments, the Provider EOB represents that the adjusted amount, which Cigna wrongfully retains all or in part, is the "[a]mount not covered."  Cigna, misleads the provider that the Provider EOB contains the same information that is sent to the patient.  Thus, the description of "amount not covered" included on the Provider EOB states:

> This is the portion of your bill that's not covered by your plan.  You may or may not need to pay this amount.  See the Notes section on the following pages for more information.  The total amount of what is not allowed and/or is not covered is $[ ] of which you owe $[ ].

- 76 -

214.   Cigna will also send the patient beneficiary a paper EOB.  On the Patient EOB, however, Cigna designates the exact amount classified as "not covered" on the Provider EOB as a "Discount" to conceal its intentional practice of underpaying claims from both the Provider and Patient.  Cigna describes this "Discount" as "CIGNA negotiates discounts with healthcare professionals and facilities to help you save money" to intentionally mislead the patient to believe that their provider, including Plaintiffs, agreed to the represented "Discount."

215.   As further evidence that Cigna processes all out-of-network claims as in-network, the Cigna Patient EOB Glossary defines "Discount" as:

> The amount you save by using a health care professional or facility (doctor, hospital, etc.) that belongs to a Cigna network.  Cigna negotiates lower rates with its in-network doctors, hospitals and other facilities to help you save money.

216.   The Cigna Patient EOB will state what the patient owes, which includes any amounts that are justifiably not covered under the Cigna Enterprise Plans, i.e., denied CPT codes, and any Patient Responsibility Amounts owed by the patient.

217.   Representatives of Cigna have admitted to Plaintiffs' representatives that the use of "Discount" to describe the amount adjusted by Cigna on the Patient EOB is a misrepresentation of the "amount not covered."  But Cigna is unable to explain the discrepancy between the terms on the Patient and Provider EOBs or why the Provider EOBs contain no "discount."   Instead, Cigna maintains that there is no

- 77 -

variance in the forms or terms of all Cigna Patient EOBs, whether for in-network or out-of-network processed claims.    In fact, Cigna's representatives have acknowledged that Cigna intentionally misrepresents to out-of-network Cigna Subscribers that they have received a "discount."  According to Cigna, this term is appropriate for identification of the adjusted amount on an in-network provider claim, but for the out-of-network claims Patient EOBs, the "discount isn't really a discount."

218.   Finally, the Cigna Patient EOB includes a "You saved" section, which represents how much the patient purportedly "saved" through the "Discount" and what the plan paid.

219.   Because the provider receives completely different information on the Provider EOB, the provider has no idea that Cigna has unilaterally issued an improper "Discount" to the Cigna Subscriber based on misrepresentations regarding a non-existent contract.  The provider is only made aware that Cigna incorrectly told their patient that the provider agreed to Discount its charges if the patient calls the provider, which rarely if ever occurs.

220.   Cigna avoids this confrontation, however, by instructing the provider on the initial Provider EOB to not balance bill the patient and to instead contact the Repricing Company to negotiate additional payment.

- 78 -

221.   Moreover, in few instances where Cigna does not use the "45" reason code, Cigna will instead use other improper coding combinations, despite the initial acceptance of the full amount of the CPT code for processing by the Cigna Plan Enterprises, to justify its underpayments.  Cigna also follows the Contradictory EOB Scheme for these claims in order to embezzle and convert Cigna Plan Enterprise assets and to force negotiations between providers and the Repricing Companies.

222.   Since the CPT codes for the Cigna Claims are initially accepted for processing at full value, persistent negotiations for additional payment often result in payments to providers of close to or the actual full value of the accepted CPT code(s) for a claim, less Patient Responsibility Amounts.  Cigna will then reprocess the claim as a new claim and issue new EOBs.  The result is an increase in the patient's responsibility over what should have been calculated as the patient's cost-sharing requirement had the claim not been improperly processed in the first place.

223.   This tactic allows Cigna to hide that it wrongfully retains Cigna Plan Enterprise assets in an interest-earning bank account while steering patients to Cigna's in-network providers and away from out-of-network providers they might otherwise have preferred.  The Cigna Plan Subscribers, according to Cigna's scheme, often receive increasing cost-share amounts each time a claim is adjusted and reprocessed to pay closer to what should have been initially paid, or will receive large balance bills on amounts the provider allegedly agreed to discount.  Cigna uses

- 79 -

this fraudulent communications scheme knowing that providers frequently accept the initial underpayment rather than persist with appeals to get the payments to which they are entitled, or balance bill the patient.  Cigna fails to provide the coverage for which the Cigna Subscribers pay large premiums and instead further punishes the Cigna Subscribers by communicating to providers that if they do not accept Cigna's unreasonable reimbursement rates that their only option is to balance bill the patients for large unpaid claims balances.

224.   For example, Plaintiff Advanced Gynecology submitted an electronic claim for reimbursement for medically necessary services provided to Patient 1. (*See* Exhibit C).  Prior to providing treatment to Patient 1 on June 7, 2018, Advanced Gynecology obtained confirmation that the treatment was covered under the terms of Patient 1's Cigna Plan Enterprise agreement.  (*Id.* at 1 to 15).  After Advanced Gynecology submitted the timely claim on June 11, 2018, the full amount of the incurred charges, $18,647, was accepted by the Cigna Plan Enterprise for payment on June 12, 2018.  (*Id.* at 16 to 17).  On July 11, 2018, Cigna's contracted Repricing Company, MultiPlan, mailed Advanced Gynecology a pre-payment offer to reimburse $3,000 or 16% of the incurred charges.  Advanced Gynecology, which was not contracted with MultiPlan, rejected MultiPlan's offer.  (*Id.* at 18-19).

225.   On July 20, 2018, Cigna processed the claim for Patient 1 and sent Advanced Gynecology, through the mail and wires, a Provider EOB wherein Cigna

- 80 -

determined the covered balance owed to Advanced Gynecology at $595.98, or 3% of the incurred charges (60% of the "covered balance" of $993.30 after Patient 1's deductible was removed from the "allowed amount" of $1,731.08).  (*Id.* at 20 to 21). This amount was nearly 80% *less* than the initial drastically inappropriate $3,000 offer from MultiPlan, which demonstrates that Cigna was willing to pay $3,000 from the outset, but when Advanced Gynecology refused to accept the drastic underpayment offered by MultiPlan and to waive its rights to seek the actual amount it was entitled to under the terms of the Cigna Plan Enterprise agreement for the medically necessary services it provided to Patient 1, Cigna arbitrarily calculated the $1,731.08 "allowed amount" and paid Advanced Gynecology even less.  (*Id.*).

226.   Patient 1's Provider EOB adjusted $16,915.92 using the "contractual obligation" and "45" CORE reason codes and represented to the provider that this amount exceeded the (non-existent) contracted rate.  (*Id.*).  Notably, the Provider EOB for Patient 1 states that: "PATIENT IS NOT LIABLE IF YOU ACCEPT THE ERS ALLOWABLE AMOUNT.  CONTACT ZELIS AT 888.346.8488 BEFORE BILLING THE PATIENT."  (*Id.*)  Zelis is one of the Repricing Companies and co-conspirators contracted with Cigna to extort contract negotiations from out-of-network providers to accept drastic underpayments and waive any further rights to seek additional payment.

- 81 -

227.   Patient 1's Cigna Patient EOB, sent by Cigna through the mails or wire, tells a different story.  Patient 1's Cigna Patient EOB states that of the $18,647.00, Patient 1 "saved" $16,915.92 through a "Discount," as described and defined above. (*Id.* at 22 to 27).  This same EOB also states that Patient 1 "saved" 93% on this claim, including the discount.  (*Id.*).

### 4.   *Cigna Conspires with Repricing Companies to Accomplish its Goals Through the Forced Negotiations Scheme.*

228.   Cigna also communicates to the Plaintiffs, through the "contractual obligation," "patients responsibility" and "45" CORE reason codes transmitted through the wires and/or mails, that the drastically underpaid claims are justified based on Plaintiffs' existing contracts with a Repricing Company that permits a standing discounted reimbursement rate or that Plaintiffs negotiated an agreed upon discount with a Repricing Company.  Plaintiffs do not have contracts with any the Repricing Companies and do not accept the extremely low settlement offers on their Cigna claims.

229.   Cigna conspires with these Repricing Companies, through the Forced Negotiations Scheme, to extort improper discounts from out-of-network providers, including Plaintiffs, through intimidating and coercive settlement negotiations.  Out-of-network providers are instructed on the Provider EOB sent by Cigna through the mails and/or wires to not balance bill their patients prior to contacting the Repricing

- 82 -

Company, who Cigna fraudulently represents through the "CO-45" or "PR-45" codes on the EOBs, negotiated the discount on the provider claim.  (*See*, for example, the Provider EOB for Patient 1 at Ex. D).  Plaintiff providers will typically first exhaust internal appeals with Cigna before contacting the Repricing Company.  The initial determination is generally upheld or Cigna may pay slightly more on the claim, which still results in a drastic underpayment.  Once internal appeals are exhausted, Plaintiffs will obtain from Cigna the specific Repricing Company who allegedly negotiated each Cigna Claim if not listed on the Provider EOB.

230.   When a Plaintiff or its representative contacts the Repricing Company, after pressing the Repricing Company for proof of an agreement between the Repricing Company and the Plaintiff, the Repricing Company confirms that there is no such contract or negotiation on file between the Plaintiff and Repricing Company related to the specific Cigna Claim at issue.  If the Plaintiff then demands higher payment, the Repricing Company will send a settlement offer and terms agreement through the mails and/or wires, starting with only a small addition to what the provider was initially paid, which explains several "benefits" to accepting the offer while requiring that the Plaintiff agree to not balance bill the Cigna Subscriber for any difference in reimbursement beyond the Cigna Subscriber's cost-sharing requirement.

- 83 -

231.   The Repricing Companies confirm that, at the outset, Cigna sends every out-of-network claim to a Repricing Company for cost containment review, irrespective of whether an actual contract between an out-of-network provider and Cigna or a Repricing Company exists.   The Repricing Company determines the amount Cigna initially pays on the claim, and Cigna then adopts the Repricing Company's suggested reimbursement amount—which is drastically below the required reimbursement rate under the terms of the Cigna Plan Enterprise agreement, and initially processes the claim at that amount.

