# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ADVANCED GYNECOLOGY AND LAPAROSCOPY OF NORTH JERSEY, P.C., et al.,

Plaintiffs,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al.,

Defendants.

Hon. Esther Salas, U.S.D.J.

Hon. Michael A. Hammer, U.S.M.J.

Civil Action No. 2:19-cv-22234-ES-MAH

---

## BRIEF OF PLAINTIFFS IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS CIGNA HEALTH AND LIFE INSURANCE COMPANY AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY

---

**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiffs*

ANTHONY P. LA ROCCO
GEORGE P. BARBATSULY
CHARLES F. RYSAVY
STACEY A. HYMAN
    On the Brief

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND .................................................................................................. 4

LEGAL ARGUMENT .......................................................................................... 7

I.      STANDARD OF REVIEW ........................................................................ 7

II.     PLAINTIFFS PLEAD VIABLE ERISA CLAIMS......................................... 8

        A.      Plaintiffs Plead a Viable Denial of Benefits Claim (Count 1) ............. 8

        B.      Plaintiffs Plead a Viable Breach of Fiduciary Duty Claim
                (Count 2)........................................................................................ 12

        C.      Plaintiffs Plead a Viable Claim For Failure to Provide a Full
                and Fair Review (Count 3) .............................................................. 14

III.    PLAINTIFFS PLEAD VIABLE RICO CLAIMS.......................................... 15

        A.      Plaintiffs Plead a Viable Section 1962(c) Claim (Count 4)............... 15

                1.      Plaintiffs Sufficiently Plead Mail and Wire Fraud .................. 16

                2.      Plaintiffs Sufficiently Plead Violations of 18 U.S.C. § 664 ..... 22

                3.      Plaintiffs Sufficiently Plead RICO Causation and Injury ......... 25

        B.      Plaintiffs Plead a Viable Section 1962(a) Claim (Count 6)............... 29

        C.      Plaintiffs Plead Viable RICO Conspiracy Claims
                (Counts 5 and 7) ............................................................................ 31

IV.     PLAINTIFFS SUFFICIENTLY PLEAD STATE LAW CLAIMS ............... 32

        A.      Plaintiffs Plead a Valid Breach of Contract Claim (Count 8) ............. 32

B.   Plaintiffs Plead a Valid Claim for Breach of the Duty of Good Faith and Fair Dealing (Count 9) .....................................................................33

C.   Plaintiffs Plead a Valid Declaratory Judgment Claim (Count 10) ........34

D.   Plaintiffs Plead a Viable State Law Claim For Breach of Fiduciary Duty (Count 11) .................................................................34

E.   Plaintiffs Plead a Viable Quantum Meruit Claim (Count 12)..............35

F.   Plaintiffs Plead a Valid HCAPPA Claim (Count 14)...........................37

G.   Plaintiffs Plead a Viable Consumer Fraud Act Claim (Count 15)......39

    1.   Plaintiffs' are not required to be "consumers" .........................40

    2.   Plaintiffs satisfy Rule 9(b) pleading requirements ..................42

V.   PLAINTIFFS' CLAIMS ARE TIMELY .......................................................44

CONCLUSION ...........................................................................................................45

# TABLE OF AUTHORITIES

## CASES

Anderson v. Ayling,
396 F.3d 265 (3d Cir. 2005)......................................................................25

Anza v. Ideal Steel Supply Corp.,
547 U.S. 451 (2006)...................................................................................29

Arc Networks, Inc. v. Gold Phone Card Co.,
333 N.J. Super. 587 (Law Div. 2000)......................................................40

Ashcroft v. Iqbal,
556 U.S. 662 (2009).....................................................................................8

Beck v. Prupis,
529 U.S. 494 (2000)...................................................................................32

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).....................................................................................8

Bickhart v Carpenters Health & Welfare Fund of Pa & Vicinity,
732 F. App'x 147 (3d Cir. 2018) .............................................................12

Bosland v. Warnock Dodge, Inc.,
197 N.J. 543 (2009)...................................................................................39

Bridge v. Phoenix Bond & Indem. Co.,
553 U.S. 639 (2008)............................................... 15, 17, 19, 22, 23, 26

Brittingham v. Mobil Corp.,
943 F.2d 297 (3d Cir. 1991).....................................................................30

Burstein v. Retirement Plan, Allegheny Health,
334 F.3d 365 (3d Cir. 2003)......................................................................11

Cetel v. Kirwan Fin'l Group, Inc.,
460 F.3d 494 (3d Cir. 2006)......................................................................44

Coastal Group, Inc. v. Dryvit Systems, Inc.,
274 N.J. Super. 171 (App. Div. 1994) .......................................................40

Cox v. Sears Roebuck & Co.,
138 N.J. 2 (1994)...............................................................................39

Daloisio v. Liberty Mut. Fire Ins. Co.,
754 F.Supp.2d 707 (D.N.J. 2010) ...........................................................43

Desmond v. Siegel,
2012 WL 3228681 (D.N.J. Aug. 6, 2012) ................................................27

F.G. v. MacDonell,
150 N.J. 550 (1997)............................................................................35

Franco v. Conn. Gen. Life Ins. Co.,
289 F.R.D. 121 (D.N.J. 2013)................................................................10

Gennari v. Weichert Co. Realtors,
148 N.J. 582 (1997)............................................................................39

Guy's Mech. Sys., Inc. v. FIA Card Servs., N.A.,
339 F. App'x 193 (3d Cir. 2009) ............................................................30

Hahnemann University Hosp. v. All Shore, Inc.,
514 F. 3d 300 (3d Cir. 2008)..................................................................13

Hemi Group, LLC v. City of New York, N.Y.,
559 U.S. 1 (2010) ........................................................................ 25, 29

Holmes v. Securities Investor Protection Corp.,
503 U.S. 258 (1992)............................................................................25

HUMC Opco LLC v. United Benefit Fund,
No. 16-168, 2016 WL 6634878 (D.N.J. Nov. 7, 2016).................................. 14, 15

Hundred East Credit Corp. v. Eric Schuster,
212 N.J. Super. 350 (App. Div.),
certif. denied, 107 N.J. 60, (1986) ...........................................................40

Kentucky Ass'n. of Health Plans Inc. v. Miller,
538 U.S. 329 (2003).................................................................................38

Kolar v. Preferred Real Estate Investments, Inc.,
361 Fed. Appx. 354 (3d Cir. Jan. 12, 2010) ............................... 15, 30, 32

Kurz v. Phila. Elec. Co.,
96 F.3d 1544 (3d Cir. 1996).....................................................................45

Labcorp. v. Fusion Diagnostics Labs., LLC,
2020 WL 476882 (N.J. App. Div. Jan. 30, 2020) ....................................41

Lemelledo v. Beneficial Management Corp.,
150 N.J. 255 (1997)..................................................................................40

Levine v. United Healthcare Corp.,
402 F.3d 156 (3d Cir. 2005)......................................................................38

Levy v. Edmund Buick-Pontiac, Ltd.,
270 N.J. Super. 563 (Law Div. 1993).......................................................42

Lightning Lube, Inc. v. Witco Corp.,
4 F.3d 1153 (3d Cir. 1993)............................................................... 30, 32

Lugosch v. Congel,
443 F. Supp. 2d 254 (N.D.N.Y. 2006)......................................................31

Maio v. Aetna, Inc.,
221 F.3d 472 (3d Cir. 2000)......................................................................26

McGee v. Cont'l Tire N. Am., Inc.,
2007 WL 2462624 (D.N.J. Aug. 27, 2007) ..............................................34

McKelvey v. Pierce,
173 N.J. 26, 57 (2002)..............................................................................35

Medical Society of New Jersey v. Amerihealth HMO, Inc.,
376 N.J. Super. 48 (App. Div. 2005) ........................................................38

Morissette v. United States,
342 U.S. 246 (1952)...................................................................................25

Nationwide Mutual Ins. Co. v. Caris,
170 F.Supp.3d 740 (D.N.J. 2016)...............................................................42

Papergraphics Int'l, Inc. v. Correa,
389 N.J. Super. 8 (App. Div. 2006).............................................................41

Phillips v. County of Allegheny,
515 F.3d 224 (3d Cir. 2008)............................................................. 7, 8, 10

Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co.,
393 N.J. Super. 492 (App. Div. 2007).........................................................41

Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc.,
408 F. App'x 566 (3d Cir. 2010) ................................................................41

Rehkop v. Berwick Healthcare Corp.,
95 F.3d 285 (3d Cir. 1996)..........................................................................32

Reifer v. Westport Ins. Corp.,
751 F.3d 129 (3d Cir. 2014)........................................................................34

Rolo v. City of Investing Co. Liquidating Trust,
155 F.3d 644 (3d Cir.1998).........................................................................43

Salinas v. United States,
522 U.S. 52 (1997)......................................................................................31

Schmidt v. Skolas,
770 F.3d 241 (3d Cir. 2014)................................................................. 44, 45

Sedima SP RL v. Imrex Co.,
473 U.S. 479 (1985)....................................................................................15

Seidenberg v. Summit Bank,
348 N.J. Super. 243 (App. Div. 2002).........................................................33

Shah v. Horizon Blue Cross Blue Shield,
Civ. No. 15-8590, 2016 WL 4499551 (D.N.J. Aug. 25, 2016) ...............................14

Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.,
399 F. Supp. 3d 241 (D.N.J. 2019) ........................................................................35

Sons of Thunder v. Borden, Inc.,
148 N.J. 396 (1997)...............................................................................................33

Starkey, Kelly, Blaney & White v. Estate of Nicolaysen,
172 N.J. 60 (2002)................................................................................................37

St. Luke's Health Network, Inc. v. Lancaster General Hospital,
No. 19-3340, 2020 WL 4197525 (3d Cir. July 22, 2020) (precedential) ...............26

The Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.,
No. 18-3381, 18-3356, 2020 WL 4033125 (3d Cir. July 17, 2020) .......................36

