**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANCED GYNECOLOGY AND LAPAROSCOPY OF NORTH JERSEY, P.C., et. al. | Civ. A. No.  2:19-cv-22234-ES-MAH |
| Plaintiffs, | [Page limit extended per July 12, 2021 Order, Dkt. 77.] |
| v. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et. al. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT
OF CIGNA'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................1

STATEMENT OF FACTS ...............................................................4

ARGUMENT ...................................................................................7

I.     THE ERISA CLAIMS SHOULD BE DISMISSED. ....................................7

       A.     The ERISA § 502(a)(1)(B) Claim (Count 1) Fails Because
              Plaintiffs Have Not Identified Any Plan Provision that Requires
              Their Claims to Be Paid at 100% of Billed Charges............................7

       B.     The ERISA Claim for Breach of Fiduciary Duty (Count 2)
              Should Be Dismissed as Duplicative of the ERISA Benefits
              Claim. ..............................................................................................18

       C.     The ERISA § 503 Claim (Count 3) Should Be Dismissed
              Because ERISA § 503 Does Not Provide a Private Cause of
              Action. .............................................................................................19

II.    PLAINTIFFS' STATE-LAW CLAIMS SHOULD BE DISMISSED. ..........19

       A.     The Breach of Contract Claim (Count 8) Should Be Dismissed
              for Failure to Identify a Plan Provision that Cigna Breached. ...........20

       B.     The Claim for Breach of Duty of Good Faith and Fair Dealing
              (Count 9) Should Be Dismissed as Duplicative. .................................20

       C.     The Declaratory Judgment Claim (Count 10) Should Be
              Dismissed. .......................................................................................21

       D.     The Non-ERISA Fiduciary Duty Claim (Count 11) Should Be
              Dismissed as Duplicative. ................................................................22

       E.     The Quantum Meruit Claim (Count 12) Is Preempted by ERISA
              and Is Also Duplicative of the Breach of Contract Claim. .................23

III.   THE CLAIM FOR VIOLATION OF NEW JERSEY COVERAGE
       AND PAYMENT REGULATIONS (COUNT 14) SHOULD BE
       DISMISSED. ...................................................................................25

i

IV.   THE NJ CONSUMER FRAUD ACT CLAIM (COUNT 15) SHOULD BE DISMISSED. ............................................................26

V.   PLAINTIFFS' RICO CLAIMS (COUNTS 4-7) SHOULD BE DISMISSED. ......................................................................28

   A.   Plaintiffs' Section 1962(c) Claim (Count 4) Fails for Failure to Plead Predicate RICO Acts and Causation. ........................................29

      1.   Plaintiffs Have Failed to Plead Mail and Wire Fraud..............30

      2.   Plaintiffs Have Failed to Plead Embezzlement. .....................37

      3.   Plaintiffs Have Not Pled a RICO Injury or Causation.............39

   B.   Plaintiffs' 18 U.S.C. § 1962(a) Claim (Count 6) Fails. ......................42

   C.   The RICO Conspiracy Claims (Counts 5 and 7) Should Be Dismissed Because Plaintiffs' Substantive RICO Claims Fail..........44

VI.   MANY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED......................44

CONCLUSION ....................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*,
2018 WL 2758221 (D.N.J. June 7, 2018) .............................................................25

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ..............................................................................................45

*Anderson v. Ayling*,
396 F.3d 265 (3d Cir. 2005) ..................................................................................39

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ..........................................................................................39, 42

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
2018 WL 5630030 (D.N.J. Oct. 31, 2018) ............................................................10

*Balthazar v. Atl. City Med. Ctr.*,
279 F. Supp. 2d 574 (D.N.J. 2003) .......................................................................30

*Bickhart v. Carpenters Health & Welfare Fund of Pa. & Vicinity*,
732 F. App'x 147 (3d Cir. 2018) ..........................................................................18

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)...............................................................................................40

*Butto v. CJKant Res. Grp., LLC*,
2019 WL 1147580 (E.D. Pa. Mar. 13, 2019) .......................................................45

*Carr v. N.J. Ins. Cure. Co.*,
2011 WL 380925 (D.N.J. Jan. 31, 2011)...............................................................45

*Coba v. Ford Motor Co.*,
932 F.3d 114 (3d Cir. 2019) ..................................................................................27

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
2017 WL 1206005 (D.N.J. Mar. 31, 2017) ..........................................................25

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  2017 WL 685101 (D.N.J. Feb. 21, 2017) .........................................................25

*D'Alessandro v. Hartford Life & Accident Ins. Co.*,
  2009 WL 122852 (D.N.J. May 1, 2009)...........................................................28

*Edelgass v. New Jersey*,
  2015 WL 225810 (D.N.J. Jan. 16, 2015)..........................................................45

*Estate of Warner v. Koo*,
  2018 WL 5289050 (N.J. App. Div. Oct. 25, 2018) ...........................................45

*Fiorentino v. Bricklayers & Allied Craftworkers Local 4 Pension Plan*,
  696 F. App'x 594 (3d Cir. 2017) ......................................................................45

*Franco v. Conn. Gen. Life Ins. Co.*,
  289 F.R.D. 121 (D.N.J. 2013)...........................................................................12

*Gobeille v. Liberty Mut. Ins. Co.*,
  577 U.S. 312 (2016)...........................................................................................26

*Grande Vill. LLC v. CIBC Inc.*,
  2015 WL 1004236 (D.N.J. Mar. 6, 2015) .........................................................20

*Guy's Mech. Sys., Inc. v. FIA Card Servs., N.A.*,
  339 F. App'x 193 (3d Cir. 2009) (unpublished)................................................43

*Hein v. F.D.I.C.*,
  88 F.3d 210 (3d Cir. 1996) .................................................................................8

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010)........................................................................................39, 42

*Hooven v. Exxon Mobil Corp.*,
  465 F.3d 566 (3d Cir. 2006) ...............................................................................8

*In re Aetna UCR Litig.*,
  2015 WL 3970168 (D.N.J. June 30, 2015)........................................................38

*In re Riddell Concussion Reduction Litig.*,
  77 F. Supp.3d 422 (D.N.J. 2015).......................................................................30

*Jaye v. Oak Knoll Vill. Condo. Owners Assoc., Inc.*,
   751 F. App'x 293 (3d Cir. 2018) ........................................................30

*K.S. v. Thales USA, Inc.*,
   2019 WL 1895064 (D.N.J. Apr. 29, 2019).....................................9, 10

*Kennedy v. Axa Equitable Life Ins. Co.*,
   2007 WL 2688881 (D.N.J. Sep. 11, 2007) ........................................45

*Kolar v. Preferred Real Estate Invs., Inc.*,
   361 F. App'x 354 (3d Cir. 2010) .........................................29, 43, 44

*Lab. Corp. of Am. d/b/a Labcorp. v. Fusion Diagnostics Labs., LLC*,
   2020 WL 476882 (N.J. App. Div. Jan. 30, 2020)..............................26

*Leeder v. Feinstein*,
   2019 WL 2710794 (D.N.J. June 28, 2019).........................................36

*Lewis v. Gov't Emps. Ins. Co.*,
   2019 WL 1198910 (D.N.J. Mar. 14, 2019) ........................................21

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) .........................................................43, 44

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) .............................................................27

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000) .............................................................40

*Mehling v. N.Y. Life Ins. Co.*,
   163 F. Supp. 2d 502 (E.D. Pa. 2001).................................................38

*Menkes v. Prudential Ins. Co. of Am.*,
   762 F.3d 285 (3d Cir. 2014) .............................................................24

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
   567 F. Supp. 2d 729 (D.N.J. 2008)....................................................24

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ...............................................29

*MZL Capital Holdings, Inc. v. TD Bank, N.A.*,
   734 F. App'x 101 (3d Cir. 2018) ........................................................21

*Papergraphics Int'l, Inc. v. Correa*,
   389 N.J. Super. 8 (N.J. App. Div. 2006) ............................................26

*Piscopo v. Pub. Serv. Elec. & Gas Co.*,
   2015 WL 3938925 (D.N.J. June 25, 2015) .......................................19

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
   967 F.3d 218 (3d Cir. 2020) ...............................................................23

*Priano-Keyser v. Apple, Inc.*,
   2019 WL 7288941 (D.N.J. Dec. 30, 2019) ......................................27

*Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding
   Inc.*,
   408 F. App'x 566 (3d Cir. 2010) .......................................................27

*Puro-Tec, LTD v. Carotenuto*,
   2019 WL 2089993 (E.D. Pa. May 13, 2019) ...............................40, 41

*Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*,
   2016 WL 4499551 (D.N.J. Aug. 25, 2016) ......................................19

*Ribble Co. v. Burkert Fluid Control Sys.*,
   2016 WL 6886869 (D.N.J. Nov. 22, 2016) ......................................24

*Robinson v. Anthem Blue Cross Life & Health Ins. Co.*,
   2018 WL 6258881 (D.N.J. Nov. 30, 2018) .........................11, 16, 17

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ...............................................................42

*Serio v. Wachovia Sec., LLC*,
   2007 WL 2462626 (D.N.J. Aug. 27, 2007) ......................................22

*Shah v. Horizon Blue Cross Blue Shield of N.J.*,
   2018 WL 1509087 (D.N.J. Mar. 27, 2018) .........................................3

*Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.*,
   399 F. Supp. 3d 241 (D.N.J. 2019) ...................................................23

*Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*,
  2020 WL 1983693 (D.N.J. Apr. 27, 2020) ........................................................10

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
  941 F. Supp. 2d 537 (D.N.J. 2013) .................................................................28

*United States v. Pharis*,
  298 F.3d 228 (3d Cir. 2002) ............................................................................30

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
  2018 WL 4144684 (D.N.J. Aug. 29, 2018) ........................................................9

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ............................................................................................8

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) .................................................29

*Yost v. Anthem Life Ins. Co.*,
  2016 WL 4151214 (M.D. Pa. Aug. 2, 2016) ....................................................14

**Statutes**

18 U.S.C. § 1962 ...........................................................................................*passim*

18 U.S.C. § 1964 .......................................................................................29, 39

29 U.S.C. § 1113 ...............................................................................................45

ERISA § 502(a) ...........................................................................................*passim*

ERISA § 503 ..........................................................................................7, 19, 45

N.J.S.A. 2A:14-1 ...............................................................................................45

**Other Authorities**

45 C.F.R. § 147.138(b)(3)(i) ............................................................................17

## INTRODUCTION[1]

Plaintiffs are out-of-network healthcare providers who contend that Cigna underpaid their claims for services provided to members of Cigna-serviced health benefit plans (the "Plans"). (SAC ¶ 1.) While Plaintiffs try to dress up their allegations as ERISA, RICO, and various state-law causes of action, the core theory of their supposed underpayments is not complicated. They argue that their claims were not paid pursuant to Plan terms because Cigna did not pay those claims at Plaintiffs' full billed charges, and instead applied certain "repricing" methods in reimbursing claims—including negotiating discounts for individual claims through Repricing Companies such as Zelis and MultiPlan. (SAC ¶ 16.)