232.   Cigna and its contracted Repricing Companies have applied the above scheme to the Cigna Claims.   The Repricing Companies admit that Cigna's processing system is set up to automatically send all out-of-network claims to the Repricing Company and cannot be shut off, despite numerous calls from Plaintiffs explaining that Plaintiffs have never agreed to accepting a discount of greater than 10% or 20%, and that they only agree to such a discount after being contacted to negotiate on a claim-by-claim basis.   Despite Plaintiffs' requests, all of the Cigna Claims were drastically underpaid, with either Cigna or its Repricing Company, reducing Plaintiffs' incurred charges through improper adjustments by, on average, 78%.   Approximately 60% of the 9,526 claims were improperly reimbursed at 20% or less of the Plaintiffs' incurred charges.

- 84 -

233.   While some providers, including Plaintiffs, persist in their efforts to gain reimbursement of the amount due and owing to them under terms of the Cigna Plan Enterprise agreements for the services provided to Cigna Subscribers for some claims, each such "negotiation" requires many hours of calls to Cigna and the Repricing Companies, as well as back-and-forth written negotiations.  Plaintiffs do not have the administrative resources or capacity needed to fight all the underpayments on the large number of claims submitted to Cigna for reimbursement. Unfortunately, but consistent with its scheme, Cigna wins this war of attrition more often than not.

234.   As an illustration of this scheme, the Provider EOB for Patient 1 described above, instructed the Plaintiff provider to not balance bill the patient before contacting Repricing Company Zelis.   (*See* Ex. C at 21).   Advanced Gynecology appealed the claim for Patient 1 *seven times,* each time explaining to Cigna that the reason codes were improperly used to reduce the reimbursement amount.  Advanced Gynecology explained that they are an out-of-network provider that is not contracted with Cigna or a Repricing Company and had not agreed to enter into any negotiation to accept a discounted reimbursement rate.

235. After seven appeals and numerous calls to Cigna, Advanced Gynecology finally spoke with a representative at Zelis who confirmed nearly *four*

- 85 -

*months* after the claim was initially processed that Zelis had no contract or negotiation on file for Patient 1's claim.

236.   Zelis then sent through the mail its first letter settlement offer, titled "MAXIMUM OFFER ALLOWED".  (Ex. C at 28 to 29).  The Offer stated:

> Zelis, specializes in developing strong relationships with providers nationwide.  This is especially vital in the unpredictable changes in the healthcare industry.  Although we do not pay claims, we do compare out-of-network billed services to usual, customary, and reasonable charges, managed care allowable fee schedules and Medicare reimbursement.
>
> This case has been referred to me.  I would like to expedite the normal process by reaching a satisfactory agreement in advance of provision of services.  The advantages of reaching such an agreement are:  **1) The claim will not be subject to further bill review and to include late charges. 2) Payment processing will receive top priority. 3) You will not have to spend valuable time fielding calls concerning claim status. 4) Patient's responsibility will be reduced, when applicable. 5) This employer may be encouraged to refer additional members to your office when future needs arise ….**

(*Id.*) (emphasis added).

237.   The Offer also included a form "Terms" sheet which included a "Proposed Payment Amount" of $3,367.39 for Patient 1's claim.  (*Id.*).  The Terms sheet also included the following statement:

> This is a One-time Agreement only for the patient and date(s) of service indicated above.  Payment from the Payor will be subject to any benefit plan terms such as deductibles, co-insurance, co-pays and exclusions per the plan guidelines.  Provider agrees not to balance bill the Payor, administrator and/or patient for the difference between the Total Billed Amount and the Proposed Payment Amount in accordance with the

- 86 -

terms of this Agreement.  Any interest or penalties relating to the claims processed by the Payor will be waived by the Provider.  The proposed payment amount may be reduced by prior payments already made on this claim.  Zelis is not financially responsible and/or liable for any payments to the Provider.  This agreement does not constitute, nor should it be construed as, a guaranty of payment by the Payor.

(*Id.*).

238.   The example Offer and Terms sheet for Patient 1 is representative of those generally mailed to out-of-network providers by Cigna and its Repricing Company to facilitate their scheme to extort unreasonably low reimbursement rates from Plaintiffs.  Cigna ignores the terms of the Cigna Plan Enterprise agreements and legal requirements for prompt/reasonable payment, purposefully underpaying out-of-network providers and intentionally delaying the claims adjudication process in hope that providers will simply give up and accept Cigna's or the Repricing Company's offers in order to get *some* reimbursement and extricate themselves from the endless "appeals" process. .

239.   The Offer and Terms sheet demonstrate that out-of-network providers like Plaintiffs are given the option of accepting a drastic underpayment while waiving their rights to interest on delayed payments and to balance bill the patient, or choose what's behind Door #2: Cigna will 1) subject an out-of-network bill to further review and delay, 2) assign the out-of-network claim a lower priority for processing, 3) purposefully frustrate the appeals and adjudication process requiring

- 87 -

providers to expend substantial administrative resources wasting endless hours filing appeals and fielding calls with Cigna and its Repricing Companies, 4) declare large amounts of the claim "not covered," forcing a provider to balance bill its patient and 5) engage in patient steering by encouraging employers to not refer additional Cigna Subscribers to that out-of-network provider.

240.  If the Plaintiff provider persists and does not accept the initial offer, thee dance continues for numerous rounds. When the provider either accepts or refuses a settlement offer, the claim is then sent back to Cigna for reprocessing. Cigna often reissues new Provider and Patient EOBs through the mails and/or wires. This process can be repeated several times before the Plaintiff provider is (or is not) reimbursed the appropriate amount.  In the relatively few instances in which a Plaintiff does not give up, it can sometimes negotiate payments upwards of 60%, 70%, or even 100% of incurred charges.

241.  Cigna and the Repricing Companies consider the actual required reimbursement amount under the Cigna Plans largely irrelevant for negotiation purposes.  In many cases, the Repricing Companies have even admitted to Plaintiffs' representatives that their ceiling for negotiations, as instructed by Cigna, is 100% of the amount of the claim CPT codes (which is inclusive of the Cigna Subscribers' deductible and co-insurance requirement amounts), initially accepted for processing. Cigna, however, instructs the Repricing Company on the maximum amount it may

- 88 -

offer during negotiations, which often starts at slightly above 10% of incurred charges initially paid by Cigna.

242.   The example of Patient 1 further demonstrates Cigna's conspiracy with Repricing Companies to intentionally underpay out-of-network providers.   Cigna authorized MultiPlan to settle Patient 1's claim for $3,000.   (*See* Ex. C at 19 to 20). When Advanced Gynecology rejected this offer, however, Cigna reimbursed even *less* than $3,000 and substantiated the underpayment with fraudulent misrepresentations. (*See id.* at 20 to 21).   Only after Advanced Gynecology entered into negotiations with Zelis, as Cigna's agent, after four months of unsuccessful appeal attempts, did Zelis offer a slightly higher settlement amount than the initial Multi-Plan pre-payment offer.   (*See id.* at 28-29).   Advanced Gynecology rejected the offer because it did not wish to waive its rights to seek additional reimbursement and interest, or to balance bill the patient (as a last resort), for amounts already due and owing to Advanced Gynecology.   Cigna has only reimbursed Advanced Gynecology $595.98, or 3% of incurred charges, for Patient 1's claim.

### 5.   *Additional Examples of the Cigna Fraudulent Schemes*

243.   Cigna, both individually and through its conspiracy with the Repricing Companies, has caused Plaintiffs substantial financial harm through its fraudulent schemes.   The following are additional examples of the ongoing pattern of fraudulent conduct by Cigna and the Repricing Companies.

- 89 -

*Patient 2*

244.   Patient 2 sought medically necessary treatment from Plaintiff Spine Surgery Associates on May 17, 2018.  Spine Surgery Associates submitted a claim for the total billed services, which Cigna previously confirmed were covered, for $62,405.00.  Cigna sent Patient 2, through the mails or wires, an initial Patient EOB that provided: 1) a "Discount" of $59,420.82; 2) an "amount not covered" of $0; 3) that the Cigna Plan Enterprise paid $2,088.93 to Spine Surgery Associates; 4) that Patient 2 owed $895.25; and 5) that Patient 2 "saved" 98% on the claim.  (*See* Exhibit D at 1 to 4).

245.   Spine Surgery Associates communicated with Zelis as instructed on the Provider EOB.  Beginning on August 22, 2018, continuing through September 6, 2018, Zelis continued to provide unreasonable settlement offers for $2,789.50, $5,000, $1,477.94 (even lower than the 3% of incurred charges the Cigna Plan Enterprise initially paid on the claim), and $5,911.75.  When Zelis refused to offer a reasonable reimbursement rate, Spine Surgery Associates re-submitted the claim to Cigna for reprocessing based on Cigna's improper use of the "contractual obligation" and "-45" Core reason codes.  Spine Surgery Associates has no contract or agreement to accept a discount with either Cigna or Zelis.  Cigna reprocessed the claim and issued through the mails or wires a new Patient EOB ("Patient EOB 2").  (*Id.* at 5 to 8).  Patient EOB 2 revised the "discount" to $0.00.  (*Id.*).  The "amount

- 90 -

not covered" increased from $0 to $59,420.82.  (*Id.*).  The Cigna Plan Enterprise payment amount to Spine Surgery Associates did not change.  (*Id.*).  Cigna's reprocessed claim for Patient 2 ***increased Patient Responsibility Amounts over 65 times***, to nearly the entire claim amount, at $60,316.07.  (*Id.* emphasis added).  Patient 2's savings decreased from ***98% to only 3%***.  (*Id.* emphasis added).  To date, Spine Surgery Associates has not received any additional payment.