U.S. v. Van Elsen,
652 F.3d 955 (8th Cir. 2011) ............................................................. 24, 25

United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.,
839 F.3d 242, 256 (3d Cir. 2016)................................................................16

United States v. Dobson,
419 F.3d 231 (3d Cir. 2005)......................................................................16

United States v. Hedaithy,
392 F.3d 580 (3d Cir. 2004)......................................................................16

United States v. Walker,
234 F.3d 780 (1st Cir. 2000).....................................................................24

United States v. Waronek,
582 F.2d 1158 (7th Cir. 1978) ..................................................................24

United States v. Whiting,
471 F.3d 792 (7th Cir. 2006) ....................................................................23

United States v. Wuagneux,
683 F.2d 1343 (11th Cir. 1982) ..................................................................24

Varity v. Howe,
516 U.S. 489 (1996).................................................................... 13, 14, 15

Weiss v. First Unum Life Ins. Co.,
482 F.3d 254 (3d Cir. 2007)......................................................................27

## **STATUTES**

18 U.S.C. § 664............................................................ 22, 23, 24, 29

18 U.S.C. § 1341.....................................................................................16

18 U.S.C. § 1343......................................................................................16

18 U.S.C. § 1962(a) ......................................................... 29, 30, 31, 32

18 U.S.C. § 1962(c) .......................................... 15, 16, 25, 30, 32

18 U.S.C. § 1962(d)................................................................................31

18 U.S.C. § 1964(c) ................................................................................25

28 U.S.C. § 2201(a) ................................................................................34

29 U.S.C. §§ 1022(a), (b).......................................................................11

29 U.S.C. § 1132(a)(1)(B) .......................................................................8

29 U.S.C. § 1132(a)(3)................................................................... 12, 13

29 U.S.C. § 1133(2) ................................................................................14

29 U.S.C. § 1104 ......................................................................................13

29 U.S.C. § 1106 ......................................................................................13

29 U.S.C. § 1109 ......................................................................................13

29 U.S.C. § 1144(b)(2)(A) ........................................................38

29 U.S.C. §1144(b)(2)(B) .........................................................38

N.J.S.A. 17B:26-9.1 .................................................................39

N.J.S.A. 17B:26-9.1(d)(9) ....................................................38, 39

N.J.S.A.17B:27-44.2 ................................................................39

N.J.S.A.17B:27-44.2(d)(9) ...................................................38, 39

N.J.S.A. 26:2J-8.1 ...................................................................39

N.J.S.A. 26:2J-8.1(d)(9) ......................................................38, 39

N.J.S.A. 56:8-1 .......................................................................39

N.J.S.A. 56:8-1(d) ...................................................................41

N.J.S.A. 56:8-19 .....................................................................42

## **RULES**

Fed. R. Civ. P. 9(b) ........................................................16, 21, 40

Fed. R. Civ. P. 12(b)(6)..............................................................7

## **REGULATIONS**

29 C.F.R. § 2520.102-2(b) .........................................................11

29 C.F.R. § 2590.715-2719A(b)(3)(i)(A)-(C) ....................................9

## PRELIMINARY STATEMENT

Plaintiff healthcare providers, as assignees of the insurance benefits of their Cigna Subscriber patients, seek tens of millions of dollars in billed charges for which they are entitled to reimbursement under the terms of Cigna health insurance benefit plans ("Cigna Plans" or "Plans") and the law. But Cigna does not follow the law, and it misrepresents how it actually administers the Plans. Cigna ignores the terms of the Plans and the legal requirements for prompt/reasonable payment, purposefully underpaying out-of-network providers and intentionally delaying the claims adjudication process, hoping that providers will simply give up and accept Cigna's offers in order to get some reimbursement.

For years, Cigna has embezzled and converted funds by defrauding patients, healthcare providers, and health plans of insurance. Cigna cheats out-of-network healthcare providers, like Plaintiffs, by dramatically underpaying them for services provided to their Cigna Plan subscriber patients ("Subscribers"). It retains those funds and uses them for its own purposes, although the funds legally belong to the Cigna Plans and Plaintiffs per the terms of the Plans. The result is that Cigna shifts financial responsibility for covered expenses onto the backs of patients, their employers, and Plaintiffs, while Cigna's profits grow. Until now, Cigna has avoided discovery of its frauds by creating complex, often unexplained, processes and procedures designed to thwart any effort to understand them, much less maneuver

1

through them to a successful outcome.  The Amended Complaint for the first time has laid Cigna's schemes bare and seeks to hold Cigna accountable.

Cigna's Motion to Dismiss—the first of what presumably will be many attempts to avoid accountability—is based almost entirely on mischaracterizations of Plaintiffs' claims.  Nearly every one of Cigna's arguments depends on the premise that the Plans do not entitle Plaintiffs to reimbursement of "100% of billed charges" for each of their Subscriber patients.  This is the cornerstone of Cigna's entire Motion; indeed, Cigna repeats this assertion[1] <u>forty times</u> in its forty-five page Brief. Unfortunately for Cigna, **<u>Plaintiffs never make that claim</u>**.  The Amended Complaint states clearly that Plaintiffs are entitled to reimbursement of "up to" 100% of the fees incurred by their Subscriber patients.  (<u>See</u> Am. Compl., ¶¶ 12, 13, 75, 91, 164, 174, 291, 329, 331, 406, 422).  "Up to" 100% plainly means Plaintiffs <u>may be</u> entitled to 100% reimbursement for some patients and some procedures, but <u>may be</u> entitled to less than 100% reimbursement for some patients and some procedures. This error nullifies nearly all of Cigna's arguments.

By focusing all of its attention on claims Plaintiffs do not make, Cigna never responds to the detailed descriptions in the Amended Complaint and the numerous exhibits showing that the terms of the Plans fraudulently misrepresent how Cigna

---

[1] The assertion is sometimes stated as "100% of billed charges" and sometimes as "full billed charges."

actually administers the Plans.   Busy showing that the Plan terms do not entitle Plaintiffs to 100% reimbursement on every claim, Cigna does not show where the Plan terms allow it to offer Plaintiffs 18% or 6.5% or even 0% reimbursement of incurred costs for <u>covered claims</u>.   Cigna does not show where the Plan terms allow it to embezzle or convert funds by defrauding Plaintiffs out of the portion of incurred costs to which they <u>are</u> entitled.   Nor does it show where the Plan terms allow it to conspire with "Repricing Companies" to reimburse Plaintiffs only 22% of their incurred costs, which is what Cigna has paid them on average.   And it certainly does not show where the Plan terms authorize it to engage in tactics designed specifically to wear down Plaintiffs and forestall, or avoid completely, paying them the level of reimbursement to which they are entitled.

There can be no mistaking Plaintiffs' claims.   Cigna's misstating some claims and completely ignoring others cannot be chalked up to misunderstanding.   Cigna does not attack Plaintiffs' claims <u>as pled</u> because it lacks ammunition for that fight.

The Amended Complaint and attached exhibits lay out in copious detail—using direct quotes from Plans and Cigna's written communications—how Cigna has used four distinct schemes to embezzle and convert funds by defrauding patients, healthcare providers, and the Plans.   The Amended Complaint clearly alleges how those actions violate federal law under the Employee Retirement Income Security Act ("ERISA") and the Racketeer Influenced and Corrupt Organizations Act

3

("RICO"), give rise to other state law claims, and entitle Plaintiffs to tens of millions of dollars in direct and treble damages.

The most generous reading of Cigna's Motion would be that it raises factual disputes that can only be resolved after full discovery. It does not provide a basis to dismiss Cigna's claims before then.

## BACKGROUND

Plaintiffs are twenty-three New Jersey healthcare provider groups who practice in various medical specialties. (Am. Compl. ¶¶ 3, 59). Cigna provides healthcare insurance and administration to Subscribers covered by the Cigna Plans. (Id. ¶ 4). Cigna serves in the trusted role of third-party administrator for many Cigna Plans on behalf of employers who sponsor health insurance benefits for their employees. Cigna also directly insures some Cigna Plans. (Id. ¶ 5).

Healthcare providers can be either "in-network" or "out-of-network" with particular insurers, including Cigna. "In-network" or "participating" providers are those who contract with the insurer to accept discounted negotiated rates as payment in full for covered services, whereas "out-of-network" providers have no such contracts with the insurer. Plaintiffs are out-of-network with Cigna. (Am. Compl. ¶¶ 60-62). In many cases, Cigna Subscribers pay significantly higher premiums for the inclusion of "out-of-network" benefits in their Plans in order to have access to out-of-network providers and obtain necessary medical services from the providers

and facilities of their choice. Thus, despite Plaintiffs' out-of-networks status, thousands of Cigna Subscribers have chosen to receive elective treatment at Plaintiffs' facilities because of the excellent service they provide. (Id. ¶ 6).

The Cigna Plans control the amounts Plaintiffs are entitled to be paid for the treatment they provide to Cigna Subscribers. (Id. ¶¶ 6, 63). Moreover, for emergency treatment, the Cigna Plans must reimburse out-of-network providers such as Plaintiffs in an amount that ensures the Subscribers are not financially responsible for more than amounts for which the Subscribers would be otherwise responsible, such as co-payments, co-insurance, and deductibles (the "Patient Responsibility Amounts") had they been treated at in-network facilities. (Id. ¶ 7). Plaintiffs' patients execute Assignment of Benefits forms ("AOBs") by which patients assign their rights and claims under the Cigna Plans to Plaintiffs. (Id. ¶¶ 125-26). Some of Plaintiffs' patients also execute Limited Powers of Attorney ("LPOAs"), which separately authorize Plaintiffs to bring actions on behalf of their patients to recover benefits under the applicable Cigna Plan. (See id. ¶¶ 128-55).