But while that may be Plaintiffs' theory, that is apparently not what guided which individual benefit claims Plaintiffs put at issue (listed in Exhibit A to the SAC). Instead, Plaintiffs seem originally to have dumped any claims with a balance onto their exhibit. And while Plaintiffs have since dropped thousands of claims from this suit, it is clear from even the handful of claims described in the SAC that many of those that remain still have nothing to do with repricing techniques. For example, one of these claims was processed pursuant to the Maximum Reimbursable Charge

---

[1] For the purposes of this brief, "Cigna" means Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company collectively. References to "SAC" are to the Second Amended Complaint, Dkt. 73. Unless otherwise noted, all emphasis has been added, and all internal quotation marks, citations, and ellipses have been omitted.

("MRC") methodologies outlined in the Plans, which are used to price out-of-network claims. (SAC, Ex. J at 12.)  Others were paid at rates lower than Plaintiffs' billed charges for reasons that have nothing to do with pricing at all, including because the member did not have out-of-network benefits.  Hoping to keep these unrelated claims in the case, Plaintiffs' SAC now offers a handful of conclusory allegations that Cigna miscalculated payment for these claims too.  But these allegations are insufficient to survive a motion to dismiss, and these non-repricing claims should be dismissed from the case.

Regardless, Plaintiffs admit, for all of their claims, "the Cigna Plans *control* the amount" at which those claims must be paid. (*Id.* ¶ 6.)  And, as with their two prior complaints, Plaintiffs have not identified a single provision in the Plans that would obligate Cigna to pay Plaintiffs' billed charges.

In fact, the terms of the Plans unequivocally refute this theory.  Instead, the Plans have methodologies to price out-of-network claims, which typically lead to those claims being paid at much less than billed charges—precisely so that plan sponsors can control the costs of out-of-network services.  (*Id.*)  That is no surprise: it would make no sense for a plan sponsor to adopt a cost-limiting methodology like the MRC, only to end up having to pay an out-of-network provider's claims at a rate determined solely by the provider.  "Plaintiff[s] may be disappointed with the out-of-network reimbursement terms of [their] patients' benefit plan[s], which resulted

2

in a payment that was a small percentage of [Plaintiffs'] charges," but they "accepted the terms of the Plan[s] when [they] agreed with [their] patients to the assignment of [their] benefits." *See Shah v. Horizon Blue Cross Blue Shield of N.J.*, 2018 WL 1509087, at *4-5 (D.N.J. Mar. 27, 2018).

Ultimately, without any plausible allegations that Cigna paid less than the Plans require, all of Plaintiffs' legal theories fall apart. They cannot possibly state any ERISA violation without showing that Cigna breached plan terms. Plaintiffs' state-law claims are premised on the same mistaken assumption—that Cigna did something wrong by not paying their claims at full billed charges—and they fail for that same reason. Finally, their RICO schemes make no sense. Plaintiffs conjure a supposed conspiracy where Cigna misrepresents ***to Plaintiffs*** that they have a contracted rate with the Repricing Companies—even though Plaintiffs admit that they know they are "out-of-network providers who have not contracted with Cigna." (SAC ¶ 16.) But even setting that incoherence aside, Plaintiffs' RICO claims fail since they have not shown an entitlement to be paid at 100% of their billed charges, and thus Plaintiffs cannot show any RICO injury.

For these reasons, and those described below, all claims should be dismissed.

## STATEMENT OF FACTS

Cigna provides healthcare insurance and administers claims for both employer-sponsored benefit Plans and individual health benefit Plans. (SAC ¶ 4.)

3

Certain Plans allow members to obtain healthcare services from so-called "out-of-network" providers.  (*Id.* ¶ 6.)  In-network providers contract with Cigna to provide services to Cigna members at "discounted negotiated rates"; out-of-network providers, like Plaintiffs, do not.  (*Id.* ¶ 60.)  As a result, "the Cigna Plans **control** the amount Cigna is required to reimburse the out-of-network provider."  (*Id.* ¶ 6.)

To receive the benefit of discounted rates, Plans typically encourage members to see in-network providers rather than out-of-network providers.  For example, some Plans do not cover out-of-network visits at all; in such cases, if a Cigna member goes to an out-of-network provider, Cigna will deny the claim as non-covered under the plan and the plan will not be financially responsible.  That, in fact, is what happened with at least one patient whom Plaintiffs specifically reference.[2] (Dkt. 39, FAC ¶¶ 305-311; *see also* Wohlforth Cert., Ex. 1, Explanation of Payment ("EOP"), at 3 (Cigna denying an out-of-network claim because "your plan won't pay for this service unless you go to a health care professional in Cigna's network.").)

Because plan sponsors do not have negotiated rates with out-of-network providers, and therefore cannot control how much these providers bill, plan sponsors may also set a pricing formula that limits how much the Plans will pay for out-of-network services.  In the Plans for which Cigna administers claims, for elective

---

[2] While no longer called out in the text of the SAC, as it was in the FAC, this claim is listed in Exhibit A to the SAC and is still being contested by Plaintiffs.

services, this is typically done through a "Maximum Reimbursable Charge" or "MRC." (SAC ¶ 66.) Some of the Plans have a different methodology, called a "Reasonable & Customary Charge" or "R&C." (*Id.*)

Plaintiffs quote examples of the MRC or R&C definitions in the SAC. (SAC ¶¶ 68-70.) And as even Plaintiffs would acknowledge, the MRC definitions in the Plans typically limit reimbursement for out-of-network claims to the ***lesser*** of: (i) the provider's normal (not billed) charge, or (ii) a plan selected methodology based on a percentile of charges or a methodology similar to Medicare. And under the R&C methodology, as alleged, the reimbursement amount is calculated based on what Cigna considers "appropriate for the services performed," which may—in addition to other factors—include consideration of the provider's usual charge or the charge not above the prevailing fee (as, again, determined by Cigna). But these MRC and R&C methodologies certainly do not obligate Cigna to pay out-of-network claims at 100% of billed charges, like Plaintiffs argue.

The same is true for emergency claims under the Plans. As Plaintiffs recognize, federal regulations obligate Plans to pay emergency claims under the so-called "Greatest of Three" rule. (*Id.* ¶ 86.) But while Plaintiffs contend that for "almost all of the emergency or urgent care" claims, "the Cigna Plans require Cigna to pay the Plaintiffs up to their total incurred charges" (*id.* ¶ 91), that "Greatest of Three" regulation makes clear that the Plans will do no such thing. Instead, the

Plans—consistent with federal law—cover emergency claims either at:

> the ***negotiated amount agreed*** to by the Out-of-Network provider and Cigna, or[,] if no amount is agreed upon, the ***greater*** of the following: (i) the median amount negotiated with ***In-Network Providers*** for the emergency service (excluding In-Network copay or coinsurance); (ii) the ***Maximum Reimbursable Charge***; or (iii) the amount payable under the ***Medicare program*** (not to exceed the provider's billed charges)."[3]

Finally, as the Plans contemplate, Cigna may also use the services of a third-party vendor to negotiate with out-of-network providers to reprice claims under Cigna's "cost-containment" programs.  (*See* SAC ¶ 17.)  As Cigna advises plan sponsors, applying these "may result in higher payments than if the MRC is applied," "whereas application of MRC may result in the patient being balance billed for the entire unreimbursed amount, applying these discounts avoids balance billing and substantially reduces the patient's out-of-pocket cost."  (*Id.* ¶¶ 252, 254.)

In the SAC, Plaintiffs challenge a specific cost-containment program: Cigna's use of third-party "repricing" vendors.  Cigna contracts with certain third parties (*i.e.*, as alleged in the SAC, MultiPlan and Zelis) who come up with a proposed "repriced" amount for the particular service at issue, which is then sent to the provider. Plaintiffs argue that they generally do not have contracts with repricing companies and thus do not have a set of contracted rates. (*Id.* ¶ 258.)  Plaintiffs acknowledge, however—as Cigna discloses to plan sponsors in contracts called

---

[3] Ex. 4 to Wohlforth Cert., BBA Aviation OAP Medical Benefits Plan, at 13.

ASO agreements—that the third-party companies will negotiate rates directly with the out-of-network provider.  (*Id.* ¶ 251(b) ("Cigna 'may apply discounts available under . . . third-party contracts *or through negotiation* of the billed [incurred] charges'") (quoting ASO agreement).)  So when Cigna receives an out-of-network claim, Cigna or its agents may make an offer to the provider; the provider ultimately decides whether to accept that offer.