<u>*Patient 3*</u>

246.   Patient 3 sought medically necessary treatment from Plaintiff SurgXcel on December 4, 2017.  SurgXcel submitted a timely claim to Cigna for the medically necessary services provided to Patient 3, for which the entire incurred amount of $12,500 was accepted into Cigna's adjudication system for processing. (*See* Exhibit E at 1).  Cigna processed the claim and sent SurgXcel an initial Provider EOB, which applied a "PR" and "242" coding combination to 100% of the incurred charges.  (*Id.* at 2).  This coding combination states that the services were not provided by an in-network provider and, therefore, are not covered.  Cigna reimbursed SurgXcel $0 and attributed the entire $12,500 in incurred charges to Patient 3's responsibility.  (*See* Ex. E at 2-6).

247.   Despite Cigna's determination that these medically necessary services provided by SurgXcel were not covered, on March 13, 2018, Zelis contacted SurgXcel offering a payment on Patient 3's claim to SurgXcel for $987.34 in

- 91 -

exchange for SurgXcel's waiver of rights to seek additional payment on the claim. This is despite the fact that Cigna had previously determined that the entire amount of incurred charges was allegedly not covered under Patient 3's Cigna Plan. (*See* Ex. E at 7 to 8).

248. On March 15, 2018, SurgXcel rejected the initial Zelis payment offer and provided a counter-offer for reimbursement of $10,625, adjusted by a 15% discount of the total incurred charges. (*See id.* at 9). On the same day, Zelis sent another settlement offer to SurgXcel. (*See id.* at 10 to 11). This offer stated that the "Allowed Amount" was $12,500, or 100% of incurred charges. (*Id.*) Zelis incredibly then offered to pay 39% of the total Allowed Amount, or $4,875, for services Cigna originally told SurgXcel were not covered by Patient 3's Cigna Plan. (*Id.*).

249. Notably, the March 13 and 15, 2018, Zelis Offers stated as a "Term" of acceptance, that:

> Processing by the Payor will be subject to any benefit plan terms such as deductibles, co-insurance, co-pays, exclusions and code edit reductions per the plan guidelines. Provider agrees not to balance bill the Payor, administrator and/or patient for the difference between the Total Billed Amount and the Repriced Amount in accordance with the terms of this Agreement.

(*Id.*).

- 92 -

250.   According to Zelis's settlement offers, even if SurgXcel accepted the offer and Zelis sent the claim back to Cigna for reprocessing, Cigna could still determine that the services were not covered under Patient 3's Cigna Plan.  SurgXcel would then be left with no recourse for payment because its acceptance of the Zelis offer required a waiver to seek any additional payment on the claim, including billing Patient 3.

251.   Zelis and Cigna, therefore, hope that a provider like SurgXcel or other provider Plaintiffs, agree to the coercive settlement offer to receive some reimbursement for their services instead of no payment, but can then refuse to honor the settlement reimbursement amount based on an alleged Cigna Plan exclusion of coverage.  Through this improper coding combination and coercive negotiation practice, Cigna and Zelis would effectively induce SurgXcel or other similarly situated providers into rendering services free of charge for Cigna Subscribers.

252.   SurgXcel, however, rejected Zelis's second offer and instead filed an internal appeal with Cigna regarding the allegedly non-covered services.  (*See id.* at 11 to 17).  To date, SurgXcel has not received a response to its appeal nor has it received any payment on the December 4, 2017, claim for Patient 3.

253.   To further demonstrate the arbitrary and inconsistent methodology Cigna employs in carrying out its fraudulent schemes, Patient 3 sought additional medically necessary treatment from Plaintiff SurgXcel on December 13, 2017.

- 93 -

SurgXcel submitted a timely claim to Cigna for the medically necessary services provided to Patient 3, for which the entire incurred amount of $12,500 was accepted into Cigna's adjudication system for processing. (*See* Exhibit E at 18).  Cigna processed the claim and sent SurgXcel an initial Provider EOB, for $154.06, or slightly over 1% of the total incurred charges.  (*Id.*).

254.   The medically necessary treatment was rendered by the same provider Plaintiff to Patient 3 under the same Cigna Plan and during the same coverage year as the December 4, 2017, claim.  On this Provider EOB, however, Cigna did not issue no payment and state that the services were not covered under Patient 3's Cigna Plan because they were provided by an out-of-network provider.  Instead, Cigna determined that a portion was allowed under Patient 3's Cigna Plan and used improper coding combination "CO-45" to improperly withhold the remaining $12,345.94 of the claim.  (*Id.*).  SurgXcel exhausted its internal appeals on this claim and received a letter from Cigna stating that the amount Cigna reimbursed, the "MRC2" level, was appropriately paid. (*Id.* at 20).  Thus, Cigna confirmed that the services provided to Patient 3 were, in fact, covered under Patient 3's Cigna Plan from the start.  (*Id.*).

### *Patient 4*

255.   Patient 4 sought medically necessary treatment from Plaintiff SurgXcel on November 14, 2017.  SurgXcel submitted a timely claim to Cigna for the

medically necessary services provided to Patient 4, which services Cigna previously confirmed were covered.  (*See* Exhibit F at 1 to 7).  Cigna processed the claim and sent Patient 4 an initial Patient EOB, which stated the following:

     a.  Incurred charges $28,000;

     b.  Discount $27,646.06;

     c.  Cigna Plan Enterprise paid $353.94 (1% of incurred charges);

     d.  Patient 4 owed $0; and

     e.  Savings 100%.

Cigna received the claim on December 22, 2017, and processed it on March 1, 2018 (*Ex.* F at 8 to 12).

256.  The initial Provider EOB for Patient 4, however, stated that the $27,646.06 attributable to a "discount" on the Patient EOB, was the "Amount Not Covered."  (*Id.* at 13).  Cigna attributed no deductible and no co-insurance amount to Patient 4 on the Patient and Provider EOBs.  (*Id.*).

257.  Shortly after Cigna made the initial underpayment for Patient 4, SurgXcel contacted Cigna to explain that SurgXcel was an out-of-network provider, had no contract with Cigna or any other Repricing Company and had not agreed to any discount. (Cigna call reference numbers 6632 and 2126).  The claim was sent back to Cigna for reprocessing twice; however, Cigna issued no additional payment.

- 95 -

258.   SurgXcel filed a first level appeal with Cigna on March 15, 2019, and received no response.  (Ex. F at 14 to 17).  SurgXcel contacted Cigna on March 21, 2018, regarding the Patient 4 claim appeal (Cigna call reference number 9733).  This time, the Cigna representative stated that he would send the claim back for reprocessing using a different queue and that SurgXcel would receive a response in a 2 to 3 day period.  During this call, Cigna stated that the Cigna Appeal department is a separate department and that when a provider sends in an appeal, the adjuster is supposed to pay out according to member benefits.   According to the Cigna representative, appeals take up to 60-days, Cigna allows no communications with "claims adjusters in the history of Cigna," that Cigna's characterization of a "Discount" on the Patient EOBs is really a "Not Covered" amount as labeled on the Provider EOB, and that in order for Cigna to issue a Cigna "Discount" the provider must agree to accept the drastically reduced rate.   The Cigna representative recognized that many providers fail to challenge the "ridiculously" underpaid reimbursement amounts and simply accept the "Discount."

259.   On March 29, 2018, SurgXcel filed a second appeal, notifying Cigna and Zelis that they improperly and unlawfully adjusted nearly 99% of the claim for Patient 4 using "contractual obligation" and "-45" Core reason codes based on a non-existent contract between SurgXcel and Cigna or Zelis.   (Ex. F at 18 to 22).  On April 4, 2018, Zelis sent SurgXcel a purported negotiated resolution through the

- 96 -

mails or wires.  (*Id.* at 23).  The maximum Proposed Payment Amount offered by Zelis was $3,598.40, which SurgXcel rejected by letter dated the same day.  (*Id.* at 23 to 26).  SurgXcel requested that the claim be sent back to Cigna for reprocessing. No additional payment was issued on the claim.

260.   On April 11, 2018, Cigna responded to SurgXcel's March 29, 2018, correspondence and directed SurgXcel to directly contact ERS Stratose[4] if SurgXcel disagreed with the "savings/discount amount applied" to the claim for Patient 4.  (*Id.* at 27).   SurgXcel, however, had already contacted Zelis regarding the wrongful application of the "contractual obligation" and "-45" CORE coding combination and rejected Zelis's inappropriately low maximum Proposed Payment offer.

261.   To date, Cigna has not made any additional payment to SurgXcel for the claim for Patient 4.

### *Patient 5*

262.   Patient 5 sought medically necessary treatment from co-surgeon, Dr. John D. Koerner, a Plaintiff NJSMS provider, on April 25, 2018.   Dr. Koerner submitted a timely claim to Cigna for the medically necessary services provided to Patient 5, which services were previously confirmed as covered by Cigna.   Dr. Koerner initially received payment from the Cigna Plan Enterprise for the Patient 5

---

[4] Zelis was formerly named ERS Stratose.

claim, billed at $98,000, for $1,164.08, or 1% of incurred charges. Cigna used improper CORE coding combination "contractual adjustment," "-45," "duplicate claim" and "18" to adjust the allowed amount by $96,835.92. (Exhibit G at 1). Dr. Koerner performed the complex spinal surgery with his partner, Dr. Implicito, as co-surgeons. There was no duplication in the treatment provided. In addition, NJSMS did not agree to any discount and is not contracted to accept any discount with either Cigna or any Repricing Company. Patient 5 owed no deductible and co-insurance amount. (*Id.*).

263.   Beginning on July 16, 2018, Zelis began to contact NJSMS to negotiate an increased payment for the claim for Patient 5. Zelis offered increased payments for $5,043.44 and then $6,404.67. (*See* Ex. G at 2 to 7). NJSMS rejected both offers, which were sent back to Cigna for reprocessing. Cigna reprocessed the claim for Patient 5 and provided, through the mails and wire, a Patient EOB, which stated the following:

    a.  Incurred charges: $98,000.00;

    b.  Discount: $91,595.32;

    c.  The Cigna Plan Enterprise paid $6,404.68 (6.5% of incurred charges);

    d.  Patient 5 owed $0; and

    e.  Patient 5 saved 100%.

- 98 -

(*See id.* at 8 to 11).