Cigna has engaged in myriad unlawful tactics in their processing of Plaintiffs' claims under the Cigna Plans, which have enriched Cigna at Plaintiffs' expense. (Am. Compl. ¶ 1). When Cigna receives claims for reimbursement from Plaintiffs, Cigna draws down from the trust funds of the Cigna Plans the full amount of the healthcare providers' claims. (Id. ¶ 8). Yet, instead of remitting those funds to

Plaintiffs, it remits only a fraction to Plaintiffs and retains the rest for its impermissible purposes, in violation of the terms of the Plans and applicable cost-sharing mandates under state and federal law.  (Id.).  To obscure what it is doing, Cigna sets up complicated processes designed to interfere with Plaintiffs' rights to receive the benefits due and owing to them under the Plans, and to obstruct Plaintiffs' ability to appeal the underpayments.  (Id.).

Cigna also perpetuates its misconduct through a series of false and misleading statements made over the mails and wires in furtherance of multiple interrelated schemes to defraud designed to:  (i) mislead Cigna Plans and Subscribers into believing that Cigna has underpaid Plaintiffs' claims because of an in-network contract or negotiated agreement with a third-party "Repricing Company" (the "Fictitious Contracting Scheme") (Am. Compl. ¶¶ 16, 236-49); (ii) mislead the Cigna Plans into paying "cost-containment" fees to Cigna and Repricing Companies calculated as a percentage of the underpayment in relation to the value of Plaintiffs' claims (the "Repricing Reduction Scheme") (id. ¶¶ 17, 250-58); (iii) confuse and mislead Plaintiffs and Cigna Subscribers through false and inconsistent statements on Cigna-issued Explanation of Benefit ("EOB") forms issued to Cigna Subscribers and Electronic Remittance Advice ("ERA") forms issued to Plaintiffs (the "Contradictory EOB Scheme") (id. ¶¶ 18-20, 259-77); and (iv) force out-of-network providers like Plaintiffs to enter into negotiations for payment of valid claims, with

6

the goal of either coercing or wearing down the providers so they accept drastic underpayments for the claims (the "Forced Negotiations Scheme") (id. ¶¶ 21-23, 278-92).  As detailed in the Amended Complaint, Cigna has used these schemes to deprive Plaintiffs of funds to which they are entitled under the Cigna Plans and the law for their treatment of numerous patients.  (Id., ¶¶ 25, 294-319).

In carrying out its schemes and through other conduct detailed in the Amended Complaint, Cigna has underpaid Plaintiffs under the Cigna Plans, violated other duties to Plaintiffs under ERISA and state law, and engaged in a pattern of embezzlement and conversion of funds and mail and wire fraud in violation of RICO (Id. ¶¶ 9-10).  Cigna's conduct has caused the Cigna Plans to underpay Plaintiffs by up to $62 million on their reimbursement claims, an amount that continues to grow. Cigna has also forced Plaintiffs to incur millions of dollars in time, person-hours and other administrative expenses in attempts to recover reimbursements to which they are entitled under the Plans and the law.  (Id. ¶¶ 13, 166, 321).

## LEGAL ARGUMENT

## I.    STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed

factual allegations" or "heightened fact pleading of specifics." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Rather, courts require "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u>, 550 U.S. at 555.  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Twombly</u>, 550 U.S. at 556.

As shown below, the detailed allegations of the Amended Complaint are more than sufficient to state viable ERISA, RICO, and state law claims.[2]

## II.   PLAINTIFFS PLEAD VIABLE ERISA CLAIMS

### A.   Plaintiffs Plead a Viable Denial of Benefits Claim (Count 1)

Plaintiffs sufficiently allege that Cigna violated ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), when it failed to reimburse Plaintiffs, as assignees of benefits under the Cigna Plans, in amounts the Plans required for the medically-necessary treatment Plaintiffs provided to Subscribers.  Rather than address that claim, Cigna devotes much of its argument to a claim Plaintiffs did not make—that Plaintiffs' Amended Complaint purportedly demands "100% of Plaintiffs' billed

---

[2] Moreover, even if any of Plaintiffs' claims were subject to dismissal, the Court "<u>must</u> permit a curative amendment unless such an amendment would be inequitable or futile."  <u>Phillips</u>, 515 F.3d at 245 (emphasis added).  Cigna argues that any dismissal should be with prejudice "because Plaintiffs have already amended their complaint in response to Cigna's motion to dismiss."  (Db3).  This argument overlooks that Cigna's current motion raises new issues, including a new statute of limitations argument.  (<u>See</u> Part V, <u>infra</u>; <u>cf.</u> ECF Doc. No. 31-1).

charges." (See Defendants' Moving Brief (ECF No. 49) ((hereinafter "Db") at 1, 3, 8, 10-11, 12-18, 20, 27, 30, 39-40).  Plaintiffs, in fact, plead that they are owed "up to their normal or billed charges," less Patient Responsibility Amounts, and were paid less than what the Plans required (sometimes not at all).  (Am. Compl., ¶¶ 12-13, 35, 41, 164, 174, 329, 331, 406 and 423 & Exs. A, B).

Cigna also cites several cases from this District for the proposition that, "without identifying plan language that was actually breached, an ERISA § 502(a)(1)(B) claim cannot withstand a Rule 12(b)(6) motion." (Db11 & n.6).  But here, Plaintiffs identify the Plan terms Cigna breached. The Plans reimburse "Covered Expenses," which are defined as the expenses incurred by the Cigna Subscriber for eligible services that are covered under the Plan and medically necessary. (Am. Compl. ¶ 65).  With respect to elective out-of-network claims, the Plans typically state that Cigna's reimbursement obligation is based on the Maximum Reimbursable Charge ("MRC") or Reasonable & Customary ("R&C") calculations defined in the Cigna Plans. (Id. ¶¶ 67-71).  Although the language varies across Plans, the definitions of MRC and R&C are typically based on the lesser of (i) the provider's "normal" or "usual" charges, or (ii) some other alleged alternative methodology (not disclosed in the Plan itself). (See id.).[3] Cigna breached

---

[3] For out-of-network emergent claims, the Plans also must ensure that they pay at least the greatest of three amounts specified in 29 C.F.R. § 2590.715-2719A(b)(3)(i)(A)-(C). (Am. Compl. ¶¶ 86-87).  One of these is the amount for the

these provisions by causing Plaintiffs to be reimbursed at only about 22% of their charges -- far below what the Plans required.  (Id. ¶¶ 13, 166, 180, 331).

Relying on Franco v. Conn. Gen. Life Ins. Co., 289 F.R.D. 121 (D.N.J. 2013), Cigna argues that Plaintiffs are wrong to equate their "normal" charges as used in the MRC or R&C definitions, with their "billed" or "incurred" charges. (Db12).  But Franco concerned a class certification motion in which the class plaintiff had proposed a damages model based on the providers' "billed" charges, rather than their "normal" charges. The Court stated that, because the provider's billed charge might exceed its "normal" charge "if the provider has a practice of charging his non-insured patients a lower fee than insured patients for the same service," determining normal charges for the Plaintiff class would be fact-intensive and not susceptible to common proof.  Franco, 289 F.R.D. at 138.   This Motion, by contrast, is not for class certification; rather, it is a pleadings-based attack under Rule 12(b)(6).  At this stage, the Court accepts as true the facts alleged in the Amended Complaint and construes them in the light most favorable to Plaintiffs.   See Phillips, 515 F.3d at 233. Plaintiffs specifically allege that their "incurred [or billed] charges" reflect "the amounts Plaintiffs' normally charge." (Am. Compl. ¶ 13).   For purposes of this Motion, that fact must be accepted as true.

---

emergency service calculated using the method the plan generally uses to determine payments for out-of-network services (such as usual, customary and reasonable charges), but substituting in-network cost-sharing provisions.  (See id.).

10

Cigna further argues that Plaintiffs "do not grapple" with the alternatives to Plaintiffs' "normal" charges set forth in the MRC and R&C definitions of the Plans. (Db14).  This is true, but the reason for it, as alleged in the Amended Complaint, is that Cigna provides no transparency into how these supposed alternatives might be calculated, if they exist at all.  (Am. Compl. ¶¶ 74, 77).  For example, some of the alternative MRC or R&C definitions refer to "Schedules" that are not included in the Plan or Summary Plan Description ("SPD"), or to a "Database selected by [Cigna]" that is not identified.  (Id. ¶¶ 68, 69).  ERISA requires that the SPD "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," and "contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. §§ 1022(a), (b).  Moreover, the SPD must "not have the effect of misleading, misinforming or failing to inform participants . . . with respect to pertinent provisions of the plan." 29 C.F.R. § 2520.102-2(b); see also Burstein v. Retirement Plan, Allegheny Health, 334 F.3d 365, 378 (3d Cir. 2003) ("The ERISA provision governing summary plan descriptions expresses Congress's desire that the SPD be transparent, accurate, and comprehensive").  Cigna's position, that it may rely on some alternative basis of calculating "MRC" or "R&C" that is not explained the Plan Documents, is inconsistent with these ERISA requirements regarding the "transparency, accuracy, and comprehensiveness" of

SPDs.  More to the point, Cigna cannot obscure its methodologies and then accuse Plaintiffs of failing to "grapple" with them.

The Amended Complaint pleads other facts showing that the Plan's MRC and R&C definitions entitle Plaintiffs to reimbursement <u>up to</u> their normal charges. Among other things, Cigna does not identify any other methodology for the underpayment in any correspondence communicating the underpayments.  (Am. Compl. ¶ 76).  Moreover, Cigna's contracted Repricing Companies have admitted that the ceiling for their negotiations is 100% of incurred charges.  (<u>Id.</u> ¶ 75).  And after Plaintiffs filed their initial Complaint on December 31, 2019, Cigna reimbursed 12 Cigna Claims for Plaintiff New Jersey Brain & Spine, P.C. at or near that plaintiff's normal charges.  (Am. Compl. ¶¶ 73, 75-76, and 78-82).  Thus, the Amended Complaint sufficiently alleges that Cigna failed to reimburse Plaintiffs up to their normal charges, as required by the Plans.  Count 1 should not be dismissed.