## ARGUMENT

### I.    The ERISA Claims Should Be Dismissed.

Plaintiffs bring three counts under ERISA:  (1) an ERISA § 502(a)(1)(B) benefits claim; (2) a claim for breach of fiduciary ERISA duties; and (3) a claim for denial of full and fair review under ERISA § 503.  All three should be dismissed.

First, the ERISA benefits claim should be dismissed because while Plaintiffs argue that they are entitled to be paid at 100% of billed charges on all of their claims, the Plans show that Cigna does *not* pay out-of-network claims at that rate.  Second, Plaintiffs premise their ERISA fiduciary duty claim on the same unsupported and mistaken assumption as their benefits claim, so it is not only wrong on the merits but also duplicative.  Finally, Plaintiffs' ERISA § 503 claim fails because ERISA § 503 does not provide for a private cause of action.

#### A.    The ERISA § 502(a)(1)(B) Claim (Count 1) Fails Because Plaintiffs Have Not Identified Any Plan Provision that Requires Their Claims to Be Paid at 100% of Billed Charges.

The linchpin of Plaintiffs' ERISA § 502(a)(1)(B) benefits claim is that the

terms of the Plans supposedly require their claims to be reimbursed at 100% of Plaintiffs' billed charges—or what Plaintiffs call their "incurred" charges (SAC ¶ 12)—and that Cigna violated ERISA by failing to pay their claims in accordance with those terms. (*See, e.g.*, *id.* ¶ 164 (asserting that Plaintiffs are "entitled to up to the ***total incurred charges*** for the elective and emergency claims at issue," less patient responsibility amounts).) This claim should be dismissed.

That a claim for benefits under ERISA rises and falls with plan terms is beyond dispute. ERISA's plain language is unequivocal in this respect, requiring a plaintiff to demonstrate that he is entitled to "benefits due to him ***under the terms of his plan***." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has also repeatedly explained as much, noting that "ERISA's principal function" is "to protect contractually defined benefits"—that is, benefits set forth in the plan—and ERISA's "statutory scheme, we have often noted, 'is built around reliance on the face of written plan documents.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013). "The plan, in short, is at the center of ERISA." *Id.* at 101.

Because plan terms are "at the center of ERISA," *id.*, an ineluctable requirement of stating a benefits claim is to first "demonstrate that the benefits ***are actually 'due'***" under the plan—"that is, [the ERISA plaintiff] must have a right to benefits that are legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996)

8

("Only the words of the Plan itself can create an entitlement to benefits."). "Nothing in the [plans], ERISA, or the applicable case law interpreting ERISA confers a right upon [an out-of-network provider] . . . to demand anything other than the out-of-network allowance which [the plan sponsor] opted to underwrite as a benefit." *K.S. v. Thales USA, Inc.*, 2019 WL 1895064, at *5 (D.N.J. Apr. 29, 2019).

Thus, it is now black-letter law in this District that a plaintiff cannot state an ERISA benefits claim without identifying the plan provision that was breached. *See Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018) ("join[ing] recent holdings of other judges of this district" in "emphasiz[ing] that an ERISA claim requires plaintiff to allege and prove an entitlement to 'benefits due to him *under the terms of his plan*'") (emphasis in original). But Plaintiffs have failed to identify *a single plan provision* that actually obligates Cigna to pay their out-of-network claims at 100% of billed charges. Nor could they, because as explained below, the Plans in fact conclusively establish that Plaintiffs are *not* entitled to such reimbursement.

Not surprisingly, given this black-letter law, Plaintiffs themselves concede that "*the Cigna Plans control* the amount Cigna is required to reimburse the out-of-network provider . . . ." (SAC ¶ 6.) And Plaintiffs also acknowledge that the prescribed out-of-network reimbursement methodologies vary between the Plans. (SAC ¶¶ 66-70.) Despite that, Plaintiffs' basic theory of the case—that they are

entitled to be paid at 100% of billed charges across all of the Plans—is unsupported by a specific allegations of even one plan provision that actually entitles them to be reimbursed at that level.

That is a fatal problem for Plaintiffs' ERISA § 502(a)(1)(B) count for all of their claims.   As courts in this District have repeatedly recognized, without identifying plan language that was actually breached, an ERISA § 502(a)(1)(B) claim cannot withstand a Rule 12(b)(6) motion.  *See Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 WL 5630030, at *7-8 (D.N.J. Oct. 31, 2018) (dismissing ERISA claim where plaintiff alleged that Anthem "improperly refused 'to pay the usual and customary charge'" of the provider but "fail[ed] to identify any specific Plan provision entitling payment of benefit based on the 'usual and customary charge'"; citing "several courts in this circuit [that] have dismissed denial of benefits claims for failure to allege the specific provision violated in an ERISA-governed plan.").[4]  The Plans in fact establish without doubt that Cigna ***does not*** reimburse claims from out-of-network providers like Plaintiffs at 100% of their billed charges.

---

[4] *See also Somerset Ortho. Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, 2020 WL 1983693, at *9 (D.N.J. Apr. 27, 2020) (dismissing where plaintiffs failed to "identify a plan term that indicates that Plaintiffs were in fact underpaid"); *K.S*, 2019 WL 1895064, at *6 (collecting D.N.J. cases that "granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan").

Moreover, even if Plaintiffs intended to seek some amount less than billed charges, their claim still fails because they have not alleged what that amount may be, let alone how such amounts are required by the Plans. Such allegations are necessary for an ERISA § 502(a)(1)(B) claim to survive dismissal. *See Robinson v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 WL 6258881, at \*4 (D.N.J. Nov. 30, 2018) (no "viable claim under § 502(a)(1)(B)" where the complaint "points to relevant provisions in the Plan but fails to allege what amount Plaintiff should be entitled to under those provisions.").

**<u>Elective Out-of-Network Claims.</u>**  Plaintiffs allege that for elective out-of-network claims, "the Cigna Plans typically state that Cigna's repayment obligation is limited to the 'Maximum Reimbursable Charge' ('MRC') for Covered Expenses." (SAC ¶ 66.)  Plaintiffs then cite variations of MRC and R&C definitions from the Plans (*id.* ¶¶ 67-70).   Plaintiffs contend that paying claims under these methodologies should result in Cigna paying out-of-network claims at full billed charges (*id.* ¶ 74):

> Cigna's Plans typically calculate MRC or R&C for the Cigna Claims based on the lesser of either (i) the provider's normal charges, or (ii) some alleged alternative methodology (not disclosed in the Plan itself) that, upon information and belief, equals if not exceeds Plaintiffs' normal charges for the services at issue.

Otherwise, according to Plaintiffs, there has been a "misapplication of [Cigna's] MRC definition."  (SAC ¶ 156.)

11

There are at least two things wrong with this theory.  <u>First</u>, Plaintiffs are wrong to equate "normal" charges to their "billed" (or "incurred") charges.  These two things are not the same, as courts reviewing Cigna's plan language have recognized. *See Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 138 (D.N.J. 2013) (rejecting damages model based on "billed charge[s]" put forth by out-of-network providers, because the providers could not point to a "single [Cigna] plan" that "entitles a plan beneficiary to the provider's billed charge on an ONET [out-of-network] claim"; instead, Cigna's plans priced out-of-network claims "based on 'the normal charge' of 'the provider'").

Second, Plaintiffs concede that the MRC methodologies in the Plans typically calculate reimbursement at the *lesser* of the (i) normal charge, or (ii) some other alternative methodology, but then they argue that under either methodology, the claim should still be paid at "Plaintiffs' normal charges for the services at issue." (SAC ¶ 74.)  This argument makes no sense.

To start, Plaintiffs' own recitation of MRC and R&C definitions refutes their allegation that these methodologies inevitably translate to paying claims at full billed charges.  For some definitions of MRC in the Plans (called MRC-1), the second prong of the "lesser of" definition uses a database of comparable charges, *i.e.*, "a policyholder-selected percentile of charges made by providers of such service or supply in the geographic area where it is received *as compiled in a database selected*

12

*by [the plan sponsor]*." (*Id.* ¶ 69.)  For other definitions of MRC (called MRC-2), the second prong uses a methodology similar to Medicare, *i.e.*, "a policyholder-selected percentage of a schedule developed by Cigna that is based upon a ***methodology similar to a methodology utilized by Medicare*** to determine the allowable fee for the same or similar service within the geographic market." (*Id.* ¶ 68.)  And finally, under R&C, the reimbursement amount is calculated based on what Cigna considers "appropriate for the services performed," which may—in addition to other factors—include consideration of the provider's usual charge or the charge not above the prevailing fee (as, again, determined by Cigna).  (*Id.* ¶ 70.)

The MRC and R&C methodologies thus refute any notion that applying them should invariably result in the out-of-network claim being paid at full billed charges.  A key function of these provisions is to allow the plan sponsor to select a methodology that limits reimbursement of out-of-network claims:  (i) for MRC-1, as the lesser of the normal charge or a plan-selected percentile of comparable provider charges; (ii) for MRC-2, as the lesser of the normal charge or a percentage of a methodology similar to Medicare; and (iii) for R&C, an amount that Cigna considers "appropriate" for the service.  Plaintiffs do not grapple with these definitions, and they offer no basis for their assumption that no matter which of these different prongs of these different definitions is applied, the end result is that ***all*** of Plaintiffs' claims will still be paid at full billed charges.