264.   The Provider EOB for Patient 5, however, stated that the $91,595.32 attributable to a "discount" on the Patient EOB, was the "Amount Not Covered." (*See id.* at 12 to 13).  Cigna's payment increased to 6.5% of incurred charges from 1%.  Patient 5 continued to owe no deductible or co-insurance amount on the Patient and Provider EOBs.  (*Id.*).

265.   Dr. Dante Implicito, a Plaintiff NJSMS provider, also performed medically necessary surgery on Patient 5 as co-surgeon with Dr. Koerner.  Dr. Implicito submitted a timely claim to Cigna for the medically necessary services provided to Patient 5, which services were previously confirmed as covered by Cigna.  Dr. Implicito initially received payment from the Cigna Plan Enterprise for the claim for Patient 5 for $4,845.41, or 11% of incurred charges.  (Exhibit H at 1). Cigna used improper CORE coding combination "contractual adjustment" and "-45" to adjust/reduce the allowed amount by $37,654.59.  (*Id.*).  In addition, NJSMS did not agree to any discount and is not contracted to accept any discount with either Cigna or a Cigna contracted third-party repricing company.  Patient 5 owed no deductible and co-insurance amount.  (*Id.*).

266.   After NJSMS appealed based on the improper use of the "contractual obligation" coding combinations, the Patient 5 claim was reprocessed by Cigna who provided, through the mails and wire, a Patient EOB, which stated the following:

- 99 -

    a.  Incurred charges:  $42,500.00;

    b.  Discount: $34,654.59;

    c.  The Cigna Plan Enterprise paid $7,845.41 (18% of incurred charges);

    d.  Patient 5 owed $0; and

    e.  Patient 5 saved 100%;

(Ex. H at 2 to 5).

267.   The Provider EOB for Patient 5 stated that the $34,654.59 attributable to a "discount" on the Patient EOB, was the "Amount Not Covered."  (*See id.* at 6 to 7).  Cigna's payment inexplicably increased to 18% of incurred charges from 11%. Patient 5 continued to owe no deductible and co-insurance amount on the Patient and Provider EOBs.  (*Id.*).  To date, NJSMS has not received additional payment on the claim for Patient 5.

### *Patient 6*

268.   Patient 6 sought medically necessary treatment from Plaintiff Advanced Gynecology on March 23, 2016.  Advanced Gynecology submitted a timely claim to Cigna for the medically necessary services provided to Patient 6, which were previously confirmed as covered by Cigna.  Cigna processed the claim and sent Patient 6 an initial EOB through the mails or wires, which stated the following: incurred charges:  $8,925.00; Discount $4,462.50; Cigna Plan Enterprise

- 100 -

paid $3,362.36; Patient 6 owed $1,100.14 toward her deductible, and saved 87%. Patient 6 owed no coinsurance amount.  (Exhibit I at 1 to 4).

269.   The Provider EOB, however, stated that the $4,462.50 attributed to a "Discount" by Cigna on the Patient EOB was "Amount Not Covered."  (*See id.* at 5 to 6).   Cigna adjusted the $4,462.50 amount using the improper "contractual obligation" and "-45" coding combination, despite Advanced Gynecology not being contracted with Cigna or any Repricing Company and agreed to no discount.  The Provider EOB also attributed $1,100.14 to the deductible for Patient 6; however, Patient 6 owed no coinsurance amount.  (*See id.* at 7).

### *Summary*

270.   As the foregoing examples make clear, Cigna and the Repricing Companies have no intention of processing Plaintiffs' claims for reimbursement in good faith and in accordance with the terms of the applicable plans.  Instead, Cigna uses the claims processing function as a means of enriching itself, and incentivizing its Repricing Companies to do so, by drastically under-paying out-of-network providers such as Plaintiffs while retaining for itself and its Repricing Companies the balance of the funds it has drawn down from the Cigna Plan Enterprises.  Cigna advances these goals through numerous uses of the mails and wires in furtherance of its schemes to defraud.  Only in the rare instances in which tenacious providers repeatedly challenge the severe underpayments, and after protracted and

- 101 -

administratively burdensome efforts at negotiations, will Cigna or the Repricing Companies release additional funds to Plaintiffs.

**E.    The Impact of Cigna's Conduct**

271.    Cigna's fraudulent schemes have caused Plaintiffs to suffer significant financial harm.  In addition to the pecuniary losses described above, Plaintiffs have incurred millions of dollars in time, person-hours and other administrative expenses communicating with Cigna and the Repricing Companies, both through written and oral means, in attempts to recover proper reimbursements on claims submitted by Plaintiffs for the medically necessary treatment provided to Cigna Providers.  As alleged throughout the Complaint, Cigna has desired to cause Plaintiffs precisely these types of devastating business losses.

272.    Unfortunately, the severe economic harm Plaintiffs have suffered is not the only fallout from Cigna's illegal conduct.  Cigna's indirect patient steering described herein has interfered with Plaintiffs' relationships with their patients. These attacks are also likely to lead to additional monetary losses for Plaintiffs.

273.    Worst of all, there is no end in sight.  Unless and until the Courts or law enforcement officials compel an end to Cigna's claims administration schemes, Cigna will continue to illegally and aggressively underpay Plaintiffs every day.  This will ultimately force Plaintiffs to accept unreasonably low in-network contracts that do not cover their operating costs, or more likely drive them out of business.

- 102 -

## CAUSES OF ACTION

## COUNT ONE

## (Breach of Plan Provisions for Benefits in
## Violation of ERISA § 502(a)(1)(B))

274.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

275.   Plaintiffs have standing to pursue claims under ERISA as the assignees and authorized representatives of the Cigna Subscribers' claims under the Cigna ERISA Plans.

276.   As the assignees of the Cigna Subscribers, the Plaintiffs are entitled to payment under the Cigna ERISA Plans for the medical services provided to the Cigna Subscribers by Plaintiffs.

277.   Upon information and belief, the Cigna ERISA Plans did not prohibit the Cigna Subscribers from assigning their rights to benefits under the Cigna ERISA Plans to the Plaintiffs, including the right of direct payment of benefits under the Cigna ERISA Plans to the Plaintiffs.

278.   Moreover, even if some of the Cigna ERISA Plans prohibited the assignment of benefits to the Plaintiffs, Cigna waived any purported anti-assignment provisions, ratified the assignment of benefits to Plaintiffs, and waived or is estopped from using any purported anti-assignment provisions against the Plaintiffs due to

- 103 -

Cigna's course of dealing with and statements to Plaintiffs as out-of-network providers, discussed more fully above.

279.   All of the Cigna ERISA Plans require payment of emergent and elective medical expenses incurred by the Cigna Subscribers up to the rate of Plaintiffs' full incurred charges (less in-network Patient Responsibility Amounts) for emergency/urgent care and (less out-of-network Patient Responsibility Amounts) for elective care.

280.   Plaintiffs' incurred charges represent Plaintiffs' usual and customary rates for the treatment provided to the Cigna Subscribers.

281.   Cigna breached the terms of the Plans by refusing to make out-of-network payments for charges covered by the Cigna Plans, in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).   These breaches include, among other things, refusing to pay Plaintiffs according to the Greatest of Three regulation, up to Plaintiffs' incurred charges (less in-network Patient Responsibility Amounts) for emergency/urgent care that the Plaintiffs provided to the Cigna Subscribers, as required by the ERISA Cigna Plans; and otherwise refusing to pay Plaintiffs the legally required amounts due under the Plans for the medically necessary elective procedures and services performed by Plaintiffs.

282.   As a result of, among other acts, Cigna's numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and

- 104 -

Plaintiffs are entitled to have this Court undertake a *de novo* review of the issues raised herein.

283.   Under 29 U.S.C. § 1132(a)(1)(B), the Plaintiffs are entitled to recover unpaid/underpaid benefits from Cigna.   The Plaintiffs are also entitled to declaratory and injunctive relief to enforce the terms of the Cigna ERISA Plans and to clarify their right to future benefits under such Plans, as well as attorneys' fees.

**COUNT TWO**

**(Breach of Fiduciary Duties of Loyalty**

**and Due Care in Violation of ERISA)**

284.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

285.   Pursuant to 29 U.S.C. § 1132(a)(3), a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

286.   The Plaintiffs, as the assignees of ERISA members and beneficiaries under the Plans, are entitled to assert a claim for relief for Cigna's breach of fiduciary

- 105 -

duty of loyalty and care and for failure to follow ERISA Cigna Plan documents under 29 U.S.C. § 1104(a)(1)(A), (B) and (D).

287.   The Cigna Plans designate Cigna as the authorized claims-review fiduciary for the claims at issue.  Cigna is a fiduciary in its role as the named "Claims Administrator" of each of the Cigna Plans at issue in this case, in that each plan delegates to Cigna discretionary authority over plan assets and administration.  In this fiduciary capacity, Cigna has processed claims and/or addressed appeals on behalf of all of the Cigna Plans at issue in this case.  Accordingly, as the named Claims Administrator of the Cigna Plans, Cigna has exercised discretion, control, authority and oversight in determining whether Plan benefits would be paid and the amount of Cigna Plan benefits that would be paid.

288.   As an ERISA fiduciary, Cigna owed Plaintiffs a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent fiduciary would use in the conduct of an enterprise of like character.  Further, as a fiduciary, Cigna was required to ensure that it was acting in accordance with the documents and instruments governing the Cigna Plans, and in accordance with ERISA § 404(a)(l)(B) and (D), 29 U.S.C. § 1104(a)(l)(B) and (D).  In failing to act prudently, and in failing to act in accordance with the documents governing the Plans, Cigna has violated its fiduciary duty of care.

- 106 -

289.   As an ERISA fiduciary, Cigna also owed the Plaintiffs a duty of loyalty, defined as an obligation to make decisions in the sole interest of its beneficiaries and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of members, in accordance with ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(l)(A).  Thus, Cigna could not make benefit determinations for the purpose of saving money at the expense of the Cigna Subscribers or to earn additional profits for Cigna.