**B.    Plaintiffs Plead a Viable Breach of Fiduciary Duty Claim (Count 2)**

Plaintiffs also plead a viable claim in Count 2 under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Other than again refuting the claim Plaintiffs do not make—that Plaintiffs are entitled to reimbursement of their "full billed charges"—Cigna argues only that Count 2 is "duplicative" of Count 1.  (Db18).  Cigna relies on <u>Bickhart v Carpenters Health & Welfare Fund of Pa & Vicinity</u>, but there, the breach of fiduciary duty claim was "indistinguishable" from the denial of benefit claim and

sought "nearly identical relief." 732 F. App'x 147, 153 (3d Cir. 2018). Here, Plaintiffs' claim in Count 2 challenges different conduct and seeks different relief from their claim in Count 1. (Am. Compl. ¶¶ 341-47; cf. id. ¶¶ 331, 333).

Moreover, an ERISA beneficiary or its assignee may bring a claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), to obtain appropriate equitable relief to redress ERISA fiduciary violations. Varity v. Howe, 516 U.S. 489, 507-15 (1996); Hahnemann University Hosp. v. All Shore, Inc., 514 F. 3d 300, 310 (3d Cir. 2008). Plaintiffs bring such a claim in Count 2. Plaintiffs seek injunctive and other equitable relief to redress Cigna's violations of its statutory fiduciary duties under ERISA Sections 404, 406, and 409, 29 U.S.C. §§ 1104, 1106, 1109. These violations include Cigna's administration of Plaintiffs' claims for "Cigna's own benefit and at the expense of Cigna's Subscribers and Plaintiffs" (Am. Compl. ¶ 341); its knowing engagement in prohibited transactions through by contracting directly with the Cigna Plans for Cigna to transfer the Cigna Plans' assets to a Cigna-owned bank account and through its fraudulent misrepresentations (id. ¶ 342); its retention of Plan assets and use of such assets to fund "cost-containment" fees that benefit Cigna and third-party repricing companies (id. ¶¶ 343-44); and its failure to provide Plaintiffs with information material to the claims and Cigna's handling of the claims (id. ¶ 345). Plaintiffs seek declaratory, injunctive, and other equitable relief to redress Cigna's fiduciary violations. (Id., ¶ 347; Prayer for Relief, ¶¶ D, E).

To the extent there is overlap between Plaintiffs' claims in Count 1 and Count 2, dismissal of Count 2 at the Rule 12(b)(6) stage would still be inappropriate. HUMC Opco LLC v. United Benefit Fund, No. 16-168, 2016 WL 6634878, *7 (D.N.J. Nov. 7, 2016) (Varity does not preclude the assertion of alternative claims or require dismissal at the Rule 12(b)(6) stage of duplicative claims under ERISA §§ 502(a)(1)(B) and 502(a)(3)); Shah v. Horizon Blue Cross Blue Shield, Civ. No. 15-8590, 2016 WL 4499551, *10 (D.N.J. Aug. 25, 2016) (same).  As the HUMC Court recognized, "[t]his claim of redundancy may be dealt with more soundly on a developed factual record, whether on summary judgment or in connection with focusing the issues preliminary to trial." HUMC, 2016 WL 6634878, *7.

## C. Plaintiffs Plead a Viable Claim For Failure to Provide a Full and Fair Review (Count 3)

The Court should also deny Cigna's motion to dismiss Count 3, alleging that Cigna violated ERISA Section 503.  This section requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).  Plaintiffs allege a series of actions by Cigna in violation of this duty.  (Am. Compl. ¶ 352).

Cigna also argues that Section 503 does not provide a private right of action. (Db18-19).  However, consistent with Varity, Plaintiffs may pursue their claim in Count 3 for appropriate equitable relief to redress Cigna's Section 503 violations

14

through the catchall remedial provision of Section 502(a)(3).  See Varity, 516 U.S. at 512; HUMC, 2016 WL 6634878, *4 (declining to dismiss claim under Section 502(a)(3) alleging a violation of Section 503).

## III.   PLAINTIFFS PLEAD VIABLE RICO CLAIMS

Plaintiffs more than sufficiently plead their RICO claims against Cigna in Counts 4-7.  Seeking to summarily undercut these claims, Cigna argues that "this is not the rare RICO case that survives dismissal."  (Db28).  But "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes."  Sedima SP RL v. Imrex Co., 473 U.S. 479, 497-98 (1985).  Indeed, the mail and wire fraud statutes have been "expansively construed" and reach many "garden variety fraud cases."  Kolar v. Preferred Real Estate Investments, Inc., 361 Fed. Appx. 354, 363 (3d Cir. Jan. 12, 2010) (unpublished) (citations omitted).  Moreover, the Supreme Court has "repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe."  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 661 (2008).  Cigna's conduct fits squarely within the text and intended scope of the statute.

### A.   Plaintiffs Plead a Viable Section 1962(c) Claim (Count 4)

Section 1962(c) makes it unlawful for a person to conduct or participate in the activities of an enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(c); In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 362 (3d Cir.

2010).  Cigna argues that Plaintiffs do not plausibly allege RICO predicate acts of racketeering or a RICO injury to support their Section 1962(c) claim.  (Db29-42).  Cigna's arguments fail.

### 1.    Plaintiffs Sufficiently Plead Mail and Wire Fraud

Plaintiffs sufficiently plead RICO predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. To state a claim under either statute, Plaintiffs must allege (1) the existence of a scheme to defraud, (2) the use of the mails or wires in furtherance of the fraudulent scheme, and (3) culpable participation by the defendant.  See United States v. Dobson, 419 F.3d 231, 237 (3d Cir. 2005). The Third Circuit has broadly defined a "scheme to defraud" as any effort at deceit which aims, in part, to deprive another of money or property.  United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004).

Cigna argues that Plaintiffs fail to meet the particularity requirement of Fed. R. Civ. P. 9(b).  (Db30).  But while Cigna frames its arguments as Rule 9(b) challenges, Cigna actually attacks the credibility of Plaintiffs allegations, claiming that the schemes as pled "make no sense" and that Cigna did not communicate false statements.  (Db30-37).  Of course, such credibility arguments are not appropriate on a Rule 12(b)(6) motion. See United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co., 839 F.3d 242, 256 (3d Cir. 2016).  In any event, Cigna's four schemes to defraud are described clearly and logically, and Plaintiffs have pled that

16

Cigna made many false statements in furtherance of them.

**Fictitious Contracting Scheme:** As pled in the Amended Complaint, Cigna misrepresents to Plaintiffs, Cigna Subscribers, and the Cigna Plans that Cigna underpaid Plaintiffs because of non-existent "contracts" by which Plaintiffs purportedly agreed to accept "discounts" from its billed charges. (Am. Compl. ¶¶ 16, 237-49). Cigna argues that this scheme "makes no sense" because "there is no conceivable link between Cigna's alleged misrepresentation (that Plaintiffs have an in-network or third-party contacted rate) and Plaintiffs' alleged injury (being paid at less than 100% of billed charges)." (Db30). Specifically, Cigna contends that Plaintiffs fail to explain how Cigna's misrepresentations about Plaintiffs' network status "could have mislead *Plaintiffs* into believing that they have in-network contracts, or could have otherwise somehow tricked them into accepting a lower rate." (Db30-31) (emphasis in original). This argument overlooks that the mail and wire fraud statutes do not require first-party reliance. Bridge, 553 U.S. at 642, 648. Third-party reliance will suffice. Id. at 659. Here, Plaintiffs allege that, in reliance on Cigna's misrepresentations that they had negotiated discounts with Plaintiffs, the Plans failed to pay Plaintiffs amounts due and owing to them and instead paid Cigna "cost containment fees" on the purported "savings" that Cigna had realized (Am. Compl. ¶¶ 16, 244-47). This suffices under Bridge.

Cigna further argues that Plaintiffs do not allege "specific examples" in which

Cigna misrepresented to anyone, on EOBs or otherwise, that Plaintiffs have an in-network contract or third-party repricing company contract.  (Db31-32).  Nonsense. Plaintiffs attached to their Amended Complaint multiple EOBs in which Cigna falsely represented to Plaintiffs' patients that they had negotiated "discounts" with Plaintiffs and that "Cigna negotiates discounts with health care professionals and facilities to help you save money."[4]  Moreover, on the provider ERA forms for the same transactions, Cigna uses the so-called "CO-45" code combination, with "CO" signifying "Contractual Obligation" and "-45" signifying "Charge exceeds fee schedule/maximum allowable or contracted legislated fee arrangement."[5]  Cigna argues that this code combination is properly used when the provider's "charge exceeds either the contracted in-network rate or the out-of-network maximum allowable rate like the MRC or R&C," (Db32).  But when Cigna applies the "CO-45" coding combinations to amounts described as "discounts" on the patient EOBs, Cigna is falsely representing that  Cigna "contracted" for the reduction.

**<u>Repricing Reduction Scheme</u>:** In furtherance of this scheme, Cigna applies

---

[4]  (Am. Compl., ¶ 81 & Ex. G (ECF Doc. No. 39-7, p. 6); Am. Compl. ¶ 277 & Ex. H (ECF Doc. No. 39-8, p. 25); Am. Compl. ¶ 294 & Ex. I (ECF Doc. No. 39-9, p. 2); Am. Compl. ¶ 305 & Ex. K (ECF Doc. No. 39-11, p. 10); Am. Compl. ¶ 312 & Ex. L (ECF Doc. No. 39-12, p. 9); Am. Compl. ¶ 316 & Ex. M (ECF Doc. No. 39-13, p. 3); Am. Compl. ¶ 318 & Ex. N (ECF Doc. No. 39-14, p. 2)).