13

The Plans for patients referenced in the Complaint—of which the Court may take judicial notice[5]—further confirm that Plaintiffs' claims will not be paid at 100% of their billed charges. Take, for instance, the plan that governs Patient 1's claim (SAC ¶¶ 276), a plan funded by plan sponsor Sunrise Senior Living Plan. For out-of-network claims, that plan defines "the percentage of covered expenses the plan pays" as "50% of the Maximum Reimbursable Charge," with the remainder being the member's responsibility.[6] The plan then defines the MRC as *"the lesser of"* (1) the provider's *normal* charge for a similar service or supply," (2) a percentage of a methodology similar to Medicare, or (3) if the Medicare methodology is not used, a percentile of charges for a comparable service in the same geographic area.[7] As these plan terms show, Plaintiffs have no basis to allege that this plan obligates Cigna to pay out-of-network claims at 100% of billed charges.

The Plans for other patients referenced in the Complaint contain similar limitations for out-of-network reimbursement, and they also make clear that Cigna and its plan sponsors do not pay such claims at 100% of billed charges. For example: Patient 2, 3, 4 & 5's Plans, (SAC ¶¶ 294-306), defines the MRC the same way as Patient 1's plan (*i.e.*, the lowest of the provider's normal charge, a percentage of a

---

[5] *See, e.g.*, *Yost v. Anthem Life Ins. Co.*, 2016 WL 4151214, at *3 n.1 (M.D. Pa. Aug. 2, 2016) (holding that the Court may take judicial notice of the plan documents).

[6] Ex. 3 to Wohlforth Cert., at 12-13.

[7] *Id.* at 15.

14

methodology similar to Medicare and a percentile of charges).[8]   Patient 6's plan defines the R&C as the "lesser of" the provider's "usual charge" and "the R&C charge percentage made for the service or supply in the geographic location where it is furnished."[9] So while the exact definitions may vary across the Plans, the core concept is the same:   ***none*** of the Plans requires Cigna to pay out-of-network claims at billed charges, contrary to Plaintiffs' theory.

These Plans make another thing clear as well:  members, not Cigna or Cigna plan sponsors, are financially responsible for any amount beyond the out-of-network benefit required to be paid under the plan *(e.g*., the MRC)—which again means that Cigna is not obligated to pay such claims at 100% of billed charges.  For instance, all but the CISCO plan caution members that "[t]he provider may bill you for the difference between the provider's normal charge and the Maximum Reimbursable Charge, in addition to applicable deductibles, copayments[,] and coinsurance."[10] The CISCO plan similarly states that "[a]ny amounts in excess of the R&C rate are your responsibility."  If Plaintiffs were correct that Cigna must pay their claims at

---

[8] *See* Ex. 2 to Wohlforth Cert., at 13 (Patient 2); Ex. 4 to Wohlforth Cert., Signature Aviation LLC OAP Medical Benefits SPD, at 14 (Patient 5); *see also* Ex. 5 to Wohlforth Cert., Everest Reinsurance Company SPD, at 67 (Patient 3); Ex. 6 to Wohlforth Cert., NCCI Holdings, Inc. OAP Medical Benefits SPD, at 69 (Patient 4).

[9]  Ex. 7 to Wohlforth Cert., CISCO Systems Inc. Medical plan, at 94.

[10] Ex. 3 to Wohlforth Cert., at 13; Ex. 2 to Wohlforth Cert., at 13; Ex. 4 to Wohlforth Cert., at 14; Ex. 5 to Wohlforth Cert., at 12; Ex. 6 to Wohlforth Cert., at 14.

billed charges, these warnings would make no sense, since the member would never be responsible for the difference between the MRC or R&C and billed charges.

**Non-Repricing Out-of-Network Claims.**  The only factual allegations that Plaintiffs offer in the SAC involve Cigna's use of repricing vendors.   But a substantial portion of the thousands of health benefit claims that Plaintiffs have put at issue were not even paid using repricing.  For example, many claims—including Patient 3's (SAC, Ex. J, at 12)—were adjudicated using the MRC, not repricing.  For these claims, Plaintiffs offer only conclusory allegations that they were improperly paid.  (SAC ¶ 156 (alleging a "misapplication" of its MRC without any further explanation of how the MRC was misapplied).)  This is insufficient to withstand a motion to dismiss.  *See Robinson*, 2018 WL 6258881, at *4 (no "viable claim under § 502(a)(1)(B)" where the complaint "points to relevant provisions in the Plan but fails to allege what amount Plaintiff should be entitled to under those provisions.").

Plaintiffs also include claims that have nothing to with repricing or even the MRC, such as claims where the member did not have out-of-network benefits.  (Dkt. 39, FAC ¶¶ 305-311; *see also* Wohlforth Cert., Ex. 1, Provider Explanation of Payment.)  Plaintiffs also now offer conclusory allegations of "global agreements" between some Plaintiffs and MultiPlan and Zelis (SAC ¶ 16, n.2), but Plaintiffs do not allege that Cigna was a party to these agreements, nor how Cigna was obligated to use the discounts in those agreements.  Again, Plaintiffs' conclusory allegations

16

for these claims do not pass muster under Rule 12.   *See Robinson*, 2018 WL 6258881, at \*4. At minimum, the Court should issue an order dismissing any non-repricing claims from the case.

**Emergency Out-of-Network Claims.**   Plaintiffs fare no better with their theory that the Plans supposedly require Cigna and Cigna plan sponsors "to pay the Plaintiffs up to their total incurred charges" for "almost all of the emergency or urgent care" services they provide to Cigna's members. (SAC ¶ 91.)  The Plan terms refute this theory as well, because they typically calculate the allowable amount for out-of-network emergency claims not at 100% of billed charges, but by reference to the so-called "Greatest of Three" methodology mandated by federal law.  45 C.F.R. § 147.138(b)(3)(i) (setting forth the required covered "benefits with respect to an emergency service in an amount at least equal to the greatest of the three amounts specified" in the regulation).  For instance, the NCCI Holdings, Inc. plan defines the allowable amount for out-of-network emergency claims as either "***the negotiated amount***" between Cigna and the out-of-network provider, or if no such amount exists, "the ***greater*** of the following":  "(i) the median amount negotiated with ***In-Network Providers*** for the emergency service (excluding In-Network copay or coinsurance); (ii) the ***Maximum Reimbursable Charge***; or (iii) the amount payable under the ***Medicare program*** (not to exceed the provider's billed charges.)"[11]

---

[11] Ex. 6 to Wohlforth Cert., at 13; Ex. 4 to Wohlforth Cert., at 13 (same).

17

So here, too, the Plans unequivocally do **not** require Cigna to pay out-of-network emergency claims at 100% of billed charges. Just as with Plaintiffs' claims for elective services, their ERISA § 502(a)(1)(B) count based on emergency services fails on the pleadings because Plaintiffs have not shown that they are entitled to be paid at 100% of billed charges under the Plans. Indeed, given the plain language of the Plans, Plaintiffs **cannot** make this showing.

### B.   The ERISA Claim for Breach of Fiduciary Duty (Count 2) Should Be Dismissed as Duplicative of the ERISA Benefits Claim.

In Count 2, Plaintiffs assert the same theory as in Count 1—that Cigna supposedly "refus[ed] to make appropriate out-of-network payments" and improperly withheld plan assets (SAC ¶ 330)—except they couch it as a breach of Cigna's ERISA fiduciary duty. (*Id.* ¶¶ 323-336.)

This Count should be dismissed for two reasons. <u>First</u>, it is premised on the same mistaken assumption as the benefits claim—that the Plans required Cigna to pay Plaintiff's claims at full billed charges—which Plaintiffs have not plausibly alleged. (*Supra* at Sec. I.A.) <u>Second</u>, it should be dismissed as duplicative, because Plaintiffs seek the same relief under a fiduciary duty theory as their ERISA benefits theory. *See Bickhart v. Carpenters Health & Welfare Fund of Pa. & Vicinity*, 732 F. App'x 147, 153 (3d Cir. 2018) (instructing courts to be "wary of fiduciary breach claims under ERISA that . . . are 'actually [claims] based on denial of benefits under the terms of [a] plan,'" and dismissing fiduciary claim that "allege[d] nearly identical

18

misconduct" and sought "nearly identical relief" as the ERISA benefits claim).

### C. The ERISA § 503 Claim (Count 3) Should Be Dismissed Because ERISA § 503 Does Not Provide a Private Cause of Action.

In Count 3, Plaintiffs allege that Cigna violated ERISA § 503 by denying them a "full and fair review" of their claim denials and by failing to comply with the procedural regulations in 29 C.F.R. §§ 2560.503-1 and 2590.715-2719.  (SAC ¶¶ 337-345.)  But as courts in this District have repeatedly recognized, ERISA § 503 does not provide a private cause of action, and it does not provide for any compensatory relief for alleged failure to maintain appropriate claims procedures. *See, e.g.*, *Piscopo v. Pub. Serv. Elec. & Gas Co.*, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (dismissing ERISA § 503 claim with prejudice because "section 503 of ERISA does not confer a private right of action"), *aff'd*, 650 F. App'x at 109.[12] Plaintiffs' ERISA § 503 claim should be dismissed.

## II. Plaintiffs' State-Law Claims Should Be Dismissed.

In addition to their ERISA claims, Plaintiffs also assert a number of state-law theories—breach of contract, good faith and fair dealing, quantum meruit, declaratory judgment, and fiduciary duty—for benefit claims covered by non-ERISA Plans.  All of these should be dismissed for failure to allege an essential

---

[12] *See also Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, 2016 WL 4499551, at *11 (D.N.J. Aug. 25, 2016) (same, noting "recent decisions in this District . . . have also reached the conclusion that neither [ERISA § 503], nor its accompanying regulation, 29 C.F.R. § 2560.503-1, gives rise to a private cause of action").

element of the claim, as duplicative, as preempted, or some combination thereof.