290.   As an ERISA fiduciary, Cigna was also prohibited from causing the Plans to engage in any transaction Cigna knows or should know constitutes a transfer to, or use by or for the benefit of Cigna, of any ERISA Cigna Plan assets and must not deal with ERISA Cigna Plan assets in Cigna's own interest or for its own account in accordance with 29 U.S.C. § 1106(a)(1)(D) and (b)(1).

291.   Cigna violated its fiduciary duty of loyalty to the Plaintiffs by, among other things, refusing to make appropriate out-of-network payments for the medically necessary emergent and elective services provided by Plaintiffs for Cigna's own benefit and at the expense of Cigna's Subscribers and Plaintiffs, as the Cigna Subscribers' assignees.

292.   Cigna also violated its duty of loyalty by knowingly engaging in prohibited transactions by contracting directly with the Cigna ERISA Plans for Cigna to transfer the Cigna ERISA Plans' assets to a Cigna owned interest bearing

- 107 -

bank account and through use of fraudulent misrepresentations made to Plaintiffs, that Plaintiffs were not entitled to the full value of the claims accepted by the Plans to be paid in full. These fraudulent misrepresentations permitted Cigna to illegally retain Cigna ERISA Plan assets that were due and owing to the Plaintiffs under the terms of the Plans, and to earn cost-containment fees based on non-existent contracts with Cigna and/or its Repricing Companies that allowed Cigna to apply its cost-containment process. As a result of Cigna's application of the cost-containment process, Cigna benefitted, to the detriment of the Cigna Subscribers and Plaintiffs as their assignees, by earning large administrative fees based on a percentage of savings, and/or wrongfully retaining Cigna Plan assets that were rightfully due and owing to Plaintiffs under the Cigna ERISA Plans and/or earning interest on the wrongfully retained Cigna ERISA Plan assets.

293. In addition, Cigna violated its fiduciary duty of loyalty by failing to inform Plaintiffs of and to provide Plaintiffs with, as assignees of the Cigna Subscribers, information material to the claims and Cigna's handling of the claims.

294. Plaintiffs have standing to pursue claims under ERISA as assignees and authorized representatives of the Cigna Subscribers.

295. Plaintiffs are entitled to relief to remedy Cigna's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief. Plaintiffs are also entitled to seek equitable relief

- 108 -

under ERISA § 409(a) 29 U.S.C. § 1109(a), including that Cigna restore to the Cigna ERISA Plans any profits Cigna improperly earned through use of Cigna ERISA Plan assets and that Cigna is removed as the Cigna ERISA Plans' claims administrator.

## COUNT THREE

### (Denial of Full and Fair Review
### in Violation of ERISA § 503)

296.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

297.   As assignees and authorized representatives of the Cigna Subscribers' claims, Plaintiffs are entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Cigna; and (b) compliance by Cigna with applicable claims procedure regulations.

298.   Specifically, for denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133, an ERISA plan must: (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C. § 1133(1) and (2); *see also* 29 C.F.R. § 2560.503-1(g) and (h).

- 109 -

299.   Moreover, the regulations also make clear that, in the case of post-service claims submitted pursuant to group health plans, the required notification that a claim has been denied must be issued within a reasonable period of time, but not later than 30 days after receipt of the claim, unless the Cigna Subscriber is notified that, due to circumstances beyond the ERISA Cigna Plan's control, the ERISA Cigna Plan requires an additional 15 days to issue a required denial notification.   29 C.F.R. § 2560-503.1(f)(2)(iii)(B).

300.   Although Cigna is obligated to provide a "full and fair review" of denied and underpaid claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Cigna has failed to do so by, among other actions:

      a.     refusing to provide the specific reason or reasons for the denial or underpayment of claims;

      b.     refusing to provide the specific Plan provisions relied upon to support its denials or underpayments;

      c.     refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims;

      d.     refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code;

- 110 -

e.   refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits;

f.   refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure;

g.   refusing to provide Plaintiffs with the documents and information relevant to Cigna's denial of the Cigna Claims, as requested by Plaintiffs in writing,; and

h.   refusing to timely issue required notifications that the Cigna Claims have been denied or underpaid.

301.   By failing to comply with the ERISA claims procedure regulations, Cigna failed to provide a reasonable claims procedure.

302.   Because Cigna has failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Cigna does not acknowledge any legitimate basis for its denials and thus offer no meaningful administrative process for challenging its denials.

- 111 -

303.   Plaintiffs have been harmed by Cigna's failure to provide a full and fair review of appeals submitted and failure to comply with applicable claims procedure regulations under ERISA § 503, 29 U.S.C. § 1133.

304.   Plaintiffs are entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Cigna's failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

## COUNT FOUR

### (Violation of 18 U.S.C. § 1962(c))

305.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

306.   Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. § 1961(3).

307.   Cigna is a "person" within the meaning of 18 U.S.C. § 1961(3).

308.   Each of the Cigna Plans is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (described above as the "Cigna Plan Enterprises"). The Cigna Plan Enterprises were engaged in activities affecting interstate and foreign commerce at all times relevant to this Complaint.

309.   Cigna is associated with the Cigna Plan Enterprises and has conducted or participated, directly or indirectly, in the conduct of the Cigna Plan Enterprises in

- 112 -

relation to the Plaintiffs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

310.   The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully above, includes Cigna's multiple, repeated, and continuous uses of the mails and wires in furtherance of distinct but interrelated schemes to defraud, namely the Fictitious Contracting Scheme, the Repricing Reduction Scheme, the Contradictory EOB Scheme and the Forced Negotiations Scheme, in violation of 18 U.S.C. §§ 1341 and 1343.  It also includes Cigna's multiple, repeated, and continuous acts of embezzlement, theft, or unlawful conversion or abstraction of assets of the Cigna ERISA Plans, in violation of 18 U.S.C. § 664.

311.   For example, as set forth more fully above, Cigna has engaged in schemes fraudulently misrepresenting information to the Cigna Plan Enterprises, Cigna Subscribers and Plaintiffs, that non-existent contracts exist with Cigna and/or third-party Repricing Companies permit Cigna to discount the amount reimbursed to Plaintiffs.   Through these schemes, discussed more fully above, Cigna communicates contracts with Cigna ERISA Plans, through ASO agreements negotiated through the wires and/or mails, and through improper CORE coding combinations that the amounts underpaid to the Plaintiffs are justified and accurate under the terms of the Cigna ERISA Plans.  Based on Cigna's use of these improper codes, Cigna issues a Patient EOB to the patient through the mails or wires,

- 113 -

incorrectly stating that their Plaintiff provider accepted a discount and misrepresenting the patient's cost-sharing responsibility. Also based on Cigna's improper use of the "CORE" coding combinations, Cigna issues the Provider EOB through the mails or wires, which tells the provider that the same amount of the alleged discount on the Patient EOB is, in fact, not covered under the Cigna ERISA Plans. Cigna also forces negotiations with its contracted Repricing Companies through its Provider EOB, which requires the provider to negotiate a higher payment with the Repricing Company before balance billing the patient.

312. Cigna has engaged in these racketeering activities with the specific intent to defraud, described more fully above. Among other things, Cigna ignores the standard transaction payment requirements for out-of-network providers, and instead seeks to deceive the Cigna Plan Enterprises through ASO contracts, drafted by Cigna, that permit Cigna to transfer the Cigna Plan Enterprise assets into its own bank account, wrongfully retain large portions of such assets, and to calculate and retain cost-containment fees from these assets based on false pretenses. Cigna also seeks to mislead the Cigna Subscriber to believe that Cigna saved them large amounts, often upwards of 90% of their provider's incurred charges, stating that the providers agreed to fictitious negotiated discounts. Cigna also misleads Plaintiffs to believe that large percentages of the claims they submit for treatment provided to the Cigna Subscribers are not covered by the Cigna Plan Enterprises and that they

- 114 -

should accept unreasonably underpaid settlement amounts through forced negotiations with Cigna's contracted Repricing Companies.

313.   Moreover, as described more fully above, Cigna has committed these activities in furtherance of its schemes to defraud and for the purpose of depriving Plaintiffs and the Cigna Plan Enterprises of money and other property.  Cigna has embezzled or converted Cigna Plan trust assets by, among other things, retaining, earning interest on and earning administrative fees as a percentage of, fraudulently retained Cigna Plan Enterprise assets that are owed to Plaintiffs under the terms of the Cigna Plan Enterprise agreements. Cigna has also used the wires and mails in furtherance of its schemes to defraud by, among other things, disseminating false and misleading information over the wires (for example, by electronic transmission to the Plaintiffs through HIPAA standard transactions for claims submission and processing and through electronic fund transfers), and by mail.

314.   Cigna's activities described herein in violation of 18 U.S.C. § 1962(c) have obstructed, delayed, or otherwise affected interstate commerce.

315.   As a direct result of Cigna's violation of 18 U.S.C. § 1962(c), Plaintiffs have suffered substantial injury and direct to their business or property within the meaning of 18 U.S.C. § 1964(c), including, but not limited to:  (i) lost revenue from Cigna's intentional underpayment of claims submitted for reimbursement for treatment of Cigna Subscribers; (ii) lost revenue from patients being dissuaded from

- 115 -

seeking healthcare from Plaintiffs; and (iii) the costs in time, person-hours, and other administrative expense incurred because of Cigna's unlawful conduct.

## COUNT FIVE

### (Violation of 18 U.S.C. § 1962(d) by

### conspiring to violate 18 U.S.C. § 1962(c))

316.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

317.   Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. § 1961(3).

318.   Cigna is a "person" within the meaning of 18 U.S.C. § 1961(3).

319.   Each of the Cigna Plans is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (described above as the "Cigna Plan Enterprises"). The Cigna Plan Enterprises were engaged in activities affecting interstate and foreign commerce at all times relevant to this Complaint.

320.   Cigna has conspired with one or more non-party Repricing Companies, within the meaning of 18 U.S.C. § 1962(d) to violate the provisions of 18 U.S.C. § 1962(c).