[5]  (<u>See</u> Am. Compl. ¶¶ 169-72, ¶ 276; Am. Compl., Ex. L (ECF Doc. No. 39-12, p. 2); Ex. M (ECF Doc. No. 39-13, p. 2); Ex. N (<u>See</u> ECF Doc. No. 39-14, p. 8)).

a euphemistically-named "cost-containment" process by which it refers every out-of-network claim to a repricing company, which adjusts the claim as if there are contracts with Plaintiffs even when there are not.  (Am. Compl. ¶¶ 17, 250-58). Cigna again argues that this scheme "makes no sense" because Plaintiffs allegedly do not explain how they were "misled into accepting reimbursement below the Plan amounts" (Db32-33), again overlooking that first-party reliance is not required for mail or wire fraud.  Bridge, 553 U.S. at 642, 648, 659.  Cigna further argues that the Plans are not misled because Cigna tells them in their "Administrative Service Only" ("ASO") Agreements that Cigna will apply cost-containment discounts either through discounts available under an existing contract or "through negotiations" with the provider.  (Db33).  Yet, while Cigna represents that "applying these discounts avoids balance billing and substantially reduces the patient's out-of-pocket cost," Cigna pays itself and the Repricing Companies cost-containment fees whether or not the cost-containment process saves the Plan money.  (Am. Compl. ¶¶ 252-53).  Cigna's representations are demonstrably false as applied to Plaintiffs, who have not contracted with a Repricing Company to accept an agreed-upon discount and forego balance billing the patient.  (Am. Compl. ¶ 254).  Indeed, Cigna's cost-containment fee is calculated at the time the claim is initially processed, regardless of whether Plaintiffs have agreed to the discount.  (Am. Compl. ¶ 255).

**Contradictory EOB Scheme:**  In furtherance of this scheme, Cigna tells

Plaintiffs on the provider ERA forms that the amounts Cigna has held back from the Plan funds are "not covered" by the Plans or are subject to "adjustments," and that the patient owes the balance.  (Am. Compl. ¶¶ 18, 260).  But on the EOB forms issued to the Cigna Subscribers <u>for the same claim</u>, Cigna reports that Plaintiffs have agreed to a "discount" and the patient has "saved" the rest.  (Am. Compl. ¶¶ 19, 262-66).  Cigna contends that this scheme also "makes no more sense" than the prior schemes because Cigna's misrepresentations to members via EOBs "***could not possibly*** impact Plaintiffs' decision to accept a particular negotiated amount on a claim."  (Db34) (emphasis in original).  But this is only because Cigna instructs the provider on the ERA form not to balance bill the patient and instead contact the Repricing Company to negotiate additional payment.  (Am. Compl. ¶ 268).  Cigna speciously argues that the contradictory EOBs/ERAs contain no misrepresentations. (Db34-36).  But it is impossible to reconcile Cigna's statements on the patient EOBs—that a "discount" was applied to their claim and the patient "saved" the amount of the discount (Am. Compl., Exs. G, H, I, K, L, M, N)—with Cigna's statements on the provider ERAs for the <u>same</u> <u>claims</u> that make clear that the patient has not "saved" anything because they show that the patient owes a huge balance bill.  (Am. Compl. ¶¶ 18, 260).  Even Cigna's own representatives have <u>admitted</u> to

Plaintiffs that the patient EOBs are false.  (Am. Compl. ¶ 264).[6]

**Forced Negotiations Scheme:**  Cigna conspires with repricing companies to negotiate deep discounts, saying in some instances that the services are not covered. (Am. Compl. ¶¶ 21, 279).  Cigna's processing system is set up to automatically send all out-of-network claims to the Repricing Companies.  (Am. Compl. ¶ 282).  The repricing companies, in turn, send Plaintiffs letters threatening that the services will not be covered at all, or that Plaintiffs will be reimbursed at a percentage of the Medicare rate.  (Am. Compl. ¶ 21).  Cigna argues that these threats do not "actually communicate anything false" (Db36), but this also is untrue.  As noted above, the Plans require payment to Plaintiffs at the MRC amount, which is much higher than what the repricing companies are proposing.  (See Part II.A, supra).  Even worse, if the settlement offers are rejected, Cigna falsely declares large portions of the claim "not covered."  (Am. Compl. ¶¶ 23, 289).

Cigna argues that there is no mail or wire fraud because Plaintiffs "know the plans entitle them to a higher reimbursement rate than what Cigna or the Repricing Companies offer," but they will sometimes choose to accept a lower rate.  (Db36-37).  Once again, this argument overlooks that first-party reliance is not required for

---

[6] Cigna argues that Plaintiffs' allegations that Cigna admitted that its patient EOBs are false lack the "who, what, when, where, and how" needed to plead fraud.  (Db36). To the contrary, these allegations relate to Cigna's state of mind and "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

mail and wire fraud.  <u>Bridge</u>, 553 U.S. at 642, 648, 659.  In any event, Plaintiffs allege how Cigna's false statements mislead Plaintiffs into balance billing patients for whom Cigna has falsely declared the claims "not covered"—damaging their relationships with their patients—or wasting their time and effort negotiating with Cigna and third-party repricing companies engaged by Cigna to obtain monies that are properly due and payable under the Plans.  (Am. Compl. ¶¶ 21, 23, 279, 282, 283, 289).  Thus, Plaintiffs amply plead RICO predicate acts of mail and wire fraud.

### 2.    Plaintiffs Sufficiently Plead Violations of 18 U.S.C. § 664

Plaintiffs also sufficiently allege violations of 18 U.S.C. § 664 as RICO predicate acts.  This statute makes it unlawful for any person to "embezzle[], steal[], or unlawfully and willfully abstract[] or convert[] to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan" subject to ERISA.  18 U.S.C. § 664.

Cigna argues, as an initial matter, that "any conversion of Plan assets is not a direct injury **to Plaintiffs,**" but rather, an injury to Plan sponsors.  (Db37-38).  To the contrary, as alleged in the Amended Complaint, when Cigna accepts a claim for processing, it draws down Plaintiffs' full charges from the Plan's bank account and moves the funds into a Cigna-owned bank account.  (Am. Compl. ¶183).  Yet, it pays Plaintiffs only a small portion of this amount, embezzling or converting the

remaining Plan funds for its own purposes.  (Am. Compl. ¶¶ 184-87).  In doing so, Cigna's conduct diverts Plan assets to Cigna that are due and payable to Plaintiffs. (Id. ¶ 187).  These allegations allege a direct injury to Plaintiffs.  Cf. In re Aetna UCR Litig., Civ. No. 07-3541 (KSH), 2015 WL 3970168, *36 (D.N.J. June 30, 2015) (to succeed in a RICO claim predicated on a violation of 18 U.S.C. § 664, "the plaintiffs would be required to allege that the funds were 'earmarked for an intended recipient' out of plan assets, not the insurer's assets, and then were directed for an alternate purpose") (citations and internal quotation marks omitted); United States v. Whiting, 471 F.3d 792, 800 (7th Cir. 2006) (contributions withheld from employee paychecks and delivered to employee's benefit plans were plan assets, not company assets, for purposes of § 664 embezzlement claim, because "[o]nce the contributions were withheld, the money no longer belongs to the company; rather, the funds belong to the employees.").

Next, Cigna argues that Plaintiffs have not sufficiently alleged embezzlement because "nowhere do Plaintiffs allege that Cigna keeps any plan sponsors' money for itself after a claim has been fully adjudicated, or that Cigna has done anything improper under the terms of the ASO agreements, which govern all banking transactions between Cigna and plan sponsors." (Db38).  If Cigna's artful inclusion of the phrase, "after a claim has been fully adjudicated," is intended to suggest that Cigna can temporarily divert funds for its own purposes, Cigna is mistaken.  "[T]he

crime of embezzlement does not include as an element an intent to permanently deprive the victim of the funds, but rather, a temporary deprivation will do." United States v. Walker, 234 F.3d 780, 783 (1st Cir. 2000); United States v. Wuagneux, 683 F.2d 1343, 1359 (11th Cir. 1982) ("intent to permanently deprive owner of property [is] not an element of embezzlement") (quoting United States v. Waronek, 582 F.2d 1158, 1161 (7th Cir. 1978)).   The Amended Complaint alleges that Cigna draws down from the trust funds of the Cigna Plans the full amount of Plaintiffs' claims, pays Plaintiffs only a fraction of that amount, and retains the rest for its own purposes.   (Am. Compl. ¶¶ 8, 187).   This is sufficient to state a claim for embezzlement under 18 U.S.C. § 664.   See In re Aetna UCR Litig., 2015 WL 3970168, *35 (elements of embezzlement include the unauthorized taking or appropriation of benefit plan funds with specific criminal intent).

What is more, Cigna ignores that Section 664 is not limited to embezzlement; it also extends to, inter alia, the unlawful and willful "conver[sion]" of Plan funds to the defendant's own use or the use of another.   18 U.S.C. § 664.   Cf. U.S. v. Van Elsen, 652 F.3d 955, 958 (8th Cir. 2011) ("Section 664 plainly criminalizes four types of theft—embezzlement, stealing, abstraction, and conversion—each of which is separated with the disjunctive conjunction, 'or'").   "Conversion" under Section 664 likewise does not include an intent to permanently deprive. Van Elsen, 652 F.3d at 962.   Conversion for purposes of Section 664 also "may reach use in an

24

unauthorized manner or to an unauthorized extent of property placed in one's custody for limited use."  Van Elsen, 652 F.3d at 959-60 (quoting Morissette v. United States, 342 U.S. 246, 271-72 (1952)).  Indeed, "[m]oney rightfully taken into one's custody may be converted without any intent to keep or embezzle it merely by commingling it with the custodian's own, if he was under a duty to keep it separate and intact."  Id.  The Amended Complaint amply pleads that Cigna converted Plan assets, inter alia, by moving the entire value of a claim accepted by the Plans for processing to a Cigna-owned account, when under a duty to maintain the funds in the Plans' accounts for the purpose of paying benefits due under the Plans.  (Am. Compl. ¶¶ 187, 236-49).  Thus, Plaintiffs sufficiently plead Section 664 violations.