**A.   The Breach of Contract Claim (Count 8) Should Be Dismissed for Failure to Identify a Plan Provision that Cigna Breached.**

Plaintiffs' breach of contract claim mirrors their ERISA benefits claim:  here, too, they allege that the Plans supposedly require out-of-network claims to be paid "up to Plaintiffs' incurred charges"—that is, 100% of billed charges—and that Cigna supposedly breached plan terms by failing to pay these claims accordingly.  (SAC ¶ 395.)   But just as with their ERISA benefits claim, this count fails because Plaintiffs have not identified a single plan provision that actually obligates Cigna to pay claims at 100% of billed charges.  To the contrary, as explained in Section I.A, the Plans reimburse out-of-network claims at much lower MRC or R&C rates. Without identifying any plan terms that Cigna breached, Plaintiffs cannot maintain a breach of contract claim.  *See Grande Vill. LLC v. CIBC Inc.*, 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015) (dismissing for failure to "identify the specific contract or provision that was allegedly breached").

**B.   The Claim for Breach of Duty of Good Faith and Fair Dealing (Count 9) Should Be Dismissed as Duplicative.**

Count 9 is a yet another repackaging of Plaintiffs' ERISA benefits and breach of contract claims.   Plaintiffs allege that the Plans are "valid and enforceable insurance contracts," and they cite a laundry list of alleged breaches—all of which boil down to Plaintiffs' dissatisfaction with Cigna's reimbursement of their out-of-

network claims.  (SAC ¶¶ 399, 406.)  Because Plaintiffs' allegations underlying this claim are duplicative of their contract claim, Count 9 should be dismissed.  *See, e.g.*, *MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 734 F. App'x 101, 106 (3d Cir. 2018) (noting that "no claim for a breach of the covenant of good faith and fair dealing may lie . . . unless the underlying conduct is distinct from that alleged in a corresponding breach of contract claim," and affirming dismissal of "duplicative" good faith and fair dealing claim); *Lewis v. Gov't Emps. Ins. Co.*, 2019 WL 1198910, at \*3 (D.N.J. Mar. 14, 2019) (joining "other rulings from this District" and dismissing as duplicative a claim for breach of good faith and fair dealing "rooted in the same allegations" as the contract claim).

### C.    The Declaratory Judgment Claim (Count 10) Should Be Dismissed.

Plaintiffs' declaratory judgment claim also seeks the same relief as Plaintiffs seek in their other counts:  a declaration that Cigna breached the terms of the Plans, failed to provide full and fair review under ERISA, and violated ERISA fiduciary duties.  (SAC, Prayer for Relief §§ A-F, R.)[13]  Because Plaintiffs have not plausibly stated any claim that could support such declaratory relief (whether under ERISA or non-ERISA plans), Plaintiffs have not stated a claim for declaratory relief either.

And as to the ERISA Plans, the declaratory judgment request should be

---

[13] Plaintiffs also seek a declaration that Cigna did not pay claims in accordance with certain New Jersey regulations.  Cigna addresses this argument separately below.

dismissed for the separate reason that ERISA provides the exclusive way to enforce plan terms or to enjoin ERISA violations.  *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing a civil action "by a participant or beneficiary" to "recover benefits," "enforce his rights," or "clarify his rights to future benefits under the terms of the plan"); *id.* § 1132(a)(3)(A) (authorizing a civil action "by a participant, beneficiary, or fiduciary" to "enjoin" any ERISA or plan violations).

### D. The Non-ERISA Fiduciary Duty Claim (Count 11) Should Be Dismissed as Duplicative.

Plaintiffs' Count 11 repeats the same allegations from Count 2—that Cigna violated its fiduciary duties—this time as applied to non-ERISA Plans.  (SAC ¶ 422.) But whether the Plans at issue are ERISA or non-ERISA, Plaintiffs cannot maintain a free-standing claim for breach of fiduciary duty untethered to any supposed violation of plan terms, because the scope of Cigna's duties ultimately flows from those terms.  *See Serio v. Wachovia Sec., LLC*, 2007 WL 2462626, at *16 (D.N.J. Aug. 27, 2007) (dismissing fiduciary duty claim against plan administrator, because those duties "are wholly based on the duties that Wachovia owed as Plan Administrator" and "because the MasterShare Plan governs the parties' rights").  It would make no sense to allow Plaintiffs to rewrite the terms of the Plans under the guise of bringing a fiduciary duty claim, so this claim should be dismissed.

**E.      The Quantum Meruit Claim (Count 12) Is Preempted by ERISA and Is Also Duplicative of the Breach of Contract Claim.**

Like all other counts, Plaintiffs' quantum meruit claim alleges that Cigna underpaid their claims. (SAC ¶¶ 424-431).   Unlike their other state-law claims, however, Plaintiffs do not limit their quantum meruit claim to non-ERISA Plans, though they do limit it to claims where "Plaintiffs have not been validly assigned benefits under the Cigna Plans." (*Id.* ¶ 425.)

This quantum meruit theory is a non-starter.  It is black-letter law that state-law claims challenging reimbursement of benefit claims under ERISA Plans are preempted and must be dismissed.  *See Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.*, 399 F. Supp. 3d 241, 250-51 (D.N.J. 2019) (dismissing out-of-network provider's state-law claims as preempted; noting that "disputes of this nature fall 'squarely within ERISA's ambit'" and that "courts within this district have consistently dismissed [state-law] claims . . . when they arise from an ERISA-governed plan on the basis of preemption") (collecting cases).[14]  Nor can Plaintiffs escape preemption by limiting this count to claims for which they do not have assignments.  Plaintiffs concede that "the Cigna Plans control the amount Cigna is required to reimburse" their claims (SAC ¶ 6), and thus this count depends on the

---

[14] *See also*, *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 241-42 (3d Cir. 2020) (finding unjust enrichment claim preempted "because the benefit involves a plan-based duty," and "there simply is no cause of action [for unjust enrichment] if there is no plan.").

existence of and interpretation of ERISA Plans, so it is preempted. *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014) (state-law claims preempted because "they are premised on the existence of the plan and require interpreting the plan's terms").

Plaintiffs' quantum meruit claim based on non-ERISA Plans fares no better. Plaintiffs do not identify any obligation for Cigna to pay claims outside of plan terms—nor could they, as they admit the Plan "control[s]" their reimbursement. (SAC ¶ 6.) So what Plaintiffs are really asserting, then, is that Cigna underpaid their claims in violation of the terms of non-ERISA Plans. This claim can only be brought as a breach of contract, since a "quasi-contract claim cannot exist when there is an *enforceable* agreement between parties" (*i.e.*, the plan). *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008) (emphasis in original).[15] Plaintiffs cannot paper over their failure to plausibly allege any breached plan terms by falling back to a quasi-contract claim like quantum meruit.[16]

---

[15] *See also Ribble Co. v. Burkert Fluid Control Sys.*, 2016 WL 6886869, at *5 (D.N.J. Nov. 22, 2016) (dismissing quasi-contract unjust enrichment claim because it was premised on the same conduct as the breach of contract claim).

[16] Plaintiffs also seek a temporary and permanent injunction (Count 13) to enjoin Cigna from allegedly underpaying their claims. (SAC ¶¶ 432-436.) But more than a year and a half after filing their initial complaint, Plaintiffs have not moved for an injunction, so there is no live request for the Court to consider.

**III.    The Claim for Violation of New Jersey Coverage and Payment Regulations (Count 14) Should Be Dismissed.**

In Count 14, Plaintiffs allege that Cigna violated New Jersey's prompt pay requirements under N.J.S.A. 17:48E-10.1(d)(1), as well as New Jersey's emergency care coverage requirements under N.J.S.A. 26:2S-6.1(a) and N.J.A.C. 11:24-5.3(b). (SAC ¶¶ 437-447).  But these regulations do not provide a private cause of action, so this Count should be dismissed as well.  *See Advanced Orthopedics & Sports Med. Inst. v. Empire Blue Cross Blue Shield*, 2018 WL 2758221, at *6 n.14 (D.N.J. June 7, 2018) (dismissing and rejecting plaintiff's argument "that a private right of action 'is inferred by'" these regulations); *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 685101, at *6 n.6 (D.N.J. Feb. 21, 2017) ("Plaintiff has not proven that the regulation permits a private cause of action").

But even if these regulations provided a private cause of action (which they do not), this Count also fails for another fundamental reason. To the extent Plaintiffs bring this Count with respect to ERISA fully-insured Plans (SAC ¶ 438):  "courts have repeatedly held that ERISA preempts these types of regulations because they act immediately and exclusively upon an ERISA plan and the existence of an ERISA plan is essential to the law's operation." *Empire BCBS*, 2018 WL 2758221, at *6; *see also Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 1206005, at *3-4 (D.N.J. Mar. 31, 2017) (finding these New Jersey regulations preempted because they "would affect the 'types of benefits provided by an ERISA plan' and

'effectively force an ERISA plan to adopt a certain scheme of substantive coverage'").  Put simply, any state regulation that purports to tell an administrator how it must process or reimburse benefit claims would create an intolerable conflict with ERISA's carefully-balanced nationwide scheme.  ERISA forbids this.  *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016) (ERISA preempts any state law that "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'").

## IV.   The NJ Consumer Fraud Act Claim (Count 15) Should Be Dismissed.

In Count 15, Plaintiffs allege that Cigna violated the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 *et seq.* ("NJCFA") by allegedly misrepresenting to New Jersey consumers that Cigna's Plans cover out-of-network claims and concealing its practice of underpaying such claims.  (SAC ¶¶ 448-458).