321.   Specifically, Cigna and one or more of the non-party Repricing Companies, each agreed and intended, or adopted the goal of furthering or facilitating, the following endeavor:  to conduct or participate, directly or indirectly,

- 116 -

in the management and operation of the affairs of the Cigna Plan Enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

322.   The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5), described more fully above, includes Cigna's multiple, repeated, and continuous uses of the mails and wires in furtherance of distinct but interrelated schemes to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.  It also includes Cigna's multiple, repeated, and continuous acts of embezzlement, theft, or unlawful conversion or abstraction of assets of the Cigna ERISA Plans, in violation of 18 U.S.C. § 664.

323.   For example, as set forth more fully above, Cigna has conspired with one or more non-party Repricing Companies and other entities to engage in schemes to fraudulently misrepresent information to the Cigna Plan Enterprises, Cigna Subscribers and Plaintiffs and conceal its intention to underpay the Plaintiffs' claims, through the Fictitious Contracting Scheme, the Repricing Reduction Scheme, the Contradictory EOB Scheme and the Forced Negotiations Scheme, that non-existent contracts exist with Cigna and/or third-party Repricing Companies, that permit Cigna to discount the amount reimbursed to Plaintiffs.  Through these improper discounts, including the conspiracy through the Forced Negotiations Scheme, whereby Cigna contracts with the Repricing Companies to coerce and intimidate Plaintiffs into accepting drastic underpayments in exchange for waiving their rights

- 117 -

to additional payment or the ability to balance bill patients, Cigna embezzles and/or converts Cigna Enterprise assets that are due and owing to Plaintiffs under the terms of the Cigna Plan Enterprise agreements, increased administrative fees calculated as a percentage of savings on the discount taken and interest earned on the discounted Cigna Plan Enterprise assets.

324.   Moreover, as described more fully above, Cigna has conspired with one or more non-party Repricing Companies to engage in these racketeering activities with the specific intent to defraud, described more fully above.  Among other things, Cigna seeks to deceive the Plaintiffs through the mails and/or wires through the Fictitious Contracting Scheme and the Repricing Reduction Scheme, that the drastically reduced claims were justified based on fictitious contracts between Plaintiffs and Cigna and/or its non-party Repricing Companies and that Plaintiffs, therefore, have agreed to discounted reimbursement rates. Cigna also misleads the Cigna Plan Enterprises by contracting to permit application of the cost-containment process to those claims where a Provider has contracted with a Repricing Company under the guise that it will save the Cigna Plan Enterprises money, when in fact, Cigna applies the cost-containment process to every single out-of-network claim through the Repricing Reduction Scheme, in order to "earn" cost-containment fees of 29% to 34% of the amount not paid to the Plaintiffs, or the alleged "savings." Cigna also seeks to mislead the Cigna Subscribers through the Contradictory EOB

- 118 -

Scheme, through the mails and wires to believe that it saved them large amounts, often upwards of 90% of their provider's incurred charges, through negotiations for discounts with the Repricing Companies that have not occurred. Cigna also misleads Plaintiffs through the mails and wires, also through the Contradictory EOB Scheme, to believe that large percentages of the claims they submit for treatment provided to the Cigna Subscribers are not covered by the Cigna Plan Enterprises and that they should accept unreasonably underpaid settlement amounts through forced negotiations with Cigna's contracted Repricing Companies.

325. In addition, as described more fully above, Cigna and the non-party Repricing Companies have conspired to commit these activities in furtherance of Cigna's schemes to defraud and for the purpose of depriving Plaintiffs and the Cigna Plan Enterprises of money and other property. Cigna has embezzled or converted Cigna Plan Enterprise assets by among other things, retaining, earning interest on and earning administrative fees as a percentage of (net a percentage of savings paid to the non-party Repricing Company), fraudulently retained Cigna Plan Enterprise assets that are owed to Plaintiffs under the terms of the Cigna Plan Enterprise agreements. Cigna has also used the wires and mails in furtherance of its schemes to defraud by, among other things, disseminating false and misleading information over the wires (for example, by electronic transmission to the Plaintiffs through HIPAA

- 119 -

standard transactions for claims submission and processing and through electronic fund transfers), and by mail.

326.   Cigna's activities described herein in furtherance of its conspiracy to violate 18 U.S.C. § 1962(c) have obstructed, delayed, or otherwise affected interstate commerce.

327.   As a direct result of Cigna's violations of 18 U.S.C. § 1962(c) and other acts of racketeering undertaken in furtherance of Cigna's unlawful conspiracy to violate 18 U.S.C. § 1962(c) described herein, Plaintiffs have suffered substantial injury to their business or property within the meaning of 18 U.S.C. § 1964(c), including, but not limited to:  (i) lost revenue from Cigna's intentional underpayment of claims submitted for reimbursement for treatment of Cigna Subscribers; (ii) lost revenue from patients being dissuaded from seeking healthcare from Plaintiffs; and (iii) the costs in time, person-hours, and other administrative expense incurred because of Cigna's unlawful conduct.

## COUNT SIX

## (Violation of 18 U.S.C. § 1962(a))

328.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

329.   Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. § 1961(3).

- 120 -

330.   Cigna is a "person" within the meaning of 18 U.S.C. § 1961(3).

331.   Cigna and the Repricing Companies are "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).  Cigna and the Repricing Companies were engaged in activities affecting interstate and foreign commerce at all times relevant to this Complaint.

332.   Cigna has directly and indirectly invested the proceeds of its pattern of racketeering activity in the establishment or operation of itself and the Repricing Companies, in violation of 18 U.S.C. § 1961(a).

333.   The pattern of racketeering activity, the proceeds of which were invested in the establishment or operation of these enterprises, includes Cigna's multiple, repeated, and continuous uses of the mails and wires in furtherance of distinct but interrelated schemes to defraud, namely, the Fictitious Contracting Scheme, the Repricing Reduction Scheme, the Contradictory EOB Scheme and the Forced Negotiations Scheme, in violation of 18 U.S.C. §§ 1341 and 1343, described more fully above.  It also includes Cigna's multiple, repeated, and continuous acts of embezzlement, theft, or unlawful conversion or abstraction of assets of the Cigna ERISA Plans, described more fully above, in violation of 18 U.S.C. § 664.

334.   Cigna's activities described herein in violation of 18 U.S.C. § 1962(a) have obstructed, delayed, or otherwise affected interstate commerce.

335.    As a direct result of Cigna's violation of 18 U.S.C. § 1962(a), Plaintiffs have suffered and will continue to suffer substantial injury to their business or property within the meaning of 18 U.S.C. § 1964(c), including, but not limited to: (i) lost revenue from Cigna's intentional underpayment of claims submitted for reimbursement for treatment of Cigna Subscribers; (ii) lost revenue from patients being dissuaded from seeking healthcare from Plaintiffs; and (iii) the costs in time, person-hours, and other administrative expense incurred because of Cigna's unlawful conduct.

## COUNT SEVEN

### (Violation of 18 U.S.C. § 1962(d) by

### conspiring to violate 18 U.S.C. § 1962(a))

336.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

337.    Each of the Plaintiffs is a "person" within the meaning of 18 U.S.C. § 1961(3).

338.    Cigna is a "person" within the meaning of 18 U.S.C. § 1961(3).

339.    Cigna and the Repricing Companies are "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).  Cigna and the Repricing Companies

- 122 -

were engaged in activities affecting interstate and foreign commerce at all times relevant to this Complaint.

340.   Cigna has conspired with one or more non-party Repricing Companies, within the meaning of 18 U.S.C. § 1962(d) to violate the provisions of 18 U.S.C. § 1962(a).

341.   Specifically, Cigna and one or more of the non-party Repricing Companies, each agreed and intended, and/or adopted the goal of furthering or facilitating, the following endeavor:  directly or indirectly investing the proceeds of Cigna's pattern of racketeering activity in the establishment or operation of Cigna and the Repricing Companies, in violation of 18 U.S.C. § 1961(a).

342.   The pattern of racketeering activity, the proceeds of which intended to be invested in the establishment or operation of Cigna and the Repricing Companies, includes Cigna's multiple, repeated, and continuous uses of the mails and wires in furtherance of distinct but interrelated schemes to defraud, namely the Fictitious Contracting Scheme, the Repricing Reduction Scheme, the Contradictory EOB Scheme and the Forced Negotiations Scheme, in violation of 18 U.S.C. §§ 1341 and 1343, described more fully above.  It also includes Cigna's multiple, repeated, and continuous acts of embezzlement, theft, or unlawful conversion or abstraction of assets of the Cigna ERISA Plans, described more fully above, in violation of 18 U.S.C. § 664.

- 123 -

343.   Cigna's activities described herein in furtherance of its conspiracy to violate 18 U.S.C. § 1962(a) have obstructed, delayed, or otherwise affected interstate commerce.

344.   As a direct result of Cigna's violations of 18 U.S.C. § 1962(a) and other acts of racketeering undertaken in furtherance of Cigna's unlawful conspiracy to violate 18 U.S.C. § 1962(a) described herein, Plaintiffs have suffered substantial injury to their business or property within the meaning of 18 U.S.C. § 1964(c), including, but not limited to:  (i) lost revenue from Cigna's intentional underpayment of claims submitted for reimbursement for treatment of Cigna Subscribers; (ii) lost revenue from patients being dissuaded from seeking healthcare from Plaintiffs; and (iii) the costs in time, person-hours, and other administrative expense incurred because of Cigna's unlawful conduct.

## COUNT EIGHT

### (Breach of Contract – non-ERISA)

345.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

346.   To the extent that some of the Cigna Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

347.   As set forth more fully above, upon information and belief, all of the

- 124 -

Cigna Plans require payment of medical expenses incurred by the Cigna Subscribers for emergent/urgent care and elective services up to Plaintiffs' incurred charges, less patient cost-sharing requirements.  Further, under the terms of the Cigna Plans, the Cigna Subscribers are entitled to coverage for the services that they received from the Plaintiffs.

348.   By virtue of the AOB Contracts executed by the Cigna Subscribers, Plaintiffs were assigned the right to receive payment under the Plans for the services rendered to the Cigna Subscribers.  Pursuant to said AOB Contracts, Cigna is contractually obligated to pay Plaintiffs for these services.