### 3.     Plaintiffs Sufficiently Plead RICO Causation and Injury

RICO provides a private right of action to any person who is "injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c); Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005).  In a claim under Section 1962(c), a RICO plaintiff must allege that a RICO predicate offense "'not only was the 'but for' cause of his injury, but was the proximate cause as well." Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010) (citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992)). Proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged." Holmes, 503 U.S. at 268.  However, the plaintiff need not be the direct target of the

fraud or other racketeering.  See St. Luke's Health Network, Inc. v. Lancaster General Hospital, No. 19-3340, 2020 WL 4197525, *4-6 (3d Cir. July 22, 2020) (precedential) (plaintiffs sufficiently alleged proximate cause where defendants allegedly submitted fraudulent statements to a state-run reimbursement program resulting in plaintiffs' receiving an artificially smaller share of funds).

Here, Plaintiffs plausibly allege an injury to their business or property.  Once again, Cigna starts by responding to the "100% of billed charges" claim Plaintiffs did not make.  (Db39).  But under Plaintiffs' actual claim, Plaintiffs properly allege that Cigna's misconduct has resulted in Plaintiffs' being underpaid under the terms of the Plans or as otherwise required by law.   (Part II.A, supra).   These underpayments alone allege an "actual monetary loss" or concrete financial loss" sufficient to allege a RICO injury.  Cf. Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).  Plaintiffs also allege lost business as the result of patients being dissuaded from seeking healthcare from Plaintiffs due to Cigna's misrepresentations (Am. Compl. ¶ 370), which are also recoverable under RICO.  Bridge, 553 U.S. at 649-50 (if rival businesses lose money as the result of a competitor's pattern of misrepresentation, "it would certainly seem that they were injured in their business 'by reason of' a pattern of mail fraud").  Further, Plaintiffs allege as damages the cost in time, person-hours, and other administrative expenses incurred because of Cigna's unlawful conduct (Am. Compl. ¶ 370).  These damages too are recoverable

26

under RICO. See Desmond v. Siegel, 2012 WL 3228681 at *7 (D.N.J. Aug. 6, 2012)

("costs associated with remediating or taking legal action against RICO conduct

amount to an 'out-of-pocket loss' that is actionable under RICO") (citing, inter alia,

Weiss v. First Unum Life Ins. Co., 482 F.3d 254, 258 n.2 (3d Cir. 2007)).

As to causation, Plaintiffs have directly linked Cigna's predicate acts to

Plaintiffs' injuries. Cigna selectively quotes from Plaintiffs' Complaint to argue that

Plaintiffs have not alleged that their injuries were caused by Cigna's

misrepresentations or anyone relying on them. (Db40-41). To the contrary,

Plaintiffs allege:

- In reliance on Cigna's misrepresentations that they had negotiated discounts with Plaintiffs (Fictitious Contracting Scheme), the Plans failed to pay Plaintiffs amounts due and owing to them under the Plans and instead paid Cigna "cost containment fees" on the purported "savings" that Cigna had realized (Am. Compl. ¶¶ 16, 244-47).

- In reliance on Cigna's misrepresentations that Plaintiffs have contracts with third-party repricing companies (Repricing Reduction Scheme), the Plans are induced into paying substantial "cost-containment" fees to Cigna and its repricing companies instead of paying Plaintiffs the amounts due and owing under the Plans. (Am. Compl. ¶¶ 17, 251-57).

- In reliance on Cigna's misrepresentations on patient EOBs and provide

27

ERA, Plaintiffs are misled into believing that their patients have huge balance bills (Contradictory EOB Scheme) —even though the Patients' EOBs tell the patients that they "saved" money through Cigna's alleged negotiated "discount" —and Plaintiffs are directed to contact a repricing company to negotiate a substantially discounted payment to avoid balance billing the patient. (Am. Compl. ¶¶ 18, 260-68, 270, 273).

- In reliance on Cigna's and their repricing companies' misrepresentations, Plaintiffs are either misled into balance billing patients for whom Cigna has falsely declared the claims "not covered" —damaging their relationships with their patients—or wasting their time and effort negotiating with Cigna and third-party repricing companies to obtain monies properly due and payable to Plaintiffs under the Plans (Forced Negotiation Scheme). (Am. Compl. ¶¶ 21, 23, 279, 282, 283, 289).

Likewise, Plaintiffs have established a direct relationship between Cigna's embezzlement and conversion of ERISA Plan assets and their damages. Cigna argues that Plaintiffs "cannot show that Cigna's alleged embezzlement of cost-containment fees caused their injuries, since in the absence of the cost-containment program, Plaintiffs still only would have been entitled to be paid at the plan MRC." (Db41). To the contrary, as noted in Part II.A above, Plaintiffs were not paid at the MRC or otherwise in accordance with the terms of the Plans, since Cigna's embezzlement and conversion of Plan assets diverted these assets from Plaintiff to

28

Cigna in the form of cost-containment fees or otherwise.

Cigna argues that "the only 'direct' victim who could recover damages would be the plan sponsor (whose assets were supposedly embezzled), not Plaintiffs." (Db41-42).  To the contrary, the Plan assets that Cigna has embezzled and converted in violation of 18 U.S.C. § 664 are monies that were due and owing to the Plaintiffs. (Part III.A.2, <u>supra</u>).  Thus, this case is distinguishable from the cases Cigna cites, <u>Hemi</u> and <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451 (2006), since in both, the conduct directly causing harm was removed from the conduct giving rise to the predicate acts of mail and wire fraud.  <u>See</u> <u>Hemi</u>, 559 U.S. at 11 (no proximate cause based on allegations that "the defendant's fraud on the third party (the State) has made it easier or a <u>fourth</u> party (the taxpayer) to cause harm to the plaintiff (the City)"); <u>Anza</u>, 547 U.S. at 458-61 (no proximate cause where the plaintiff alleged that the defendant had defrauded New York State by failing to collect and remit sales taxes, allowing the defendant to undercut the plaintiff's prices).

### B.      Plaintiffs Plead a Viable Section 1962(a) Claim (Count 6)

Section 1962(a) makes it unlawful for any person to "use or invest, directly or indirectly," any income derived from a pattern of racketeering activity in the "acquisition of any interest in, or the establishment or operation of, any enterprise" engaged in interstate commerce.  To plead a Section 1962(a) violation, a plaintiff must allege an injury resulting from the investment of racketeering income distinct

from an injury caused by the predicate acts themselves.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993).

Cigna insists that Plaintiffs have not sufficiently alleged an investment injury under Section 1962(a) because they purportedly allege "the same harm as under their Section 1962(c) claim."  (Db43) (citing Am. Compl. ¶¶ 370, 393).  To the contrary, Plaintiffs allege distinct harms, including "diversion of Cigna Plan Funds otherwise due and payable to Plaintiffs away from Plaintiffs and into Cigna and its Repricing Companies," which Cigna is able to invest and use "to maintain a robust network of Repricing Companies and others through which Cigna can continue to inflict harm." (Am. Compl. ¶ 392).  Cigna selectively focuses on the latter half of this allegation and tries to shoehorn Plaintiffs allegations into "the mere use of racketeering proceeds to support a business that continues to engage in the racketeering activities that produced those profits."  (Db43) (quoting Guy's Mech. Sys., Inc. v. FIA Card Servs., N.A., 339 F. App'x 193, 195 (3d Cir. 2009) (unpublished)).  It is true that the generalized reinvestment of racketeering proceeds into a corporation will alone not satisfy the investment-injury requirement of Section 1962(a), since "[o]ver the long term, corporations generally reinvest their profits regardless of the source." Brittingham v. Mobil Corp., 943 F.2d 297, 305 (3d Cir. 1991).  However, specific investments that cause direct harm to Plaintiffs can satisfy the requirement.  Cf. Kolar, 361 Fed. Appx. at 361 n.7 ( expressing "no quarrel" with the proposition that

misappropriations of business opportunities could result in an investment-injury if the misappropriated funds were used to invest in enterprises that could siphon the plaintiff's customer base and revenues) ((citing <u>Lugosch v. Congel</u>, 443 F. Supp. 2d 254 (N.D.N.Y. 2006)).

Here, Plaintiffs cite specific investments by Cigna that have directly harmed Plaintiffs. One of the ways Cigna diverts Plan assets from Plaintiffs is to extract "cost-containment" fees from the Plans through their misrepresentations and their embezzlement and conversion of Plan assets. (<u>See</u> Am. Compl. ¶¶ 16, 17, 250-257). Cigna then invests these "cost-containment" fees into themselves and their contracted repricing companies. (Am. Compl. ¶ 251). Doing so directly harms Plaintiffs by incentivizing Cigna and the repricing companies to obstruct Plaintiffs' access to the Plan funds to which they are lawfully entitled—indeed, the "cost-containment fees" are calculated based on a percentage of "net savings," or the difference between Plaintiffs' billed charges and the amount by which the claim is underpaid. (Am. Compl. ¶ 251). Thus, Plaintiffs have sufficiently alleged an investment injury under Section 1962(a).

### C.   Plaintiffs Plead Viable RICO Conspiracy Claims (Counts 5 and 7)

To plead a violation of 18 U.S.C. § 1962(d), a plaintiff need only allege a conspiracy that has as its object acts which, if completed, would constitute a violation of one of RICO's substantive provisions. <u>Salinas v. United States</u>, 522

U.S. 52, 65 (1997).  Cigna's only argument for dismissal of these counts is that the substantive counts are purportedly deficient.  (Db44) (citing Lightning Lube, 4 F.3d at 1191).  This argument fails because Plaintiffs plead viable claims in Counts 4 and 6 for violation of 18 U.S.C. § 1962(c) and 1962(a).  (Parts III.A, B, supra).

As to Count 7, Cigna's argument fails for the additional reason that a RICO conspiracy plaintiff need only show that it was injured "by reason of the conspiracy." Rehkop v. Berwick Healthcare Corp., 95 F.3d 285, 290 (3d Cir. 1996).  While the Supreme Court post-Rehkop held that a person injured by a non-racketeering act could not bring a RICO conspiracy claim, Beck v. Prupis, 529 U.S. 494, 506 (2000), a plaintiff may plead a RICO conspiracy in the absence of an actionable claim under Section 1962(a) "so long as the complaint complies with Beck and the substantive claim fails only for lack of causative injury."  Kolar, 361 Fed. Appx. at 366 n.13. Thus, even if Plaintiffs had not properly pled an investment injury under Section 1962(a) —and they have (Part III.B, supra) —they would still be able to proceed on their conspiracy claim in Count 7 because they have amply alleged racketeering acts in furtherance of Cigna's conspiracy (Part III.A.1, 2, supra).