Plaintiffs cannot bring this claim because they are not "consumers" under the NJCFA.  The NJCFA does not apply to transactions between two corporate actors exchanging goods or services.  *See Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 12-14 (N.J. App. Div. 2006) (holding that "the CFA does not cover every sale in the marketplace," and finding that although plaintiff-corporation "purchased a common consumer product" (printer ink cartridges), the wholesale purchaser was not a "consumer" under the NJCFA).[17]  Plaintiffs have not alleged that they are

---

[17] *Lab. Corp. of Am. d/b/a Labcorp. v. Fusion Diagnostics Labs., LLC*, 2020 WL

"consumers" under the statute.  Nor could they, given that they purport to bring a claim on behalf of ***New Jersey residents*** to whom they allege Cigna marketed Plans. (*See* SAC ¶ 453.)  Because Plaintiffs ***themselves*** are not "consumers" who were allegedly injured, they cannot maintain their NJCFA claim.

Plaintiffs' NJCFA claim should also be dismissed because it is a fraud-based claim subject to Rule 9(b), *Priano-Keyser v. Apple, Inc.*, 2019 WL 7288941, at *4 (D.N.J. Dec. 30, 2019), but Plaintiffs have not met Rule 9(b) requirements.  To do so, Plaintiffs must identify the specific misrepresentation or omission, the "date, place, or time" of the fraud, and who made what misrepresentation to whom.  *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).  And for claims of fraudulent omission, Plaintiffs must demonstrate that the defendant "'(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" *Coba v. Ford Motor Co.*, 932 F.3d 114, 124 (3d Cir. 2019).

Plaintiffs do not come close to alleging any of this.  Their basic theory is that Cigna somehow misled consumers by promising that it would reimburse out-of-network claims at 100% of billed charges and then failed to do so, but as explained

---

476882, at *5 (N.J. App. Div. Jan. 30, 2020) (finding that plaintiff was a commercial firm and did not qualify as a "consumer" under the NJCFA); *Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding Inc.*, 408 F. App'x 566, 570 (3d Cir. 2010) ("the CFA does not blanket the entire marketplace . . . the statute's 'applicability is limited to *consumer transactions* which are defined both by the status of the parties and the nature of the transaction itself.'") (emphasis in original).

above, this theory is foreclosed by the Plans—which unambiguously state that out-of-network claims are ***not*** reimbursed at 100% of billed charges, and are instead paid at lower MRC or R&C rates.[18]  Plaintiffs also contend that Cigna "marketed its out-of-network coverage to the public, including to New Jersey consumers" (SAC ¶ 453), but they do not cite any specific statement by Cigna or its representatives that in any way misrepresents Plan terms.  *See Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (dismissing fraud claim because it "does not satisfy the first and most basic element of common law fraud—a statement of material fact that is false").  In short, there is no fraud here.  Plaintiffs simply misapprehend how Cigna prices their out-of-network claims under the Plans.

## V. Plaintiffs' RICO Claims (Counts 4-7) Should Be Dismissed.

Plaintiffs allege the following RICO claims:  (1) 18 U.S.C. § 1962(c) (Count 4), based on Cigna's supposed predicate acts of mail and wire fraud and embezzlement; (2) 18 U.S.C. § 1962(a) (Count 6), based on Cigna supposedly investing the proceeds of a racketeering enterprise; and (3) 18 U.S.C. § 1962(d) (Counts 5 and 7), conspiracy to violate Section 1962(c) and Section 1962(a).

All these claims should be dismissed.  The Third Circuit has cautioned courts that "RICO claims premised on mail or wire fraud must be particularly scrutinized

---

[18]   The NJCFA is also preempted under ERISA for this reason. *D'Alessandro v. Hartford Life & Accident Ins. Co.*, 2009 WL 122852, at *3-*4 (D.N.J. May 1, 2009).

because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010).  And while a plaintiff may be tempted to take a shot at RICO's treble damages, "plaintiffs wielding RICO almost always miss the mark." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017).  For the reasons below, this is not the rare RICO case that survives dismissal, and the Court should reject Plaintiffs' attempts to transform their garden-variety business dispute over how Cigna must pay their claims into the "litigation equivalent of a thermonuclear device." *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004).[19]

### A.   Plaintiffs' Section 1962(c) Claim (Count 4) Fails for Failure to Plead Predicate RICO Acts and Causation.

To state a Section 1962(c) claim, Plaintiffs must allege that Cigna participated in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar*, 361 F. App'x at 363.  Plaintiffs must also allege they were injured "by reason of" Cigna's alleged violations of Section 1962(c).  18 U.S.C. § 1964(c).

The Section 1962(c) claim fails for at least two reasons.  <u>First</u>, Plaintiffs do not allege that Cigna participated in a pattern of racketeering activity, because they

---

[19] Plaintiffs' RICO allegations only relate to the benefit claims adjudicated using the Repricing methodologies, and therefore, at a minimum, the RICO claims can dismissed for the substantial number of non-Repricing claims.

fail to plausibly allege that Cigna committed a pattern of predicate acts of either mail/wire fraud or embezzlement.  <u>Second</u>, Plaintiffs fail to plausibly allege a RICO injury, because they have not shown that they are entitled to be paid at 100% of their billed charges, or that their supposed injury was caused by the alleged predicate acts.

### 1.     Plaintiffs Have Failed to Plead Mail and Wire Fraud.

The elements of mail or wire fraud are:  "(1) a scheme to defraud; (2) use of the mail [or wires] to further that scheme; and (3) fraudulent intent."  *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002).  These predicate acts "are subject to the heightened pleading standard" of Rule 9(b).  *Jaye v. Oak Knoll Vill. Condo. Owners Assoc., Inc.*, 751 F. App'x 293, 297-98 (3d Cir. 2018).  This Rule 9(b) "requirement is particularly important in civil RICO pleadings in which the predicate racketeering acts are critical to the sufficiency of the RICO claim."  *Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 591 (D.N.J. 2003).

As a threshold issue, Plaintiffs merely offer general allegations with a handful of examples that fail to show how "each" or indeed any of the 23 plaintiffs was defrauded. *In re Riddell Concussion Reduction Litig.*, 77 F. Supp.3d 422, 424 (D.N.J. 2015). This defect alone is enough to fail Rule 9(b). *Id.*  Regardless, none of Plaintiffs' four supposed RICO schemes meets Rule 9(b)'s requirements.

<u>**Scheme 1 ("Fictitious Contracting Scheme")**</u>:  Plaintiffs allege that this scheme consists of "Cigna's use of the mails or wires to misrepresent to Plaintiffs,

30

Cigna Subscribers, and the Cigna Plans" that there was a "[i] a contract between an individual Plaintiff and Cigna as an in-network provider, or [ii] with a third-party leasing contractor or negotiator couched as a repricing company."  (SAC ¶ 16.) Plaintiffs allege that both of those representations are false because "Plaintiffs are out-of-network providers who have not contracted with Cigna." (*Id.*)

To start with, this supposed scheme makes no sense, as there is no conceivable link between Cigna's alleged misrepresentation (that Plaintiffs have an in-network or third-party contracted rate) and Plaintiffs' alleged injury (being paid at less than 100% of billed charges).  Even crediting Plaintiffs' allegations that Cigna misrepresents their in-network status (which, as detailed below, they have not actually plausibly pled), Plaintiffs fail to explain how these supposed misrepresentations by Cigna—to Plaintiffs themselves, let alone plan sponsors or Cigna members—could have misled ***Plaintiffs*** into believing that they have in-network contracts, or could have otherwise somehow tricked them into accepting a lower rate.  As Plaintiffs themselves allege, they ***know*** they are "out-of-network providers who have not contracted with Cigna," and they need not agree "to accept discounted rates" and can instead "set their own fees" based on whatever rates they want.  (*Id.* ¶¶ 16, 61.)  Given this, Plaintiffs offer no reason why Cigna's supposed misrepresentations would have led Plaintiffs to accept lower rates.

But even if this Fictitious Contracting Scheme made sense, Plaintiffs' general

allegations that Cigna supposedly makes false representations about their in-network or third-party contract status (*id.* ¶ 16) are unsupported.  Plaintiffs contend that Cigna makes these misrepresentations in "post-transfer coding combinations, most commonly [as] 'contractual obligation,' 'patient responsibility' and '-45 CORE combinations,'" (*id.* ¶ 245; *see also id.* ¶ 247 (alleging "fraudulent use of the CORE coding combinations")), but Plaintiffs do not allege any specific examples of such misrepresentations, much less with the particularity that Rule 9(b) demands.

For instance, Plaintiffs do not offer a single example of an EOB or other document sent by mail or wire in which Cigna actually represented to anyone—Plaintiffs, plan sponsors, or members—that Plaintiffs have an in-network contract or a third-party Repricing Company contract.  The ***only*** example that Plaintiffs offer is Cigna's use of a so-called "CO/PR-45 code combination" in processing their claims.  (*Id.* ¶ 170.)  But while Plaintiffs contend that this code should be used only "where there is a contract that limits the total compensation the provider may receive" (*id.*), as noted above, Plaintiffs know they do not have a contract with Cigna and do not explain how this statement could be fraudulent or would have led Plaintiffs to accept lower rates.  In any event, the ANSI X12 definition of this code shows that Plaintiffs' interpretation is incorrect.  Instead, the code is used when the provider's "charge exceeds fee schedule/*maximum allowable* <u>*or*</u> contracted/legislated fee arrangement" (*id.* ¶ 169)—meaning, when the provider's

charge exceeds *either* the contracted in-network rate *or* the out-of-network maximum allowable rate like the MRC or R&C.  Plaintiffs have thus failed to satisfy Rule 9(b), and they have not alleged that Cigna's supposed Fictitious Contracting Scheme involves any fraudulent representations sent by mail or wire.