349.   Cigna failed to make payment of benefits to Plaintiffs in the manner and amounts required under the terms of the Cigna Plans.

350.   As the result of Cigna's failure to comply with the terms of the Cigna Plans, Plaintiffs, as assignees, have suffered damages and lost benefits for which they are entitled to recover damages from Cigna, including unpaid benefits, restitution, interest, and other contractual damages sustained by the Plaintiffs.

## COUNT NINE

### (Breach of the Duty of Good Faith and

### Fair Dealing – non-ERISA)

351.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

- 125 -

352.   As set forth more fully above, if any of the Cigna Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the Cigna Plans contain an implied duty of good faith and fair dealing.

353.   Cigna, as the obligors under the Cigna Plans, owed the Cigna Subscribers a duty of good faith and fair dealing with respect to said Cigna Plans.

354.   As set forth more fully above, the Cigna Subscribers received healthcare services from Plaintiffs and executed AOB Contracts, among other documents, in which they assigned to Plaintiffs their right to benefits under the Cigna Plans for the services that Plaintiffs provided to the Cigna Subscribers.

355.   By virtue of these assignments, Cigna also owes this duty of good faith and fair dealing to Plaintiffs.

356.   Cigna breached its duty of good faith and fair dealing owed to Plaintiffs, as assignees of rights and benefits under the Plans, in a number of ways, described more fully above.

357.   Moreover, *N.J.S.A.* 17:29B-3, *et seq*., defines the public interests of New Jersey and prohibits unfair methods of competition and unfair or deceptive acts or practices in the business of insurance.

358.   Without limitation, Cigna's breaches include, but are not limited to, Cigna:

- 126 -

a. using predetermined reimbursement rates to maximize Cigna's profits at the expense of Plaintiffs and the Cigna Subscribers, through Cigna's application of the cost-containment process;

b. failing to provide the Plaintiffs with adequate written explanations for the failure to pay all or a portion of Plaintiffs' claims for the services provided to the Cigna Subscribers;

c. failing to pay the Plaintiffs' charges for the healthcare services provided to the Cigna' Subscribers, and failing to provide adequate written explanations for the refusal to pay all or a portion of such claims, within the statutorily prescribed time frames;

d. fraudulently using CORE coding combinations to substantiate application of Cigna's cost-containment program when no contracts with Cigna or Repricing Companies exist;

e. providing patently inadequate explanations for its under-payments Plaintiffs;

f. not attempting in good faith to effectuate prompt, fair and equitable settlement of claims for which liability had become reasonably clear;

g. compelling the Plaintiffs to institute litigation to recover amounts due under the Plans by refusing to pay claims properly;

- 127 -

h.  failing to promptly provide a reasonable explanation of the basis in the Cigna Plans in relation to the facts or applicable law for nonpayment and underpayment Plaintiffs' claims;

i.  violating applicable statutory and regulatory provisions governing the business of insurance;

j.  committing unfair and deceptive acts and practices in handling the Plaintiffs' claims;

k.  making use of funds which should have been paid to the Plaintiffs pursuant to their claims for benefits under the Plans;

l.  fraudulently communicating to the Cigna Subscribers that Plaintiffs accepted discounts on the Cigna Claims and, as a result, improperly calculating the Cigna Subscribers' Patient Responsibility Amounts;

m. fraudulently communicating to Plaintiffs that large portions of the Cigna Claims were not covered amounts based on non-existent agreements and improper use of the CO and 45 CORE coding combinations;

n.  earning interest on the funds which should have been paid to Plaintiffs pursuant to their claims for benefits under the Cigna Plans; and

- 128 -

o. earning increased administrative fees as a percentage of savings on the funds which should have been paid to Plaintiffs pursuant to their claims for benefits under the Cigna Plans by applying the cost-containment process.

359.   Cigna's conduct in derogation of its duty of good faith and fair dealing under the Plans has deprived Plaintiffs of their reasonable expectations and benefits as assignees of benefits under the Cigna Plans.

## COUNT TEN

### (Declaratory Judgment - 28 U.S.C. § 2201)

360.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

361.   This is a count for declaratory relief pursuant to 28 U.S.C. § 2201.

362.   Upon information and belief, none of the Cigna Plans allow Cigna to unilaterally and arbitrarily reimburse predetermined underpaid amounts for treatment provided by out-of-network providers through fraudulent misrepresentations that the out-of-network providers have contracts with Cigna or Repricing Companies that permit Cigna to discount the out-of-network providers' claims for emergent/urgent and elective treatment rendered to Cigna Subscribers.

- 129 -

363. Likewise, on information and belief, the Cigna Plans require reimbursement for emergency/urgent and elective treatment provided by out-of-network providers equal to the "allowed amount," up to the providers' full incurred charges less cost-sharing requirements, for out-of-network providers. For emergent/urgent ERISA claims, the reimbursement amount must be made in accordance with the ACA Greatest of Three regulation.

364. Under New Jersey law prior to August 30, 2018, for the emergency/urgent treatment provided by Plaintiffs covered by non-Cigna ERISA Plans, insurers who provide coverage for emergency/urgent care and receive a claim for emergency/urgent care provided by an out-of-network hospital are required to pay an amount sufficient to protect the patient/insured from being balance billed. To protect its insureds against balance billing, an insurer may (a) pay the full amount of the charges, (b) negotiate a settlement of the claim with the provider or (c) negotiate an in-network agreement with the provider. *Aetna Health, Inc. v. Srinivasan*, 2016 N.J. Super. Unpub. LEXIS 1515 (App. Div., June 29, 2016)(the "Aetna Order"). The insurer may not unilaterally and arbitrarily decide whether it will pay the out-of-network provider's claim and, if so, how much of the claim it will pay.

365. As a direct and proximate result of Cigna's intentional acts and omissions, including, but not limited to, Cigna's improper use of the CORE coding combinations to justify application of its cost-containment process and other drastic

- 130 -

claims underpayments, Cigna's drastic underpayment of predetermined amounts, Cigna's contradictory EOBs whereby the Patient EOB fraudulently communicates that Plaintiffs accepted a discount they did not accept and whereby the Provider EOB states those same alleged discounted amounts were not covered and requires the provider to contact a Repricing Company to negotiate a higher payment amount that still results in a drastic underpayment, and Cigna's failure to comply with the terms of the Plans and statutory requirements to pay claims timely, Plaintiffs have sustained and will continue to sustain damages and have been deprived of and will continue to be deprived of the compensation to which they are entitled for providing covered hospital services to the Cigna Subscribers.

366.   The existence of another potentially adequate remedy does not preclude a judgment for declaratory relief.  *See* Federal Rules of Civil Procedure, Rule 57.

367.   Plaintiffs are entitled to supplemental relief pursuant to 28 U.S.C. § 2201, including the payment of all money that was not paid by Cigna to the Plaintiffs for providing the covered hospital services described in this Complaint.

## <u>COUNT ELEVEN</u>

### (Breach of Fiduciary Duty – non-ERISA)

368.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

- 131 -

369.   At all relevant times, Cigna was the claims administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Cigna Plans.  As such, even if some of the Plans are not employee welfare benefit plans governed by ERISA, Cigna nonetheless owed and owes the Cigna Subscribers fiduciary duties under the Plans.

370.   As set forth more fully above, the Cigna Subscribers have received healthcare services from Plaintiffs and executed AOB Contracts, among other documents, in which they assigned to Plaintiffs all rights to benefits under the Plans for the services that the Plaintiffs provided to the Cigna Subscribers.

371.   By virtue of these assignments, Cigna also owed and owes this fiduciary duty to Plaintiffs, as the assignees of beneficiaries under the Cigna Plans.

372.   As set forth more fully above, upon information and belief, the Plans did not prohibit the Cigna Subscribers from assigning their rights to benefits under the Plans to the Plaintiffs, including the right of direct payment of benefits under the Plans to the Plaintiffs.

373.   Moreover, as set forth more fully above, even if some of the Plans prohibited the assignment of benefits to the Plaintiffs, Cigna has waived any purported anti-assignment provisions, has ratified the assignment of benefits to Plaintiffs, and/or is estopped from using any purported anti-assignment provisions against Plaintiffs due to their course of dealing with and statements to Plaintiffs as out-of-network providers, discussed more fully above.

- 132 -

374.   Cigna breached the fiduciary duties owed to the Plaintiffs in a number of ways, described more fully above.

375.   As the result of Cigna's violations of their fiduciary duties to Plaintiffs, the Plaintiffs have suffered, and continue to suffer, substantial damages.

## COUNT TWELVE

### (Unjust Enrichment)

376.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

377.   Plaintiffs have conferred upon Cigna the benefit of providing treatment for Cigna's Subscribers.

378.   At the time Plaintiffs treated Cigna's Subscribers, Plaintiffs reasonably expected remuneration from Cigna up to their incurred charges, less any applicable Patient Responsibility Amounts.

379.   At the time Plaintiffs treated the Cigna Subscribers, Cigna was aware that Plaintiffs expected to receive up to their incurred charges, less any applicable Patient Responsibility Amounts.

380.   By regularly and intentionally underpayment Plaintiffs for the treatment they provided to the Cigna Subscribers, Cigna has been unjustly enriched.

- 133 -

381.   As a result of Cigna's unlawful, unjust, and wrongful acts, Plaintiffs suffered and continue to suffer damages and are owed restitution from Cigna.

## COUNT THIRTEEN

### (Temporary and Permanent Injunctive Relief)

382.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

383.   Currently, Cigna is wrongfully denying payment in whole or in part for virtually all claims for benefits submitted for emergent/urgent and elective medically necessary treatment provided to the Cigna Subscribers by Plaintiffs as out-of-network providers.  In so doing, Cigna has failed and is failing to comply with the terms of the Plans and its other obligations, including its obligations under ERISA.

384. Cigna is also engaging in fraudulent activity through misrepresentations made to Plaintiffs, the Cigna Plans and Cigna Subscribers to conceal its intent to underpay claims and: (1) improperly transfer of Cigna Plan funds to a Cigna owned interest bearing bank account, (2) retain Cigna Plan funds that should have been reimbursed to Plaintiffs under the Cigna Plans, (3) earn interest on those amounts, and (4) earn increased administrative fees based on a percentage of savings on the underpaid amounts due and owing to Plaintiffs under the Cigna Plans.