## IV.   PLAINTIFFS SUFFICIENTLY PLEAD STATE LAW CLAIMS

### A.   Plaintiffs Plead a Valid Breach of Contract Claim (Count 8)

In seeking dismissal of Count 8, Cigna makes the same argument as it made for Count 1: Plaintiffs purportedly fail to allege plan provisions entitling them to

32

relief.  (Db19-20).  To the contrary, as described in Part II.A, <u>supra</u>, the Amended Complaint alleges that the Plans require Cigna to reimburse Plaintiffs for "Covered Services" to Subscribers based on the Cigna Plan definitions for MRC and R&C. Based on these definitions, Plaintiffs allege that Cigna failed to reimburse Plaintiffs for up to their normal or incurred charges, less applicable Patient Responsibility Amounts.  (<u>See</u> Am. Compl. ¶¶ 65-74, 406).  These allegations sufficiently identify the Plan provisions Cigna violated.  Count 8 should not be dismissed.

### B. Plaintiffs Plead a Valid Claim for Breach of the Duty of Good Faith and Fair Dealing (Count 9)

In New Jersey, the implied covenant of good faith and fair dealing mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  <u>Sons of Thunder v. Borden, Inc.</u>, 148 N.J. 396, 420 (1997).  The guiding principle in the application of the implied covenant of good faith and fair dealing emanates from the fundamental notion that a party to a contract may not unreasonably frustrate its purpose.  <u>Seidenberg v. Summit Bank</u>, 348 N.J. Super. 243, 257 (App. Div. 2002).

Cigna incorrectly argues that Plaintiffs' breach of good faith and fair dealing claim is duplicative of its breach of contract claim.  (Db20-21).  To the contrary, Plaintiffs allege numerous ways in which Cigna unreasonably frustrated the Plans' purposes separate from Cigna's underpayments of Plaintiffs' claims, including by using arbitrary reimbursement methodologies, providing patently inadequate

explanations for its underpayments, and by other bad faith claims handling and processing practices.   (Am. Compl. ¶ 417).   Thus, they sufficiently plead their implied covenant of good faith and fair dealing claim.

### C.    Plaintiffs Plead a Valid Declaratory Judgment Claim (Count 10)

Cigna argues that Plaintiffs' declaratory judgment claim fails because it seeks relief sought through its other causes of action. (Db21-22).   However, "simply because additional recovery would likely flow to [the plaintiff] as a result of a declaration in her favor does not preclude applicability of the [Declaratory Judgment Act ('DJA')]."  Reifer v. Westport Ins. Corp., 751 F.3d 129, 136-137 (3d Cir. 2014). Importantly, "Courts 'may' grant declaratory judgments 'whether or not further relief is or could be sought.'"  Id. (quoting 28 U.S.C. § 2201(a)).

Moreover, district courts have "unique and substantial discretion" in deciding whether to declare the rights of litigants, because "the district court is presented with facts during the litigation that indicate whether a declaratory judgment will be a useful remedy and whether the case is fit for resolution."  McGee v. Cont'l Tire N. Am., Inc., 2007 WL 2462624, *13 (D.N.J. Aug. 27, 2007).  Accordingly, dismissal of Plaintiffs' declaratory judgment claim at this stage would be premature.  See id.

### D.    Plaintiffs Plead a Viable State Law Claim For Breach of Fiduciary Duty (Count 11)

Under New Jersey law, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another

34

on matters within the scope of their relationship." F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997).  The essence of a fiduciary relationship is that one party places trust and confidence in the other party, and the second party is in a dominant or superior position.  McKelvey v. Pierce, 173 N.J. 26, 57 (2002).

Here, Cigna argues that Plaintiffs' state law fiduciary duty claim is duplicative and "untethered to a violation of any plan terms." (Db22).  To the contrary, Plaintiffs allege that Cigna owes Plaintiffs fiduciary duties based on its trusted role in administering the Cigna Plans.  (Am. Compl. ¶¶ 3, 428).  Cigna violated these duties by administering the Plans for its own benefit and expense of Cigna's Subscribers and Plaintiffs.  (Id. ¶ 433; see Part II.A, supra). Thus, Plaintiffs sufficiently allege a breach of fiduciary duty as to the non-ERISA Plans.

### E.   Plaintiffs Plead a Viable Quantum Meruit Claim (Count 12)

Cigna calls Plaintiffs' quantum meruit claim in Count 12 a "non-starter" because it is purportedly subject to ERISA preemption.  (Db23).  Cigna relies for this argument on Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc., 399 F. Supp. 3d 241, 250-51 (D.N.J. 2019).  But in that case, the plaintiff was "disputing its right to be paid for a medical procedure that it administered to patients who were insured by an ERISA plan."  Id. at 250.  Here, Plaintiffs plead their quantum meruit claim in the alternative, to the extent that any of the Plaintiffs have not been validly assigned benefits under the Cigna Plans, or are otherwise precluded from asserting breach of

contract claims against Cigna.  (Am. Compl. ¶ 436).

Cigna argues that Plaintiffs cannot avoid preemption by limiting this count to claims for which they lack valid assignments, because the count still "depends on the existence of and interpretation of ERISA plans."  (Db23).  The Third Circuit recently rejected a similar argument in The Plastic Surgery Center, P.A. v. Aetna Life Ins. Co., No. 18-3381, 18-3356, 2020 WL 4033125 (3d Cir. July 17, 2020) (precedential).  There, the Third Circuit held that the state law breach of contract and promissory estoppel claims of the plaintiff, an out-of-network health care provider, plausibly sought to enforce obligations independent of an ERISA plan; thus, they were not preempted by ERISA.  2020 WL 4033125, *7-8.  The insurer's oral offers or oral promises, rather than the terms of the plan, defined the scope of the insurer's duty, and the claims plausibly arose out of a relationship that ERISA did not intend to govern.  Id., *9-13.  The Third Circuit distinguished the plaintiffs' unjust enrichment claim, which it found preempted because that claim required a showing that the plaintiff conferred a benefit on the insurer—the discharge of the obligation the insurer owes to its insured under the terms of the ERISA plan.  Id., *15-16.  But the Third Circuit also noted that quantum meruit under New Jersey law does not require a showing of a benefit conferred.  Id., at *16 n.27.  Recovery under a quantum meruit claim under New Jersey law "requires '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are

36

rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Id. (quoting Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002)).  Plaintiffs' quantum meruit claim here similarly does not depend on an ERISA Plan or the discharge of Cigna's obligations under a Plan, but on Plaintiffs' performance of services under an expectation of compensation and the reasonable value of those services.  See id.

As to patients covered by non-ERISA plans, Cigna makes the entirely circular argument that "Plaintiffs do not identify any obligations for Cigna to pay claims outside of Plan terms" (Db24)—ignoring that quantum meruit provides an independent obligation for Cigna to pay such claims.  Cigna also argues that "a quasi-contract claim cannot exist where there is an enforceable agreement between parties." (Db24).  But Plaintiffs' quantum meruit claim is pled in the alternative to the extent Plaintiffs are held to lack an enforceable contract claim.  (Am. Compl. ¶ 436).  Count 12 should not be dismissed.

### F.    Plaintiffs Plead a Valid HCAPPA Claim (Count 14)

In seeking dismissal of Plaintiffs' claim in Count 14, Cigna once again misstates the claim.  Cigna argues that this Count arises under "New Jersey Coverage and Payment Regulations."  (Db24).  But Plaintiffs are not proceeding under those regulations; thus, the cases Cigna cites as holding that these regulations do not afford a private right of action (Db24-25) are inapposite.  Rather, Plaintiffs bring a statutory

claim under the New Jersey Health Claims Authorization, Processing and Payment Act ("HCAPPA"). (Am. Compl. ¶¶ 448-58). This statute imposes strict prompt payment requirements on Cigna and requires it to pay interest of 12% per annum on overdue payments. N.J.S.A. 17B:26-9.1(d)(9), N.J.S.A.17B:27-44.2(d)(9), and N.J.S.A. 26:2J-8.1(d)(9). Although New Jersey courts have not squarely addressed the availability of a private right of action under HCAPPA, the Appellate Division has strongly suggested that such a cause of action is available. Medical Society of New Jersey v. Amerihealth HMO, Inc., 376 N.J. Super. 48, 58 (App. Div. 2005) (allowing HCAPPA's predecessor, the HINT Act, "to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments").

Cigna further argues that this count is subject to ERISA preemption as applied to fully-insured ERISA Plans. However, ERISA expressly excludes state laws that "regulate insurance, banking, or securities" from the scope of ERISA's express preemption clause, see 29 U.S.C. § 1144(b)(2)(A), other than self-funded employee benefit plans. 29 U.S.C. §1144(b)(2)(B). A state law regulates insurance if it is (1) "'specifically directed towards entities engaged in insurance," and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured.'" Levine v. United Healthcare Corp., 402 F.3d 156, 164-65 (3d Cir. 2005) (citing Kentucky

Ass'n. of Health Plans Inc. v. Miller, 538 U.S. 329, 341-42 (2003)).   HCAPPA

satisfies both requirements.   It expressly applies to "health insurers," N.J.S.A.

17B:26-9.1, N.J.S.A.17B:27-44.2, and "health maintenance organizations," N.J.S.A.

26:2J-8.1.  And it substantially affects risk-pooling by imposing statutory interest in

the amount of 12% per annum.   N.J.S.A. 17B:26-9.1(d)(9), N.J.S.A. 17B:27-

44.2(d)(9) and N.J.S.A. 26:2J-8.1(d)(9).  Thus, HCAPPA is not preempted insofar

as it applies to fully-insured ERISA plans.