**Scheme 2 ("Repricing Reduction Scheme")**:  Plaintiffs allege that Cigna conspires with Repricing Companies to underpay claims through a "cost-containment process," where "the Repricing Company recommends to Cigna that Cigna pay a deeply slashed reimbursement rate" and Cigna "adopts that recommendation." (*Id.* ¶ 17.)  They allege that "Cigna's contracts with the Cigna ERISA Plans falsely state that this process is only applied to claims for which the Repricing Company has an existing contract with an out-of-network provider." (*Id.*)

This, too, makes no sense.  Once again, Plaintiffs do not explain how Cigna's supposed misrepresentation has any conceivable connection to ***Plaintiffs*** being misled into accepting reimbursement below the Plan amounts—particularly since, again, Plaintiffs are wrong in assuming that the Plans actually require their claims to be paid at 100% of billed charges.

And the sole misrepresentation that Plaintiffs do allege—that "Cigna's contracts with the Cigna ERISA Plans" (called ASO agreements) supposedly "falsely state that this process [*i.e.*, cost-containment] is only applied to claims for which the Repricing Company has an existing contract with an out-of-network

provider" (*id.*)—is demonstrably incorrect.  The ASO agreements that Plaintiffs themselves quote actually "state that Cigna 'may apply discounts available under . . . third-party contracts ***or through negotiation*** of the billed [incurred] charges." (*Id.* ¶ 251.b (alteration in original).)  Far from misleading plan sponsors, Cigna correctly advises them that it may apply cost-containment ***either*** when the out-of-network provider has a third-party repricing company contract, ***or*** by negotiating with the provider for an agreed amount below their billed charges—the very process that Plaintiffs describe in the Complaint.  Plaintiffs thus have not alleged any fraudulent representations to support their Repricing Reduction Scheme.

**Scheme 3 ("Contradictory EOB Scheme")**:  Here, Plaintiffs allege that Cigna makes "false and inconsistent statements" on EOPs (Explanation of Payment, the form that Cigna sends to providers) versus EOBs (Explanation of Benefits, the form that Cigna sends to members), by (1) telling the provider on the EOP that certain amounts are "not covered under the terms of the pertinent Cigna ERISA plan or are subject to certain 'adjustments,'" but then (2) telling the member on the EOB for the same claim that "Plaintiffs are either contracted with Cigna to accept certain rates, or have agreed with Cigna or a Repricing Company to accept a 'discount'; both complete fabrications." (*Id.* ¶¶ 18-19.)

This third scheme makes no more sense than the first two.  Plaintiffs appear to posit that Cigna somehow forces them to accept a lower reimbursement by telling

the provider and the member two different things about the same claim: (1) the provider, that a portion of the service is not covered; and (2) the member, that the provider agreed to accept a discount. The fatal flaw here, though, is that Plaintiffs themselves admit that Cigna's representations to members via EOBs ***could not possibly*** impact Plaintiffs' decision to accept a particular negotiated amount on a claim, "because the provider receives completely different information on the Provider EOB" and thus "has no idea" what the member's EOB for that claim says. (*Id.* ¶ 267.) So even had Plaintiffs plausibly alleged that Cigna tells members and providers two different things about the same claim, it does not follow that this is an actionable and material misrepresentation that can support their RICO claim.

And Plaintiffs have not alleged that Cigna misrepresents anything in any event. <u>First</u>, Plaintiffs claim that Cigna states on provider EOPs that certain amounts are "not covered" or "are subject to certain 'adjustments'"—but nothing in the Complaint suggests that such statements were false. Claim administrators like Cigna may deny certain services or entire claims for a variety of reasons (for instance, if the plan does not cover a service, or if the plan does not provide for out-network benefits, or if the provider does not follow proper claim pre-authorization or submission requirements). Plaintiffs' own exemplar claims provide ample proof of this, in fact.[20] Plaintiffs have not plausibly alleged that in denying these claims, and

---

[20] SAC, Ex. H at 5. (denying portion of claim because it did not follow CMS

so advising on the EOP, Cigna did anything other than what the Plan terms require.

<u>Second</u>, Plaintiffs also have not alleged any misrepresentations as to the patient EOBs.  They contend that Cigna supposedly falsely states that the provider was "contracted with Cigna to accept certain rates" or "agreed" to accept a discount.  (SAC ¶ 19.)  But the EOB example that Plaintiffs cite says no such thing; it states that "Cigna negotiates discounts with health care professionals and facilities to help you save money."  (*Id.*)  That is not a misrepresentation—that is what Cigna does.

<u>Finally</u>, while Plaintiffs allege that Cigna representatives supposedly "admitted to Plaintiffs' representatives that the use of 'Discount' to describe the amount adjusted by Cigna on the Patient EOB is a misrepresentation of the 'amount not covered,'" and that "Cigna's representatives have acknowledged that Cigna intentionally misrepresents to out-of-network Cigna Subscribers that they have received a 'discount'" (*id.* ¶¶ 265-266), these allegations lack the "who, what, when, where, and how" specifics required by Rule 9(b).  *See Leeder v. Feinstein*, 2019 WL 2710794, at *5 (D.N.J. June 28, 2019).

**Scheme 4 ("Forced Negotiations Scheme")**:  This scheme does not involve any alleged false representations at all.  Plaintiffs allege that Cigna and the Repricing Companies conspired "to force out-of-network providers like Plaintiffs to enter into negotiations for payment of valid claims, with the goal of either coercing or wearing

procedures); Ex. 1 to Wohlforth Cert., at 3 (denying for no out-of-network benefits).

down the providers so they accept drastic underpayments," and that to that end, the Repricing Companies send letters "threaten[ing] that the services provided to the Cigna Subscriber will not be covered at all, or that they will receive a reimbursement of 'as low as 110%' of the Medicare rate."  (SAC ¶ 21.)

Noticeably absent here is any allegation that these supposed threats actually communicate anything false (*e.g.*, that the claim is actually covered but that Cigna will refuse to treat it as such, or that plan terms for the claim required Cigna to reimburse it at something higher than a percentage of Medicare).  Indeed, Plaintiffs' theory here is that they ***know*** the Plans allow a higher reimbursement rate than what Cigna or the Repricing Companies offer, and that while some Plaintiffs will "persist in their efforts to gain reimbursement of the amount due and owing to them under terms of the Cigna Plan Enterprise agreements," others lack "administrative resources or capacity needed to fight all the underpayments."  (*Id.* ¶ 284.)

In sum, because Plaintiffs have failed to identify any predicate acts of mail or wire fraud, they have not stated a Section 1962(c) claim.

### 2.    Plaintiffs Have Failed to Plead Embezzlement.

Aside from mail and wire fraud, the only other predicate act that Plaintiffs allege to support their Section 1962(c) claim is embezzlement.  Plaintiffs advance two theories here:  (i) Cigna supposedly embezzles trust assets by charging allegedly improper cost-containment fees (SAC ¶¶ 16-17); and (ii) that Cigna allegedly

"embezzl[es] and/or convert[s] the amount characterized as a 'discount on the Patient EOB that is rightfully due and owing to the Plaintiffs under the terms of the Cigna ERISA Plans." (*Id.* ¶ 25.) Plaintiffs' allegations are baseless, but even if accepted as true at the motion to dismiss stage, neither theory alleges a predicate act.

First, as addressed below, Plaintiffs cannot bring a RICO claim based on Cigna's supposed embezzlement of plan assets, because any conversion of plan assets is not a direct injury *to Plaintiffs*. Instead, that injury would be to plan sponsors, for which Plaintiffs—who did not suffer it—could not recover.

Second, Plaintiffs have not alleged the elements of embezzlement, which are: "(1) the unauthorized (2) taking or appropriation (3) of benefit plan funds (4) with specific criminal intent." *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 508 (E.D. Pa. 2001); *accord In re Aetna UCR Litig.*, 2015 WL 3970168, at *35 (D.N.J. June 30, 2015). Plaintiffs—incorrectly—allege that Cigna draws from the bank account "the full incurred charge amount for each CPT code" when the claim comes in. (SAC ¶ 183.) Plaintiffs then allege that Cigna "pays only a small portion of this amount to Plaintiff providers," and that after "provider appeals and negotiations with the Repricing Companies, Cigna sometimes makes additional payments on claims." (*Id.* ¶¶ 184-185.) Critically, however, nowhere do Plaintiffs allege that Cigna keeps any plan sponsors' money for itself, or that Cigna has violated the ASO agreements, which govern all banking transactions between Cigna and plan sponsors.

### 3.    Plaintiffs Have Not Pled a RICO Injury or Causation.

To state a RICO claim, Plaintiffs must also allege that they were (1) "injured in [their] business or property"; (2) "by reason of" the alleged RICO predicate act. 18 U.S.C. § 1964(c).  Section 1964(c) requires plaintiffs "to show that a RICO predicate offense not only was a 'but for' cause of [their] injury, but was the proximate cause as well."  *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (same).

The Supreme Court has emphasized that proximate causation requires a direct link between the predicate act and the plaintiff's injury.  *See Hemi*, 559 U.S. at 11 (no proximate cause where "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud"); *Anza*, 547 U.S. at 459 (no proximate cause if plaintiff's injuries "could have resulted from factors other than [defendants'] alleged acts of fraud"); *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) (plaintiff must allege he was injured by an act "wrongful under RICO,'" and "not merely by a non-racketeering act in furtherance of a broader RICO conspiracy.").

First, Plaintiffs have failed to plausibly allege an injury to their business or property.  As detailed in Section I.B above, they have not plausibly alleged that any Plans actually require their claims to be paid at 100% of billed charges; indeed, the Plans reimburse these out-of-network claims at much lower MRC and R&C rates. Without showing that they were entitled to be paid at 100% of billed charges but

received something less, Plaintiffs cannot show that they have suffered a "concrete financial loss" or an "actual monetary loss," which means they have not stated a RICO injury. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Second, Plaintiffs have not directly linked any of the alleged predicate acts—either mail and or wire fraud or embezzlement—to their alleged injuries, *i.e.*, underpayments. To establish mail or wire fraud as a predicate act, Plaintiffs must show that someone actually relied on the supposed misrepresentation. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 & n.6 (2008) ("of course, a misrepresentation can cause harm only if a recipient of the misrepresentation relies on it," so "a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation"); *Puro-Tec, LTD v. Carotenuto*, 2019 WL 2089993, at *5 (E.D. Pa. May 13, 2019) ("*Bridge* instructs this Court that someone must have relied on the fraud.").