- 134 -

385.   Unless enjoined from doing so, Cigna will continue to operate its fraudulent scheme and to not comply with the terms of the Plans and their other obligations, including under ERISA, to the Plaintiffs' severe detriment.  A monetary judgment in this case will only compensate Plaintiffs for past losses, and will not stop Cigna from continuing to confiscate and wrongfully profit from money earned by Plaintiffs, which is necessary to maintain their medical practices.  Plaintiffs have no practical or adequate remedy, either administratively or at law, to avoid these future losses.

386.   Plaintiffs are entitled to a preliminary and permanent injunction removing Cigna as claims administrator to the Cigna Plans so that Cigna cannot continue to summarily deny claims for medically-necessary services provided by Plaintiffs to the Cigna Subscribers.

## COUNT FOURTEEN

### (Violation of New Jersey's Coverage and
### Payment Mandates)

387.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

388.   To the extent coverage for the Cigna Claims is provided by non-Cigna ERISA Plans, Plaintiffs rendered emergency/urgent care to the Cigna Subscribers, as it was required to do pursuant to state and federal law, and thereafter, submitted

- 135 -

claims for such healthcare services to Cigna for payment, in accordance with the statutory requirements of the New Jersey prompt pay legislation. *N.J.S.A.* 17:48E-10.1(d)(1).

389.   For claims submitted for reimbursement by Plaintiffs prior to August 30, 2018, Cigna underpaid Plaintiffs on their reimbursement claims and failed to provide Plaintiffs with written explanation for the failure to reimburse all or a portion of the claim as is required under the New Jersey prompt pay legislation. *N.J.S.A.* 17:48E-10.1(d)(2).

390.   Cigna's failure to remit full reimbursement of Plaintiffs' charges for healthcare services, or provide a written explanation for the failure to pay all or a portion of such claims, within the statutorily proscribed time frames under the New Jersey prompt pay legislation, has resulted in overdue claims to Plaintiffs. *N.J.S.A.* 17:48E-10.1(d)(7).

391.   Moreover, New Jersey laws and regulations, and the Aetna Order, require Cigna to reimburse Plaintiffs for the emergency/urgent treatment that Plaintiffs provided to Cigna Subscribers, in an amount up to Plaintiffs' incurred charges less the amount Cigna Subscribers would have been responsible had they received treatment at an in-network facility. *See*, *e.g.*, *N.J.S.A.* 26:2S-6.1(a); *N.J.A.C.* 11:24-5.3(b); *Aetna Order*. Cigna underpaid Plaintiffs' pre-August 30, 2018, Cigna Claims, and violated these statutory and regulatory requirements.

392.   Plaintiffs have suffered, and continues to suffer, substantial damages as a result of Cigna's wrongful conduct.

## COUNT FIFTEEN

### (Violation of New Jersey Consumer Fraud Act)

393.   The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

394.   Plaintiffs are "persons" as defined by *N.J.S.A.* 56:8-1(d).

395.   The medical services at issue in this case and the Cigna Plans are all "merchandise" as defined by *N.J.S.A.* 56:8-1(c).

396.   The sale of said merchandise to consumers are "sales" as defined by *N.J.S.A.* 56:8-1(e).

397.   With the intent that consumers enroll in the Cigna Plans, Cigna has represented to New Jersey consumers that such plans provide coverage for medically necessary treatment at both in-network and out-of-network healthcare facilities.

398.   Upon information and belief, Cigna has marketed its out-of-network coverage to the public, including to New Jersey consumers, as an additional benefit included in their health insurance plans.  Members of the public, including New Jersey consumers, who enroll in such plans, reasonably rely on the fact that

- 137 -

medically necessary treatment expenses will be covered by their health insurance plans by Cigna.

399. Cigna's intentional concealment of its practice of drastically underpaying claims based on fraudulent misrepresentations to both Plaintiffs and Cigna Subscribers, that large portions of Cigna Subscriber claims are discounted/not covered based on non-existent contracts with Cigna and/or Repricing Companies, force Providers to negotiate pre-determined and underpaid amounts with Repricing Companies or balance bill the Cigna Subscribers for underpaid amounts incorrectly categorized as "not-covered," as well as incorrect cost-sharing amounts based on the terms of the Cigna Plans. This practice will continue to cause hundreds of patients, and Plaintiffs as their assignees, an ascertainable loss.

400. Upon information and belief, Cigna knowingly and willfully induced patients into enrolling in its health insurance plans by representing that the plans provided coverage for out-of-network medically necessary treatment, and, at the time of patient enrollment, effectively concealed their practice of drastically underpaying claims based on fraudulent misrepresentations to both Plaintiffs and Cigna Subscribers as described more fully above.

401. Said representations and concealments are material to consumer decisions regarding which insurance plans to sign up for and which medical

- 138 -

professionals to use, and they constitute unlawful practices pursuant to *N.J.S.A.* 56:8-2.

402.   As a result of Cigna's misrepresentations and concealments regarding their practice of fraudulently underpaying out-of-network claims, Plaintiffs have and will continue to suffer ascertainable losses of revenue.

403.   In light of the foregoing, Cigna violated *N.J.S.A.* 56:8-1, et seq.

404.   Plaintiffs, as assignees of the Cigna Subscribers, bring this action pursuant to *N.J.S.A.* 56:8-19, as persons that have suffered and will continue to suffer an ascertainable loss of money as a result of Cigna's unlawful practices, and in accordance therewith, Plaintiffs seek equitable relief, statutory treble damages, attorneys' fees, and court costs.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury on all issues so triable.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this complaint will be mailed to the New Jersey Attorney General within ten days of filing with the Court pursuant to *N.J.S.A.* 56:8-20.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment in their favor against Cigna as follows:

A.     Declaring that Cigna has breached the terms of the Cigna Plans with regard to out-of-network benefits and awarding damages for unpaid out-of- network benefits, as well as awarding injunctive and declaratory relief to prevent Cigna's continuing actions detailed herein that are unauthorized and prohibited by the Cigna Plans and applicable law;

B.     Declaring that Cigna failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Cigna's actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

C.     Declaring that Cigna failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that as a result of Cigna's failure to provide to Plaintiffs their requested documents and information, Plaintiffs are entitled to statutory damages under Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1).

- 140 -

D.     Declaring that Cigna violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

E.     Declaring that Cigna violated their fiduciary duties by engaging in prohibited transactions as a fiduciary to the Cigna ERISA Plans under § 406 of ERISA, 29 U.S.C. § 1106, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA, including disgorgement of profits earned as a result of Cigna entering into the prohibited transactions and Cigna's removal as the ERISA Cigna Plan claims administrator.

F.     Declaring that under New Jersey law prior to August 30 2018, Cigna was obligated to pay out-of-network providers for emergency/urgent care rendered to the Cigna Subscribers and that Cigna may not refuse to pay or delay paying such claims, unilaterally and arbitrarily set an "allowed amount" it will pay on such claims, or otherwise unilaterally and arbitrarily reduce its obligation to pay for such claims;

G.     Treble the damages sustained by Plaintiffs as described above under 18 U.S.C. § 1964(c);

H.     Statutory treble damages under the New Jersey Consumer Fraud Act;

I.     Punitive damages;

- 141 -

J.      Compensatory and consequential damages resulting from injury to Plaintiffs' businesses in the millions of dollars, as set forth above and to be further established at trial;

K.      Awarding damages based on Cigna misrepresentations and nondisclosures regarding the fraudulent schemes employed by Cigna to embezzle and convert Cigna Plan assets to the detriment of Plaintiffs, the Cigna Plans and the Cigna Subscribers;

L.      Permanently enjoining Cigna from continuing to administer claims processing for the Cigna Plans;

M.      Appointing an independent fiduciary at Cigna's expense to readjudicate all of the Cigna Claims processed by Cigna, and to reimburse to Plaintiffs all amounts Cigna was required to reimburse Plaintiffs pursuant to the Plan documents plus interest;

N.      Ordering Cigna to pay all reasonable costs and expenses of the independent fiduciary in re-adjudicating the Cigna Claims and the reasonable costs and expenses associated with correcting all improperly adjudicated claims identified in this Complaint.

O.      Awarding lost profits, contractual damages, and compensatory damages in such amounts as the proofs at trial shall show;

- 142 -

P.    Awarding exemplary damages for Cigna's intentional and tortious conduct in such amounts as the proofs at trial will show;

Q.    Awarding restitution for payments improperly withheld by Cigna;

R.    Declaring that Cigna has violated the terms of the relevant Plans and/or policies of insurance covering the Cigna Subscribers;

S.    Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including 29 U.S.C. § 1132(g);

T.    Awarding costs of suit;

U.    Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

V.    Awarding all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**K&L GATES, LLP**

By:  /s/ Anthony P. La Rocco
Anthony P. La Rocco
anthony.larocco@klgates.com
One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848.4104 Telephone
(973) 556.1584 Facsimile

***Attorneys for Plaintiffs***

Dated:  December 31, 2019

- 143 -

## CERTIFICATION UNDER L. CIV. R. 11.2

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**K&L GATES, LLP**

By: /s/ Anthony P. La Rocco
Anthony P. La Rocco
anthony.larocco@klgates.com
One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848.4104 Telephone
(973) 556.1584 Facsimile

***Attorneys for Plaintiffs***

Dated:  December 31, 2019

- 144 -

## LOCAL RULE 201.1 CERTIFICATION

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because the damages recoverable by Plaintiffs exceed the sum of $150,000, exclusive of interest and costs.

Respectfully submitted,

**K&L GATES, LLP**

By:  /s/ Anthony P. La Rocco
Anthony P. La Rocco
anthony.larocco@klgates.com
One Newark Center, 10th Floor
Newark, New Jersey 07102
(973) 848.4104 Telephone
(973) 556.1584 Facsimile

***Attorneys for Plaintiffs***

Dated:  December 31, 2019

- 145 -