### G.   Plaintiffs Plead a Viable Consumer Fraud Act Claim (Count 15)

The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA")

provides a private right of action for "[a]ny person who suffers any ascertainable

loss of moneys or property, real or personal, as a result of the use or employment by

another person of any method, act, or practice declared unlawful" by the Act.

N.J.S.A. 56:8–19.  The history of the CFA "is one of constant expansion of consumer

protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604 (1997).  Thus, it

is construed liberally.  Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994).

A plaintiff asserting a claim under the CFA must allege each of the following

elements: (a) an unlawful practice by the defendant; (b) an ascertainable loss of

moneys or property suffered by the plaintiff; and (c) a causal association between

the unlawful conduct and plaintiff's loss.  N.J.S.A. 56:8–19; Bosland v. Warnock

Dodge, Inc., 197 N.J. 543, 557 (2009).  Count Fifteen of the Amended Complaint

successfully pleads each of these elements.  (Am. Compl. ¶¶ 459-69).

Cigna argues only that Plaintiffs have not alleged that they are "consumers" under the statute, and that the CFA claim as pled does not satisfy the Fed. R. Civ. P. 9(b) requirement of specificity.  (Db26-28).  Both arguments lack merit.

### 1.    Plaintiffs are not required to be "consumers"

Cigna's argument that Plaintiffs are not "consumers" fails because whether a sale of merchandise falls under the scope of the Act does not turn on the nature of the buyer, but rather on the nature of the sale.  See Arc Networks, Inc. v. Gold Phone Card Co., 333 N.J. Super. 587, 589–90 (Law Div. 2000).[7]  Moreover, Cigna argues that Plaintiffs have not pled they are "consumers" because Plaintiffs "purport to bring a claim on behalf of New Jersey residents to whom they allege Cigna marketed plans."  (Db26).  This argument is perplexing because this is precisely why Plaintiffs have standing to bring a CFA claim.  If the patients on whose behalf Plaintiffs bring this claim had asserted a claim for breach of the CFA, there would be no question that their claims would fall under the Act.  Lemelledo v. Beneficial Management Corp., 150 N.J. 255, 265 (1997) ("the statute's language is ample enough to

---

[7] "While the term 'consumer' has historically connoted an individual purchaser, the Act has been interpreted to afford protection to corporate and commercial entities who purchase goods and services for use in their business operations."  Id. (citing Hundred East Credit Corp. v. Eric Schuster, 212 N.J. Super. 350 (App. Div.), certif. denied, 107 N.J. 60, (1986); Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J. Super. 171 (App. Div. 1994)).

encompass the sale of insurance policies as goods and services that are marketed to consumers."). The only issue, therefore, is whether Plaintiffs may assert their patients' CFA claims in a representative capacity. Cigna does not address the issue.

The cases cited by Cigna are not on point because none of them involved a non-consumer plaintiff suing in a representative capacity for a consumer. (See Db26 & n. 22) (citing Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 12-14 (App. Div. 2006) (wholesale buyer of counterfeit printer ink jet cartridges filed suit on its own behalf); Lab. Corp. of Am. d/b/a Labcorp. v. Fusion Diagnostics Labs., LLC, 2020 WL 476882, at *5 (N.J. App. Div. Jan. 30, 2020) (testing lab brought suit for breach of service contract to which it was a signatory); Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc., 408 F. App'x 566, 570 (3d Cir. 2010) (corporation that purchased, leased and maintained commercial properties filed suit on its own behalf against lender). In fact, the CFA specifically allows claims to be brought in a representative capacity by defining "person" to include "any natural person or his legal representative." N.J.S.A. 56:8-1(d) (emphasis added). See, e.g., Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co., 393 N.J. Super. 492, 501, 503 (App. Div. 2007) (homeowners associations statutorily authorized to sue on behalf of individual condo owners are allowed to bring CFA claims against third-party contractors for construction defects in common elements of a development). Plaintiffs are likewise authorized to bring actions on behalf of their patients by virtue

of the AOB forms in which their patients assign such rights to them.  (See, e.g., Am. Compl. ¶¶ 125-27, 131, 147, 153, 155).  Thus, Plaintiffs can sue under the CFA without themselves being "consumers" of Cigna's Plans.

A District Court opinion addressing whether an assignee can assert a claim under the CFA, Nationwide Mutual Ins. Co. v. Caris, 170 F.Supp.3d 740 (D.N.J. 2016), and the case upon which it relies, Levy v. Edmund Buick-Pontiac, Ltd., 270 N.J. Super. 563 (Law. Div. 1993), do not dictate a contrary result.  Those cases involved assignees of claims by consumers who had suffered harm, but the assignees had not alleged that they themselves had suffered harm from the defendants' wrongful conduct.  Nationwide, 170 F.Supp.3d at 747; Levy, 270 N.J. Super. at 567.  Consistent with the CFA's requirement that a claimant have suffered an "ascertainable loss" due to the challenged action, N.J.S.A. 56:8-19, both courts dismissed the assignees' CFA claims.  Nationwide, 170 F.Supp.3d at 747; Levy, 270 N.J. Super. at 567.  Here, Plaintiffs have pled that they suffered direct harm from Cigna's CFA breaches separate from any harm suffered by the Cigna Subscribers, including damages to their relationships with their patients and the costs in time, person-hours, and other administrative expenses incurred because of Cigna's conduct.  (Am. Compl. ¶ 469).

### 2.    Plaintiffs satisfy Rule 9(b) pleading requirements

Cigna correctly notes that, because a CFA claim sounds in fraud, it must meet

the Rule 9(b) requirement of pleading with specificity.  See, e.g., Daloisio v. Liberty Mut. Fire Ins. Co., 754 F.Supp.2d 707, 709 (D.N.J. 2010).  However, the purpose of the Rule 9(b) pleading requirements is not detail for its own sake; "it is to provide notice of the 'precise misconduct' with which defendants are charged" so that the defendants have an opportunity to respond meaningfully to the complaint, "and to prevent false or unsubstantiated charges." Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir.1998) (citation and internal quotation marks omitted).  To satisfy Rule 9(b), Plaintiffs need not "plead the date, place or time' of the fraud," so long as they employ some "means of injecting precision and some measure of substantiation into their allegations of fraud." Id.  The detail surrounding Plaintiffs' fraud allegations in the Amended Complaint easily satisfies Rule 9(b). (See Part III.A.1, supra).

Cigna argues that Plaintiffs have not satisfied Rule 9(b) because they have not pled the language of a single Plan stating that out-of-network claims are "reimbursed at 100% of billed charges." (Db27).  Again, that is not Plaintiffs' theory of the case. Under their actual theory, Plaintiffs have more than sufficiently pled facts showing that Cigna underpaid Plaintiffs under the terms of the Plans.  (Part II.A, supra).

Cigna's remaining argument is that Plaintiffs have not pled a statement by a Cigna representative "that in any way misrepresents Plan terms." (Db27-28).  This likewise misstates Plaintiffs' claim.  Plaintiffs have laid out in great detail the

manner in which Cigna <u>misrepresents in the Plan terms</u> how it <u>administers</u> the Plans. (<u>See</u>, <u>e.g.</u>, Am. Compl. ¶ 174 ("Cigna's improper practice of underpaying out-of-network claims based on false premises is contrary to the Plans....")).  This is at the core of Plaintiffs' claims, and the myriad ways in which Cigna accomplishes this fraud are described throughout the 300+ factual paragraphs in the Amended Complaint.  (Part III.A.1, <u>supra</u>).  The Amended Complaint details how these misrepresentations have played out with actual patients, recounting specific communications by Cigna, backed up with exhibits that are the communications themselves.  (<u>See</u> Am. Compl. ¶¶ 294-317, and exhibits cited therein).  These allegations plainly satisfy Rule 9(b).

## V.   PLAINTIFFS' CLAIMS ARE TIMELY

Finally, Cigna injects a new argument not raised in its prior motion to dismiss, that "many" of Plaintiffs' claims purportedly arose before the applicable limitations periods and are time barred.  (Db44-45). A limitations defense may be not raised by Rule 12(b)(6) motion if the time bar "is not apparent on the face of the complaint." <u>Schmidt v. Skolas</u>, 770 F.3d 241, 248 (3d Cir. 2014).  Here, no time bar is apparent on the face of the Amended Complaint. A limitations period may be tolled where, as here, a lawsuit has been delayed because the defendant itself has taken steps to hide its breach until after the date of the claim's discovery.  <u>Cetel v. Kirwan Fin'l Group, Inc.</u>, 460 F.3d 494, 508-509 (3d Cir. 2006) (fraudulent concealment is an

equitable doctrine that is read into every federal statute of limitations) (internal citations omitted); Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996) (ERISA breach of fiduciary duty will run six years after the date of the claim's discovery when fraud or concealment by defendant).  Plaintiffs allege here that they first discovered Cigna's fraud in March 2018.  (Am. Compl. ¶ 198).  Using that date, all of Plaintiffs' claims are timely under the limitations periods that Cigna cites.  (See Db44-45).

Cigna argues that Plaintiffs do not explain why they did not discover Cigna's fraudulent conduct sooner.  (Db44).  But "a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."  Schmidt, 770 F.3d at 248.  Consequently, Plaintiffs were under no obligation to explain the circumstances of their discovery of Cigna's fraud.  See id.  Even so, Plaintiffs' Amended Complaint details Cigna's fraudulent misrepresentations and concealment that prevented Plaintiffs from learning that they had viable claims against Cigna sooner.  (See, e.g., Am. Compl., "Factual Allegations" § II.D).  Plaintiffs have more than sufficiently alleged that all of their claims are timely.

## CONCLUSION

For all of the foregoing reasons, Cigna's Motion to Dismiss should be denied.

Respectfully submitted,

**K&L GATES LLP**
*Attorneys for Plaintiffs*

By:    <u>/s/ Anthony P. La Rocco</u>
       Anthony P. La Rocco

Dated:  July 24, 2020