Plaintiffs cannot meet this requirement. The only supposedly fraudulent statements they identify are: (1) Cigna's representations in ASO contracts about circumstances in which Cigna applies cost-containment programs; (2) Cigna's representations that Plaintiffs have an in-network contract or a contract with a third-party repricing company; (3) Cigna's representations on members' EOBs that Plaintiffs agreed to accept discounts or are contracted with Cigna; and (4) Cigna's representations on member EOBs that the denied amounts are discounts. Separate

from the fact that none of these statements is actually false (*see* Sec. V.A.1), Plaintiffs have not alleged that the injury they allegedly suffered (their reimbursement at less than 100% of billed charges) was in any way ***caused*** by these statements or anyone else relying on these supposed misrepresentations.

The most that Plaintiffs can muster on causation are the following allegations: (i) "the Cigna Plan Enterprises incorrectly believe Cigna is saving the Plans money"; (ii) "the Cigna Subscribers believe they are saving money"; and (iii) "the Plaintiffs believe they must negotiate with a Repricing Company for additional payments despite their entitlement to be paid under the terms of the Cigna Plans."  (SAC ¶ 228.)  The third point actually negates any suggestion of causation, since Plaintiffs allege they ***know*** the Plans allow higher payments, but decide to negotiate anyway. And the first two points have nothing to do with Plaintiffs' alleged injuries.  Even if Cigna Plan Enterprises rely on Cigna's (truthful) statements that the cost-containment programs may save plan funds, and even if Cigna members rely on alleged statements in the EOBs that Plaintiffs have agreed to accept discounts, there is simply no conceivable link between that reliance and Plaintiffs' alleged harm. With no link between reliance on the supposed fraud and the alleged injury, there is no RICO claim.  *See Carotenuto*, 2019 WL 2089993, at *5 (dismissing where "Plaintiff has not pled that anyone relied on these alleged fraudulent acts that would create the requisite proximate causation for Plaintiff's injuries").

41

Plaintiffs also cannot show that Cigna's alleged embezzlement of cost-containment fees caused their injuries, since those fees would not have been paid to Plaintiffs even if Cigna had not applied its cost-containment programs. Moreover, even if Plaintiffs had plausibly alleged that Cigna embezzled plan assets, the only "direct" victim who could recover damages would be the plan sponsor (whose assets were supposedly embezzled), not Plaintiffs. *See Hemi Grp.*, 559 U.S. at 2 ("the general tendency of the law, in regard to damages at least, is not to go beyond the first step," and "that 'general tendency' applies with full force to proximate cause inquiries under RICO."); *Anza*, 547 U.S. at 454, 458, 461 (no proximate cause where defendant allegedly underpaid New York sales taxes and then used the proceeds to lower its prices to unfairly compete with plaintiff; "the direct victim of this conduct was the State of New York, not [plaintiff]," because "it was the State that was being defrauded and the State that lost tax revenue as a result.").

### B.      Plaintiffs' 18 U.S.C. § 1962(a) Claim (Count 6) Fails.

Section 1962(a) of RICO makes it unlawful to "use or invest" racketeering income "in acquisition of any interest in, or the establishment or operation of, any enterprise" engaged in interstate commerce. This claim requires an injury that flows from the ***use or investment*** of racketeering income—a so-called investment-injury—rather than an injury that flows from the predicate racketeering acts ***themselves***. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 357-58 (3d Cir. 1989)

42

("requiring the allegation of income use or investment injury" to state a Section 1962(a) claim); *Kolar*, 361 F. App'x at 360-61 n.6 (the "essence" of a Section 1962(a) violation "is the investment of racketeering proceeds in an enterprise"; thus, a plaintiff "must plead and prove injury flowing from that investment of racketeering proceeds in order to state a claim."); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993) (owner of an enterprise infiltrated by the defendant could claim Section 1962(a) injury if injury resulted from defendant's acquisition or control of his enterprise). Plaintiffs' Section 1962(a) claim fails, as their allegations make clear that their supposed Section 1962(a) injury does ***not*** flow from Cigna's alleged use of investment of racketeering income. Instead, they allege the same harm as under their Section 1962(c) claim. (*Compare* SAC ¶ 383 (Section 1962(a) allegations) *with id.* ¶ 360 (same allegations for Section 1962(c) claim).)

Plaintiffs attempt to plead a distinct Section 1962(a) injury by alleging that "Cigna is also able to invest and use the funds so diverted to maintain a robust network of Repricing Companies and others through which Cigna can continue to inflict harm on Plaintiffs." (SAC ¶ 391.) But "the mere use of racketeering proceeds to support a business that continues to engage in the racketeering activities that produced those profits ***does not*** qualify as an investment injury for purposes of a § 1962(a) claim." *Guy's Mech. Sys., Inc. v. FIA Card Servs., N.A.*, 339 F. App'x 193, 195 (3d Cir. 2009) (unpublished). Thus, Plaintiffs' Section 1962(a) claim fails.

43

*See Kolar*, 361 F. App'x at 360-61 (3d Cir. 2010) (affirming dismissal where plaintiff's alleged injury was "not specifically linked to the use or investment of income in any named enterprise"); *Lightning Lube*, 4 F.3d at 1188 (affirming dismissal where plaintiff's "1962(a) allegations merely repeat the crux of its allegations in regard to the pattern of racketeering [under Section 1962(c)]").

### C.   The RICO Conspiracy Claims (Counts 5 and 7) Should Be Dismissed Because Plaintiffs' Substantive RICO Claims Fail.

Section 1962(d) makes it "unlawful for any person to conspire to violate" Sections 1962(a)-(c).  But "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  *See Lightning Lube*, 4 F.3d at 1191. Because Plaintiffs' Section 1962(a) and (c) claims fail on the pleadings for reasons described above, their derivative conspiracy counts should also be dismissed.

## VI.   Many of Plaintiffs' Claims Are Time-Barred.

Plaintiffs allege their claims were underpaid "since ***at least*** 2007"—*i.e.*, more than twelve years before Plaintiffs filed the original complaint.  (SAC ¶ 12.)  And while Plaintiffs contend that they commenced this lawsuit "within six years" after being notified that Cigna "was rejecting or dramatically underpaying" their claims (*id.* ¶ 198), they do not explain why they were supposedly unaware of these alleged underpayments before that six-year period when their theory is that Cigna was obligated to pay their full billed charges.  Many of Plaintiffs' disputed claims thus

fall outside the statute of limitations period, and should be dismissed as follows:

| Claim | Limitations Period[21] |
|---|---|
| Counts 1 (ERISA § 502(a)(1)(B)), 8 (breach of contract), 9 (good faith and fair dealing), 10 (declaratory judgment), 11 (fiduciary duty), 12 (quantum meruit), 13 (injunctive relief), and 15 (NJ Consumer Fraud Act) | 6 years, so all claims before December 31, 2013 (*i.e.*, 6 years before date of filing of the original complaint)[22] |
| Count 2, ERISA fiduciary duty | 6 years or 3 years after actual knowledge of breach, so all claims before at least December 31, 2013 |
| Counts 3 (ERISA § 503) and 14 (NJ Health Claims Authorization, Processing, and Payment Act) | No private cause of action, *see* Secs. I.C & III |
| Counts 4-7, RICO claims | 4 years, so all claims before December 31, 2015 |

## CONCLUSION

For reasons stated above, Cigna respectfully requests that this Court dismiss Plaintiffs' SAC with prejudice.  *See Butto v. CJKant Res. Grp., LLC*, 2019 WL 1147580, at *4 (E.D. Pa. Mar. 13, 2019).

---

[21] *Fiorentino v. Bricklayers & Allied Craftworkers Local 4 Pension Plan*, 696 F. App'x 594, 597 (3d Cir. 2017) (ERISA § 1132(a)(1)(B)); 29 U.S.C. § 1113 (ERISA fiduciary duty); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987) (RICO); N.J.S.A. 2A:14-1 (breach of contract); N.J.S.A. 2A:14-1 (breach of the covenant of good faith and fair dealing); *Carr v. N.J. Ins. Cure. Co.*, 2011 WL 380925 (D.N.J. Jan. 31, 2011) (declaratory judgment); *Estate of Warner v. Koo*, 2018 WL 5289050 (N.J. App. Div. Oct. 25, 2018) (fiduciary duty); N.J.S.A. 2A:14-1 (quantum meruit); *Edelgass v. New Jersey*, 2015 WL 225810 (D.N.J. Jan. 16, 2015) (injunctive relief); *Kennedy v. Axa Equitable Life Ins. Co.*, 2007 WL 2688881, at *2 (D.N.J. Sept. 11, 2007) (NJ Consumer Fraud Act).

[22] The Plans may also provide a shorter limitations period.  Cigna reserves the right to raise these Plan-specific arguments after discovery.

Dated:      July 15, 2021      By:    /s/ E. Evans Wohlforth Jr.

E. Evans Wohlforth, Jr., Esq.
Charlotte M. Howells, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:   (973) 596-4905
Facsimile:    (973) 639-6471
ewohlforth@gibbonslaw.com
chowells@gibbonslaw.com

and

Joshua B. Simon, Esq.*
Warren Haskel, Esq.*
Dmitriy Tishyevich, Esq.*
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, New York 10173-1922
Telephone:    (212) 547-5400
Facsimile:     (212) 547-5444
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
* admitted *pro hac vice*

*Counsel for Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company*