Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

ADVANCED GYNECOLOGY AND LAPAROSCOPY OF NORTH JERSEY, P.C., et al.,,

           **Plaintiffs,**

       **v.**

CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al.,

           **Defendants.**

</td><td>

Civil Action No.: 19-22234 (ES) (MAH)

OPINION

</td></tr>
</table>

SALAS, DISTRICT JUDGE

Plaintiffs in this matter[1] bring claims pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*; the Racketeer Influenced and Corrupt Organizations Act ("RICO Act") under 18 U.S.C. §§ 1962(c), 1962(d), and 1962(a)); and state contract law against Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "Defendants" or "Cigna"). (D.E. No. 126 ("Third Amended Complaint" or "TAC")). Before the Court is a motion to dismiss the Third Amended

---

[1]    Plaintiffs in this matter are Advanced Gynecology and Laparoscopy of North Jersey, P.C. ("Advanced Gynecology"), Aesthetic & Reconstructive Surgeons, LLC ("AR Surgeons"), Atlantic Pediatric Orthopedics PA ("Atlantic Orthopedics"), Bergen Surgical Specialists, P.A. ("Bergen Surgical"), East Coast Aesthetic Surgery, P.C. ("East Coast Aesthetic"), Garden State Bariatrics & Wellness Center LLC ("Garden State Bariatrics"), Hackensack Vascular Specialists LLC ("Hackensack Vascular"), Heritage General and Colorectal Surgery, PA ("Heritage General"), Heritage Surgical Group, LLC ("Heritage Surgical"), Jersey Integrative Health & Wellness, P.C. ("Jersey Integrative"), Modern Orthopaedics of New Jersey LLC ("Modern Ortho"), New Jersey Spinal Medicine and Surgery, P.A. ("NJSMS"), New Jersey Spine Institute, P.A. f/k/a Somerset Orthopedics Associates, P.A. ("NJSI/Somerset Ortho"), New Jersey Brain and Spine, P.C. ("NJ Brain and Spine"), NJ Bariatric Institute LLC ("NJ Bariatric"), North Jersey Laparoscopic Associates, LLC ("North Jersey Laparoscopic"), Premier OB/GYN Group, P.C. ("Premier OB/GYN"), Professional Orthopaedic Associates, P.A. ("Professional Orthopaedic Associates"), Julie M Keller MD LLC d/b/a Restoration Orthopaedics ("Restoration Ortho"), Spine Surgery Associates & Discovery Imaging, PC ("Spine Surgery Associates"), Stephen G. Silver, PA, SurgXcel LLC ("SurgXcel"), and Tri-State Surgery Center, LLC ("Tri-State Surgery") (collectively, "Plaintiffs").

Complaint filed by Defendants.  (D.E. No. 168 ("Motion")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, Defendant's Motion is **GRANTED** and the Third Amended Complaint is dismissed *with prejudice*.

## I.     BACKGROUND

### A.     Factual Allegations

Plaintiffs are New Jersey-based healthcare provider groups.  (TAC ¶¶ 34–56 & 66). Defendants are health insurance companies "in the business of underwriting, selling, and administering health benefit plans and policies of health insurance" which "provide[] benefits under a variety of health benefit plans, including individual health benefit plans and group plans, including employer-sponsored plans."  (*Id.* ¶ 59).  Plaintiffs are "out-of-network" with Cigna, meaning that they "do not have contracts with [Cigna] to accept discounted rates and instead set their own fees for services based on a percentage of charges." (*Id.* ¶¶ 69–70).  Plaintiffs assert that "despite [their] out-of network status, subscribers ("Cigna Subscribers") to health insurance plans provided by Cigna (the "Cigna Plans" or "Plans") "regularly seek treatment from Plaintiffs."  (*Id.* ¶ 70).[2]

Plaintiffs make separate allegations regarding emergency and elective services provided to Cigna Subscribers.  Regarding elective (non-emergency) services, Plaintiffs allege that

> [t]he Cigna Plans reimburse Cigna Subscribers for certain healthcare costs, defined in the plans as "Covered Expenses," which are expenses incurred by the Subscriber for eligible services that are covered under the plan and medically necessary.  When a claim for reimbursement for a covered expense is submitted by a Cigna Subscriber or, through assignment, by a provider or facility, Cigna

---

[2]     Plaintiffs assert they can assert benefits claims on behalf of the Cigna Subscribers because "[f]or the Cigna Claims at issue in this case, Cigna Subscribers execute[d] Assignment of Benefits forms ('AOBs'), in which they assign[ed] to each of the Plaintiffs their rights to benefits under the Cigna Plans."  (*Id.* ¶ 100).

> determines what part of the charge is considered for coverage by the
> Plan.  This amount is known as the "allowed amount."

(*Id.* ¶ 80).  For the elective out-of-network claims at issue in this case, Plaintiffs allege that the

relevant Cigna Plans "provide that the 'allowed amount' represents the 'Maximum Reimbursable

Charge' ('MRC') for Covered Expenses."  (*Id.* ¶ 81).  The Cigna Plans provide that healthcare

providers such as Plaintiffs "are reimbursed for elective care at the MRC amount, less the Patient

Responsibility Amount for out-of-network services as calculated under the Cigna Plans."  (*Id.* ¶

82).  Plaintiffs allege that the Cigna Plans calculate the MRC in one of two ways—the "MRC-1"

method and the "MRC-2" method.  (*Id.* ¶ 83).

> According to Plaintiffs, the MRC-1 Plans define MRC-1 in the following manner:

> The Maximum Reimbursable Charge for covered services is
> determined based on the *lesser* of:
>
> the provider's *normal* charge for a similar service or supply; or
>
> a policyholder-selected percentile of charges made by providers of
> such service or supply in the geographic area where it is received as
> compiled in a *database selected by [Cigna]*.

(*Id.* ¶ 84 (emphasis added)).  Plaintiffs assert that the described database selected by Cigna for

calculating MRC-1 "is the 'FAIR Health' database, a database administered by the independent

not-for-profit entity, 'FAIR Health, Inc.'"  (*Id.* ¶ 85).  Plaintiffs allege that "the Cigna Plans at

issue in this case that follow the MRC-1 methodology reimburse out-of-network providers for

elective treatment at between the 80th and 100th percentile of the Fair Health Database."  (*Id.* ¶

86).  Thus, according to Plaintiffs, "for claims covered by the Cigna Plans that follow the MRC-1

methodology, Cigna is required to reimburse Plaintiffs at between the 80th and 100th percentile

of the Fair Health Database, less the Patient Responsibility Amounts for out-of-network providers

as calculated under the Cigna Plans."  (*Id.* ¶ 87).  And because, Plaintiffs allege, "Plaintiffs

typically set their normal charges at or around the 80th percentile of the Fair Health database, meaning that the MRC-1 amount typically represents Plaintiffs' normal charges for the particular CPT codes at issue, . . . Cigna was required to reimburse Plaintiffs at that amount less the Patient Responsibility Amounts." (*Id.* ¶ 142).

For MRC-2 Plans, Plaintiffs assert that the Plans define MRC-2 in the following manner:

> The Maximum Reimbursable Charge for covered services is determined based on the *lesser* of:
>
> the provider's *normal* charge for a similar service or supply; or
>
> a policyholder-selected percentage of a schedule developed by Cigna that is based upon a methodology *similar* to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market.[3]

(*Id.* ¶ 88 (emphasis added)).  Plaintiffs allege that Cigna "has never developed" the schedule referenced in the MRC-2 definition,[4] and thus that under MRC-2 Plans Cigna was required to reimburse Plaintiffs at their "normal charges for the services or supplies, less the Patient Responsibility Amounts for out-of-network providers as calculated under the Cigna Plans." (*Id.* ¶¶ 89–91).

Thus, for both MRC-1 and MRC-2 Plans, Plaintiffs allege that "the MRC amount generally works out to be the provider's normal charges for the particular services or supply billed." (*Id.* ¶ 76).

---

[3]     Plaintiffs further allege that "Plans that follow the MRC-2 definition further state that, in 'some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of: •the provider's normal charge for a similar service or supply; or •the 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna.'" (*Id.* ¶ 31 n.6).

[4]     Plaintiffs allege that Cigna instead "simply relies on a database into which it has inputted the traditional Medicare rates" which it alleges is "insufficient to justify a departure from providers' normal charges in calculating the MRC-2 amount." (*Id.* ¶ 90).

4

Plaintiffs allege that they were underpaid for "1,441 claims for reimbursement for medically necessary, covered, elective services, rendered to Cigna Subscribers." (*Id.* ¶ 138). More specifically, Plaintiffs allege that

> for elective treatment, Cigna has failed to reimburse Plaintiffs at the appropriate MRC level, less the Patient Responsibility Amounts calculated at the out-of-network level under the Plans. Specifically, for those Plans that calculate MRC using the MRC-1 approach (i.e., based on a Plan-selected percentile of the Fair Health database), Plaintiffs typically set their normal charges at or around the 80th percentile of the Fair Health database. This means that, in most if not all cases, Plaintiffs' normal charges for each service or supply represent the MRC-1 amount. However, Cigna calculates the MRC-1 amount at well below the 80th percentile of the Fair Health database. Moreover, for those Plans that calculate MRC using the MRC-2 approach (i.e., based on a Plan-selected percentage of a schedule that Cigna is required to develop using a methodology that is similar to that employed by Medicare), Cigna has never developed such a schedule. Thus, Plaintiffs' normal charges for each service or supply represent the MRC-2 amount. However, Cigna calculates MRC-2 based upon the applicable Medicare rate.

(*Id.* ¶¶ 12–14). In sum, Plaintiffs allege (i) that under both MRC-1 and MRC-2 Plans, Cigna was required to reimburse them at their normal charges, less the Patient Responsibility Amounts; and (ii) Cigna failed to do. (*Id.* ¶¶ 142–45).[5]

Regarding emergency services, Plaintiffs allege that they were underpaid for emergency services based on regulations promulgated under the Patient Protection and Affordable Care Act ("ACA") and regulations promulgated thereto.[6] Plaintiffs allege that the ACA "added Section

---

[5]      Attached to the Third Amended Complaint, Plaintiffs submitted as exhibits spreadsheets detailing, for each claim, the patient information and details about the claim, including, *inter alia*, the Plaintiffs' alleged "normal" charge for the claim; the dollar amount actually paid by Cigna for the claim; the patient responsibility amount under the Plan for the claim; the alleged unpaid balance on the claim ("calculated by subtracting the Cigna paid amount and Patient Responsibility Amount from the specific Plaintiff's normal charge for the CPT code billed to Cigna corresponding to that Claim"); "[w]here available, whether the Plan calculates the MRC amount using the MRC-1 or MRC-2 methodology"; and "[i]n the case of Plans that follow the MRC-1 methodology, the percentile of the Fair Health database that the Plan uses to calculate the MRC-1 amount (ranging from the 80th to the 100th percentile of the Fair Health database)." (D.E. No. 127, Exs. A1–A23).

[6]      Plaintiffs do not allege that Defendants violated the ACA in their repayment of elective services claims.

2719A to the Public Health Services Act ("PHS Act"), 42 U.S.C. § 300gg-19a," which "requires

any [plan provider] to cover any emergency services: without the need for prior authorization;

without regard to the provider's status as an in-network or out-of-network provider; and in a

manner that ensures that the patient's cost-sharing requirement (expressed as a copayment amount

or coinsurance rate) is the same requirement that would apply if such services were provided in-

network." (*Id.* (citing 42 U.S.C. § 300gg-19a(b)(1)).[7]  The "Greatest of Three regulation," 29 CFR

§ 2590.715-2719A(b)(3)(i)(A)-(C), promulgated pursuant to Section 2719A, provides that

> to satisfy the ACA's cost-sharing obligations, a non-grandfathered
> plan must pay the greatest of three possible amounts for out-of-
> network emergency services:
>
> (1) the amount negotiated with in-network providers for the
> emergency service, accounting for in-network co-payment and co-
> insurance obligations;
>
> (2) the amount for the emergency service calculated using the same
> method the plan generally uses to determine payments for out-of-
> network services (such as usual, customary and reasonable charges),
> but substituting in-network cost-sharing provisions for out-of-
> network cost-sharing provisions; or
>
> (3) the amount that would be paid under Medicare for the emergency
> service, accounting for in-network co-payment and co-insurance
> obligations.

(TAC ¶ 74 (citing the Greatest of Three regulation)).  Plaintiffs allege that the Plans "all

mirror the Greatest of Three regulation."  (*Id.* ¶ 75).  Plaintiffs further allege that "[o]f the three

prongs of the Greatest of Three regulation (as incorporated into the Cigna Plans for Emergency

Services), the prong that typically results in the greatest amount payable is the [MRC]" and that,

as detailed previously regarding elective services, "the MRC amount generally works out to be the

---

[7]     Plaintiffs assert that "[t]hese cost-sharing requirements are expressly incorporated into group health plans
covered by ERISA."  (*Id.* ¶ 73 (citing 29 U.S.C. § 1185d(a)).

provider's normal charges for the particular services or supply billed." (*Id.* ¶ 76).  Based on these allegations, Plaintiffs assert that "the import of the Greatest of Three requirement, and Cigna's own plan language governing reimbursement for Emergency Services, is that Cigna must reimburse Plaintiffs for their normal charges for the particular services or supplies billed, less the Patient Responsibility Amount that the Cigna Subscriber would have incurred had the Subscriber sought emergency or urgent care treatment at an in-network hospital." (*Id.* ¶ 77).

However, Plaintiffs allege that, as with elective treatment, "for emergency treatment, Cigna has failed" to reimburse Plaintiffs at the required amount—i.e., "their normal charges, less the Patient Responsibility Amounts calculated under the Plans as if the provider were in-network." (*Id.* ¶ 11).  Overall, Plaintiffs allege that they were underpaid by Cigna on "236 claims for medically necessary, covered, emergency services rendered to Cigna Subscribers; and 1,441 claims for reimbursement for medically necessary, covered, elective services, rendered to Cigna Subscribers," totaling 1,677 claims asserted by the 23 different Plaintiff providers. (*Id.* ¶ 138).

Plaintiffs further allege that Cigna acted in various improper ways in determining repayment amounts and administering the Plans for both elective and emergency claims, including "set[ting] up complex processes and procedures that are designed to frustrate Plaintiffs' right to be paid properly under the Cigna Plans" and "engag[ing] in self-dealing by drawing down from the trust funds of the Cigna Plans the full amount of the healthcare providers' billed charges, and . . . impermissibly retain[ing] those funds for its own purposes." (*Id.* ¶¶ 15–16).  Plaintiffs assert that Defendants have conducted a pattern of racketeering activity since "at least 2013 (and likely earlier), and continuing through the present." (*Id.* ¶ 190).  More specifically, Plaintiffs allege that Defendants schemed to defraud Plaintiffs out of the money owed to them under the plans. (*Id.* ¶¶ 190–98).  Plaintiffs assert that these schemes to defraud

7

> have operated to deceive Plaintiffs, the Cigna Subscribers, and/or
> the Cigna Plan Enterprises into believing, inter alia, that: (a)
> Plaintiffs are in-network and that Plaintiffs' claims should therefore
> be processed as in-network claims; (b) Plaintiffs' claims submitted
> to Cigna for reimbursement should be paid at deeply discounted
> amounts based on contracts with Cigna or Repricing Companies that
> do not actually exist or at amounts not agreed to under the few global
> agreements between Repricing Companies and individual Plaintiffs;
> (c) Cigna provides savings to Cigna Subscribers by negotiating
> discounts with providers, such as Plaintiffs, and as a result, the
> Cigna Subscribers owe little or nothing on an out-of-network
> provider claim; and (d) large portions of the out-of-network provider
> claims are not covered and that Plaintiffs must negotiate with
> Repricing Companies and accept drastic underpayments for
> amounts due and owing under the terms of the Cigna Plans.

(*Id.* ¶ 204).

## B.    Procedural History

Plaintiffs initiated suit against Defendants on December 31, 2019.  (D.E. No. 1).  Plaintiffs

filed an Amended Complaint on May 27, 2020.  (D.E. No. 39).  After the parties participated in

mediation in May 2021 that was ultimately unsuccessful (D.E. Nos. 63 & 65), the Court permitted

Plaintiffs to file a Second Amended Complaint (D.E. No. 70).  Plaintiffs filed the Second Amended

Complaint on July 1, 2021.  (D.E. No. 73 ("SAC" or "Second Amended Complaint")).  The Second

Amended Complaint asserted (i) claims for wrongful denial of benefits under Section 502(a)(1)(B)

of ERISA; (ii) claims for breach of ERISA and non-ERISA fiduciary duties; (iii) claims for denial

of full and fair review; (iv) RICO and RICO conspiracy claims; (v) state law contract, quasi-

contract, and fraud claims; (vi) Health Claims Authorization, Processing and Payment Act claims;

and (vii) claims for declaratory judgment and for injunctive relief.  (SAC).  Defendants filed a

motion to dismiss the Second Amended Complaint on July 15, 2021.  (D.E. No. 79).

After an oral argument on Defendants' motion to dismiss the Second Amended Complaint

(*see* D.E. No. 116 ("Oral Argument Transcript")), the Court issued a bench ruling granting

Defendants' motion to dismiss (D.E. No. 119 ("Bench Ruling")).  As relevant here, the Court

dismissed Plaintiffs' ERISA Section 502(a)(1)(B) claims because Plaintiffs did not

> sufficiently allege[], or put Defendants on notice, that they were not
> paid their normal charges.  Instead, they offered a spreadsheet that
> outlines their incurred charges, and they conflate their incurred
> charges with their billed charges.  But it is inappropriate to conflate
> billed charges with normal charges, especially when we are dealing
> with twenty-three different healthcare providers, thousands of
> different patients, and various different procedures.

(*Id.* at 3).  The Court noted that "Plaintiffs must, at a minimum, plead enough facts to put

Defendants on notice that they failed to reimburse each of Plaintiffs' normal charges for each of

the different medical procedures."  (*Id.*).  In addition, the Court dismissed Plaintiffs' breach of

fiduciary duty in violation of ERISA claims, noting that "two of Plaintiffs' theories of fiduciary

breach—one, that Cigna failed to reimburse benefits, and two, that Cigna engaged in self-

dealing—fail[ed] because they ha[d] not plausibly pleaded that Cigna wrongfully withheld

benefits," and that Plaintiffs' other failure-to-reimburse theory was "indistinguishable from their

benefits claim and [was] thus duplicative."  (*Id.* at 4–5).  The Court also dismissed Plaintiffs' RICO

and RICO conspiracy claims, finding that Plaintiffs lacked standing to assert the claims.  (*Id.* at 6–

7).  The Court found that

> Because Plaintiffs have not plausibly pled an entitlement to
> additional benefits, as previously discussed, they have not plausibly
> pled a RICO injury in the form of underpayments caused by Cigna's
> purported racketeering activities.  Same too with their "patient
> steering" theory, which appears to rest on a determination that they
> are entitled to more under the Cigna Plans and therefore should not
> have to "balance bill the patient," which in turn dissuades patients
> from seeking their services. . . . Finally, to the extent Plaintiffs
> incurred additional costs in having to fight Cigna for additional
> benefits, that injury seems also to rest on a determination that
> Plaintiffs were actually due those benefits.

9

(*Id.* at 7).   Finally, the Court dismissed Plaintiffs' state law contract, quasi-contract, and fraud claims, finding that "[a]bsent a claim that Cigna under-reimbursed Plaintiffs under the Cigna Plans, there is no breach-of-contract claim" and that "Plaintiffs' claim for breach of the duty of good faith and fair dealing is dismissed because . . . the claim ultimately rests on Cigna frustrating Plaintiffs' reasonable expectation to benefits under the Cigna Plans," which had not been adequately pled. (*Id.* at 7–8).

On August 22, 2022, Plaintiffs filed a third amended complaint.  (D.E. No. 122 ("TAC" or "Third Amended Complaint")).   The Third Amended Complaint alleges (i) violation of ERISA § 502(a)(1)(B) ("Count I"); (ii) breach of the fiduciary duties of loyalty and due care in violation of ERISA ("Count II"); RICO and RICO conspiracy violations, including violation of 18 U.S.C. § 1962(c) ("Count III"), violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c) ("Count IV"), violation of 18 U.S.C. § 1962(a) ("Count V"), and violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) ("Count VI"); state law breach of contract ("Count VII"); and state law breach of the covenant of good faith and fair dealing ("Count VII"). (*Id.*).   Defendants filed a motion to dismiss the Third Amended Complaint on November 21, 2022. (D.E. No. 136; *see also* D.E. No. 136-1 ("Mov. Br.")).   The Motion is fully briefed.   (D.E. No. 143 ("Opp."); D.E. No. 147 ("Reply")).   On March 29, 2023, the matter was referred to mediation, and Defendant's motion to dismiss the Third Amended Complaint was administratively terminated. (D.E. No. 155).   After mediation was unsuccessful, Defendants refiled their motion to dismiss the Third Amended Complaint.   (D.E. No. 168 ("Motion")).   All parties indicated their intent to rely on the previous briefing and documents relating to Defendant's first motion to dismiss the Third Amended Complaint.  (*See* Motion; D.E. No. 170).

## II.     LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*., 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

A complaint must also meet the pleading requirements of Rule 8.  Rule 8 requires that a complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  Thus, the complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the plaintiff's allegations.  *See Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986).  As part of this notice pleading, a complaint must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Twombly*, 550 U.S. at 556.

11

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached thereto and specifically relied upon or incorporated therein. *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted)).

## III.    DISCUSSION

### A.  Violation of ERISA § 502(a)(1)(B)

For both elective and emergency services claims, Plaintiffs allege that they were owed—and did not receive—at least their normal charges by Defendants.  More specifically, regarding elective services, Plaintiffs allege that

> Cigna has failed to reimburse Plaintiffs at the appropriate MRC level, less the Patient Responsibility Amounts calculated at the out-of-network level under the Plans.  Specifically, for those Plans that calculate MRC using the MRC-1 approach (i.e., based on a Plan-selected percentile of the Fair Health database), Plaintiffs typically set their normal charges at or around the 80th percentile of the Fair Health database.  This means that, in most if not all cases, Plaintiffs' *normal* charges for each service or supply represent the MRC-1 amount.  However, Cigna calculates the MRC-1 amount at well below the 80th percentile of the Fair Health database.  Moreover, for those Plans that calculate MRC using the MRC-2 approach (i.e., based on a Plan-selected percentage of a schedule that Cigna is required to develop using a methodology that is similar to that employed by Medicare), Cigna has never developed such a schedule.  Thus, Plaintiffs' *normal* charges for each service or supply represent the MRC-2 amount. However, Cigna calculates MRC-2 based upon the applicable Medicare rate.

(TAC ¶¶ 12–14 (emphasis added)).  Regarding emergency services, as noted previously, Plaintiffs allege that under the Plans and applicable law, including the ACA and regulations promulgated

thereto, "all Cigna Plans must reimburse out-of-network providers such as Plaintiffs in an amount that ensures the Subscribers are not financially responsible for more than amounts for which the Subscribers would be otherwise responsible, such as co-payments, co-insurance, and deductibles (the 'Patient Responsibility Amounts') had they been treated at an in-network facility." (*Id.* ¶ 8). Plaintiffs assert that under the ACA and "Cigna's own plan language governing reimbursement for Emergency Services, . . . Cigna must reimburse Plaintiffs for their normal charges for the particular services or supplies billed, less the Patient Responsibility Amount that the Cigna Subscriber would have incurred had the Subscriber sought emergency or urgent care treatment at an in-network hospital." (*Id.* ¶ 77). However, Plaintiffs allege that, as with elective treatment, "for emergency treatment, Cigna has failed" to reimburse Plaintiffs at the required amount—i.e., "their normal charges, less the Patient Responsibility Amounts calculated under the Plans as if the provider were in-network." (*Id.* ¶ 11).

Defendants argue that Plaintiffs have failed to state a 502(a)(1)(B) claim because Plaintiffs have failed to properly allege that they are owed unpaid benefits under specific terms from the relevant Plans. (Mov. Br. at 7–20). More specifically, Defendants argue that Plaintiffs' claims rely on the allegation that they were owed—and did not receive—their normal charges under the plans, and that Plaintiffs failed to properly allege their normal charges. (*Id.* at 7–11). Instead, Defendants argue, Plaintiffs conflated normal charges with their full billed charges and did nothing more in the claims spreadsheets attached to the Third Amended Complaint than take the claims spreadsheets attached to the Second Amended Complaint and merely change the name of the charges column in the spreadsheets from "incurred" to "normal" charges. (*Id.*). Further, Defendants highlight inconsistencies within the alleged normal charges, noting that, in the claims

spreadsheets provided by Plaintiffs, providers' normal charges for the same billing code vary by up to thousands of dollars. (Mov. Br. at 11).

Plaintiffs respond by arguing that they have "sufficiently allege[d] that Cigna violated ERISA § 502(a)(1)(B) when it failed to reimburse Plaintiffs amounts the Plans required for the treatment Plaintiffs provided to Cigna Subscribers." (Opp. at 6–7). Plaintiffs do not deny that they simply reasserted as their normal charges the same amounts they previously asserted as their billed/incurred charges, but rather argue that "there is nothing implausible about a health care provider billing an insurance company the amounts it normally charges," asserting that the Court must accept as true the allegation that their normal charges equal their billed charges for every claim in this case. (*Id.* at 9–10). Plaintiffs add that "[t]he level of detail Plaintiffs include in the TAC is more than sufficient to put Cigna on notice as to how it has failed to reimburse Plaintiffs their normal charges less the applicable Patient Responsibility Amounts." (*Id.* at 11). Finally, Plaintiffs assert that the alleged inconsistencies in the normal charges for providers for the same billing code are not implausible, as the inconsistencies are few and can be explained by the passage of time between claims. (*Id.* at 12).

For the following reasons, the Court agrees with Defendants: Plaintiffs have once more failed to sufficiently allege that they were underpaid in violation of Plan terms.

Section 502(a)(1) provides that a "participant or beneficiary" of an ERISA plan may bring a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim for relief under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir.

2006).  In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right.  *See, e.g., Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co*., No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018); *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022); *Metro. Neurosurgery v. Aetna Life Ins. Co.*, No. 22-0083, 2023 WL 5274611, at *4 (D.N.J. Aug. 16, 2023).  A vague pleading that benefits are due is not sufficient.  *Emami v. Community Insurance Company*, No. 19-21061, 2021 WL 41502542021, at *5 (D.N.J. Sept. 13, 2021); *Atl. Plastic & Hand Surgery, PA*, 2018 WL 1420496, at *10.  In addition, "several . . . decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan."  *K.S. v. Thales USA, Inc.*, Case No. 17-7489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019).

As explained above, Plaintiffs' underpayment claims for both elective and emergency services hinge on the assertion that Defendants were required to reimburse Plaintiffs at at least Plaintiffs' normal charges, but did not do so.  (TAC ¶¶10–14).  However, as with the Second Amended Complaint, Plaintiffs have once more failed to sufficiently allege what their normal charges are, and have instead improperly conflated normal and full-billed charges.  This they may not do.  As explained by the Court during the prior oral argument regarding Defendants' motion to dismiss the Second Amended Complaint, "it is inappropriate to conflate billed charges with normal charges."  (Oral Argument Transcript at 8); *see also Franco v. Connecticut General Life Insurance Company*, 289 F.R.D. 121, 138 (D.N.J. 2013); *University Spine Center v. Edward Don & Company, LLC*, No. 22-3389, 2023 WL 4841885, at *6 (D.N.J. July 28, 2023) ("While the SAC quotes the Maximum Reimbursable Charge provision which provides, in part, that the provider's

normal charge for a similar service may determine the benefit due, the remaining allegations in the SAC make no reference to the normal charge.  They instead allege entitlement to the billed amount.  But [t]he distinction between the terms billed charge and normal charge is not . . . merely semantic or hypothetical, and the Plan does not provide that the billed amount may serve as an alternate basis for paying the claims." (internal quotation marks and citations omitted)).  And in the Court's bench ruling granting Defendants' motion to dismiss the Second Amended Complaint,  the Court explicitly deemed insufficient Plaintiffs' allegations of their normal charges—their "spreadsheet that outline[d] their incurred charges" along with their allegation that their incurred charges equaled their normal charges, stating again that "it is inappropriate to conflate billed charges with normal charges, especially when we are dealing with twenty-three different healthcare providers, thousands of different patients, and various different procedures." (Bench Ruling at 3).  The Court concluded that "Plaintiffs must, at a minimum, plead enough facts to put Defendants on notice that they failed to reimburse each of Plaintiffs' normal charges for each of the different medical procedures," and found that the Second Amended Complaint failed to do so.  (*Id.* at 4).

While counsel for Plaintiffs offered at oral argument regarding the previous motion to dismiss to "provide a certification of each provider" regarding "what their normal charge is" (Oral Argument Transcript at 17), Plaintiffs have failed to do so.  Instead, Plaintiffs simply changed the column label on the claims spreadsheets submitted with the Third Amended Complaint from "incurred" to "normal" charges, and continue to insist that it is sufficient for them to plead that their full billed charges, for all 1,677 claims, are identical to their normal charges.  (*Compare* D.E. No. 127, Exs. A1–A23, *with* D.E. No. 73-1).  This is so even though there are unexplained variations between the listed charge by providers for the exact same billing code.  (*See, e.g.*, D.E. No. 127, Ex. A1, Claim Nos. 1 & 3 (alleging, for the same provider and same procedural code,

normal charges of $10,125 in 2017 and $10,025 a year later); *id.*, Ex. A4, Claim Nos. 136 & 137 (alleging, for the same provider and same procedural code, normal charges of $42,000 in 2016 and $40,320 a year later); *id.*, Ex. A4, Claim Nos. 113 & 114, (alleging, for the same provider and same procedural code, for visits approximately one month apart, normal charges of $1,500 and $1,668); *id.*, Ex. A9, Claim Nos. 304 & 313 (alleging, for the same provider and same procedural code, for visits approximately two months apart, normal charges of $13,258 and $15,909.60); *see also* Reply at 3–4).  As additionally noted in the Court's prior bench ruling, "'each patient's assigned claim is an individual breach of contract,' so the provider "must plead enough facts, with enough detailed information, to make these breach-of-contract claims plausible." (Bench Ruling at 3–4 (citing *Electrostim Medical Services Incorporated v. Health Care Services Corporation*, No. 11-2745, 2017 WL 1710567, at *8 (S.D. Tex. May 3, 2017).  The Third Amended Complaint does not meet this standard.  The allegation that Plaintiffs' normal charges equal their full billed charges for all 1,677 claims, without further justification within the Third Amended Complaint, and in light of the discrepancies within the reported charges, is simply implausible.[8]  The Court therefore finds that Plaintiffs have not plausibly alleged their normal charges, and thus have not

---

[8]     Plaintiffs' failure to clearly allege violation of Plan terms is especially concerning in cases such as this one, which was not brought as a class action and in which over a thousand claims have been conglomerated together with little or no effort to individualize them.  This type of pleading raises the inference of claim-dumping and an attempt to circumvent restrictions applicable to formal class actions.  *See Hudson Hosp. Opco, LLC v. CIGNA Health & Life Ins. Co.*, No. 22-4964, 2023 WL 6439893, at *7 n.6 (D.N.J. Oct. 3, 2023); *cf. Sanctuary Surgical Ctr.*, 2013 WL 149356 at *7 ("[T]he court expresses serious reservation over the permissibility of the pursuit of the voluminous claims aggregated in this single proceeding under the Federal Rules of Civil Procedure. With nearly one thousand claims arising from separate transactions and occurrences aggregated in this proceeding, the plaintiffs' complaint appears to structure an impermissible way of circumventing the federal class action requirements, including the requirements of Rule 23.").

plausibly alleged that they were reimbursed below their normal charges in violation of any plan terms.[9]

Plaintiffs' § 502(a)(1)(B) claims are therefore DISMISSED. The dismissal is *with prejudice*. Plaintiffs have had four chances to plead a proper § 502(a)(1)(B) claim (with clear instructions from the Court on how to do so that went unfollowed), and thus further amendment appears futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (noting that a court need not provide leave to amend where such amendment would be "futile"); *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings.").

## B. Breach of Fiduciary Duties of Loyalty and Due Care in Violation of ERISA

In Count II, Plaintiffs allege ERISA-based claims of breach of the fiduciary duties of loyalty and due care. (TAC ¶¶ 305–13). Plaintiffs allege that Cigna "violated its ERISA duties of loyalty and care" by "divert[ing] Cigna Plan funds belonging to Plaintiffs and us[ing] them to pay itself and its third-party repricing companies exorbitant 'cost-containment fees' and 'us[ing] the Cigna Plan funds for its own benefit[,] and deal[ing]. . . the Cigna Plans' assets to a Cigna owned interest bearing bank account and through use of fraudulent misrepresentations made to Plaintiffs[]

---

[9]     Because the Court finds that Plaintiffs' failure to sufficiently and plausibly plead their normal charges is dispositive, the Court declines to address Defendants' other arguments for dismissal of Plaintiffs' § 502(a)(1)(B) claims. (*See, e.g.*, Mov. Br. at 12 –17).

that Plaintiffs were not entitled to the full value of the claims accepted by the Plans to be paid in full." (*Id.* ¶ 312).

Defendants argue that Plaintiffs' fiduciary duty claims should be dismissed for several reasons. (Mov. Br. at 17–20). First, Defendants assert that the claims should be dismissed because they are "premised on the same mistaken assumption as the benefits claim—that the Plans required Cigna to pay Plaintiffs' normal charges—which Plaintiffs have not and cannot plausibly allege." (*Id.* at 17 (internal citation omitted)). Second, they argue that Plaintiffs lack standing to bring these claims because they cannot show "that Cigna's alleged diversion of plan funds caused their injuries, since those fees would not have been paid to Plaintiffs even if Cigna had not applied its cost-containment programs." (*Id.* at 17 (internal citation omitted)). Defendants add that "if any embezzlement involving a breach of fiduciary duty had been successfully alleged (and one was not), it would belong to the plan. There is no allegation that either Plaintiffs or their assignor patients suffered any injury from the facts alleged in connection with this specious embezzlement theory." (*Id.* at 19–20). Defendants further assert that "the only 'direct' victim who could recover damages would be the plan sponsor, not Plaintiffs." (*Id.*). Third, Defendants argue that the fiduciary duty claims should be dismissed as duplicative of Plaintiffs' benefits claims, as Plaintiffs are "seeking the same relief under a fiduciary duty theory as under their ERISA benefits theory." (*Id.* at 18). Finally, Defendants argue that "Plaintiffs' allegations of something nefarious with Cigna administration of Plan funds are conclusory and implausible," noting that "[n]o factual basis appears for this allegation in the pleadings." (*Id.* at 19).

Plaintiffs respond that "the TAC plausibly alleges that Cigna withheld Cigna Plan benefits, curing the sole defect the Court found with Plaintiffs' self-dealing theory." (Opp. at 18). Plaintiffs argue that the allegations supporting its fiduciary duty claims do not mention normal charges but

are "premised on Cigna's independent duties to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of its beneficiaries." (*Id.* at 19–20). Regarding standing, Plaintiffs assert that because "Cigna calculates the cost-containment fees as the difference between the provider's normal charges and the amount by which the claim is underpaid," they have adequately alleged that the money allegedly diverted by Cigna from its plans as "cost-containment fees" would have otherwise been paid to Plaintiffs, and thus they have adequately alleged an injury sufficient to confer upon them standing. (*Id.* at 20). Regarding duplicity, Plaintiffs argue that their fiduciary duty claims "rest[] on an interpretation and application of Cigna's statutory duties to administer the Plans for the exclusive purpose of providing benefits to participants and beneficiaries . . . and to avoid dealing with Cigna Plan assets in Cigna's own interest and for its own account," and therefore the fiduciary duty claims are not duplicative of the benefits claims. (*Id.* at 21). Finally, Plaintiffs contest Defendants' assertion that their fiduciary duty allegations are implausible, arguing that "the TAC explains in detail how Cigna diverted and misused Plan assets and sought to obscure its conduct through multiple interrelated schemes to defraud." (*Id.* at 21).

First, the Court finds that Plaintiffs do not have standing to allege their fiduciary duty claims for disgorgement of profits. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. Const. art. III, § 2. To establish Article III standing to sue, a plaintiff must demonstrate (i) an "injury in fact"; (ii) a "causal connection between the injury and the conduct complained of"; and (iii) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "Generally, disgorgement claims for breach of fiduciary duty do not require that a plaintiff suffer a financial loss, as relief in a disgorgement claim 'is measured by the defendant's

profits.'" *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013).  As noted by Plaintiffs (Opp. at 20), "an ERISA beneficiary suffers an injury-in-fact sufficient to bring a disgorgement claim when a defendant allegedly breaches its fiduciary duty, profits from the breach, and the beneficiary, as opposed to the plan, has an individual right to the profit," which they argue they have alleged in the Third Amended Complaint.  *Edmonson*, 725 F.3d at 418.

It is the Court's understanding, based on the allegations in the Third Amended Complaint, that the cost-containment fees described by Plaintiffs were allegedly paid to Cigna out of Plan funds.  (*See, e.g.*, TAC ¶¶ 232 & 234).  There is no indication in the Third Amended Complaint that those funds themselves would have gone to Plaintiffs if Defendants had acted as Plaintiffs allege they should have and paid Plaintiffs their full normal charges—such an argument is simply speculative.  Simply because Plaintiffs allege that, if Cigna had paid them their normal charges, they would have been paid an amount equal to the amount Cigna was then paid by the Plans in cost-containment fees does not mean that Plaintiffs have an individual right to the cost-containment fees.  *Cf. Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, (3d Cir. 2003) ("[The plaintiff's] claims for restitution and disgorgement rest not only on the troublesome assumption that a factfinder can accurately determine the amount her firm allegedly overpaid [her insurer], but also on the notion that the firm would have passed these savings on to its employees in the form of a higher salary or additional benefits.  We find this reasoning far too speculative to serve as the basis for a claim of individual loss and thus conclude that [the plaintiff] lacks standing to seek restitution or disgorgement.").  Plaintiffs have therefore not sufficiently alleged an injury from Defendants' alleged breach of fiduciary duties sufficient to assert a claim for disgorgement of profits.  But Plaintiffs "need not demonstrate actual harm in order to have standing to seek injunctive relief requiring that [Cigna] satisfy its statutorily-created . . . fiduciary responsibilities."

*Horvath*, 333 F.3d at 456.  Thus, Defendants' injury arguments do not apply to Plaintiffs' requests for injunctive relief for their fiduciary duty claims, and the Court sees no reason why Plaintiffs do not have standing to request injunctive relief on those claims.

However, as the Court previously held in its Bench Ruling dismissing the Second Amended Complaint, Plaintiffs' ERISA-based claims of breach of fiduciary duties of loyalty and due care necessarily fail because these claims derive from the allegation that Defendants underpaid Plaintiffs in violation of the relevant Plans, and Plaintiffs have not, as described above, "plausibly pleaded that Cigna wrongfully withheld benefits."  (Bench Ruling at 4).  All of Plaintiffs' claims for breach of fiduciary duty involve Defendants misappropriating funds allegedly owed to Plaintiffs, which in turn is based on underpayment of the plans, which has only been alleged via the failure to pay Plaintiffs' normal charges.  Because, as explained above, Plaintiffs have not adequately alleged that Defendants failed to reimburse Plaintiffs at their normal charges and thus underpaid Plaintiffs under the Plans, the fiduciary duty claims cannot succeed.  *See Hudson Hosp. Opco, LLC v. CIGNA Health & Life Ins. Co.*, No. 22-4964, 2023 WL 6439893, at *10 (D.N.J. Oct. 3, 2023) ("Plaintiffs' § 502(a)(3) claims all derive from the allegation that Defendants underpaid them in violation of the relevant Plans—an allegation that, as described, Plaintiffs have failed to properly plead. . . . Thus, Plaintiffs' § 502(a)(3) claims fail as well.");  *cf. Plastic Surgery Ctr., P.A. v. Cigna Health and Life Ins. Co.*, No. 17–2055, 2018 WL 2441768, at *14, n.14 (D.N.J. May 31, 2018) ("[T]he Court has already ruled that Plaintiff has failed to adequately plead a negligent misrepresentation claim, and thus, this allegation cannot serve as the basis for Plaintiff's § 502(a)(3) claim.").  Plaintiffs' fiduciary duty claims under Count II are therefore DISMISSED.[10]

---

[10]    Because the Court finds that Plaintiffs have not adequately alleged their fiduciary duty claims, the Court does not reach Defendants' remaining arguments in favor of dismissing these claims.

The dismissal is *with prejudice* because, as the Court explained above, further amendment regarding Plaintiffs' allegations of underpayment appears futile, and therefore further amendment of the fiduciary duty claims premised upon underpayment also appears futile.

### C. RICO Claims

Plaintiffs bring several RICO claims: violation of 18 U.S.C. § 1962(c), violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), violation of 18 U.S.C. § 1962(a), and violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).  (TAC ¶¶ 314–362).  The gist of Plaintiffs' RICO claims is that Defendants allegedly conducted a pattern of racketeering activity by fraudulently using "the mails and wires," and performing "multiple acts of embezzlement, theft, and unlawful conversion or abstraction of [Plan] assets."  (*Id.* ¶¶ 20–33). Defendants' alleged schemes in violation of RICO include: (i) issuing "false and inconsistent statements on Cigna-issued Electronic Remittance Advice or paper Explanation of Benefits/Payment forms" (*id.* ¶ 23); (ii) "misrepresent[ing] to Plaintiffs, Cigna Subscribers, and the Cigna Plans, that Cigna drastically underpaid Plaintiffs' claims purportedly because of a 'contract' between an individual Plaintiff and Cigna as an in-network provider, or with a third-party leasing contractor or negotiator couched as a repricing company . . . to accept discounted rates" (*id.* ¶ 26); (iii) "conspiring with the Repricing Companies to underpay Plaintiffs' Cigna Claims via a euphemistically named 'cost-containment process' that it misrepresents to the ASO Plans as a cost-savings mechanism to save the ASO Plans money on out-of-network claims administration" (*id.* ¶ 27); and (iv) "forc[ing] out-of-network providers like Plaintiffs to enter into negotiations for payment of valid claims, by misrepresenting to Plaintiffs that the Cigna Plans pay less than they actually do" (*id.* ¶ 28).

Defendants argue that Plaintiffs' RICO 18 U.S.C. § 1962(c) claims must be dismissed because Plaintiffs have failed to sufficiently allege RICO injury or causation. (Mov. Br. at 34–39). More specifically, Defendants assert that Plaintiffs "have not plausibly alleged that any Plans require their claims to be paid at 100% of billed charges (alleged in the TAC to be Plaintiffs' 'normal' charges)," and that "[w]ithout showing that they were entitled to be paid their billed charges but received something less, Plaintiffs cannot show that they have suffered a 'concrete financial loss' or an 'actual monetary loss,' which means they have not stated a RICO injury." (*Id.* at 35). In addition, Defendants argue that Plaintiffs' RICO 18 U.S.C. § 1962(a) claims fail because such claims "require[] an injury that flows "from the *use or investment* of racketeering income— a so-called investment-injury—rather than an injury that flows from the predicate racketeering acts *themselves*." (*Id.* at 37–38). Because, Defendants argue, Plaintiffs' "allegations make clear that their supposed Section 1962(a) injury does not flow from Cigna's alleged use of investment of racketeering income" but rather "the same harm as under their Section 1962(c) claim"—i.e., the wrongful denial of benefits—Plaintiffs have failed to allege a sufficient injury for a § 1962(a) claim as well. (*Id.* at 38). Finally, Defendants argue that "[b]ecause Plaintiffs' Section 1962(a) and (c) claims fail on the pleadings for reasons described above, their derivative conspiracy counts should also be dismissed." (*Id.* at 39).

Plaintiffs respond that "[t]he sole defect the Court found with [the RICO] Counts was that Plaintiffs had not plausibly pled an entitlement to additional benefits and, therefore, had not plausibly alleged a RICO injury," and assert that they have corrected that error. (Opp. at 21–22). Plaintiffs assert that they have properly alleged injury due to the alleged RICO violations because they have alleged (i) "that Cigna's misconduct has resulted in Plaintiffs' being underpaid under the terms of the Plans or as otherwise required by law"; (ii) that they "lost revenues as the result

of patients being dissuaded from seeking healthcare from Plaintiffs due to Cigna's misconduct"; and (iii) that they expended "cost[s] in time, person hours, and other administrative expenses incurred because of Cigna's unlawful conduct." (Opp. at 36–37). Finally, Plaintiffs argue that they have sufficiently alleged investment-based injury under 18 U.S.C. § 1962(a), as "Plaintiffs' § 1962(a) claim alleges distinct harms, including "diversion of Cigna Plan Funds otherwise due and payable to Plaintiffs away from Plaintiffs and into Cigna and its Repricing Companies.'" (*Id.* at 39–40).

The Court agrees with Defendants: Plaintiffs have once more failed to allege injury sufficient to support their RICO claims. The Court stated in its previous Bench Ruling when dismissing Plaintiffs' RICO claims:

> To have standing to bring a RICO claim, a plaintiff must show "(1) that he was injured (2) by reason of a violation of § 1962." *Anderson v. Ayling*, 396 F.3d 265, 269 (Third Circuit 2005). Because Plaintiffs have not plausibly pled an entitlement to additional benefits, as previously discussed, they have not plausibly pled a RICO injury in the form of underpayments caused by Cigna's purported racketeering activities. Same too with their "patient steering" theory, which appears to rest on a determination that they are entitled to more under the Cigna Plans and therefore should not have to "balance bill the patient," which in turn dissuades patients from seeking their services. . . . Finally, to the extent Plaintiffs incurred additional costs in having to fight Cigna for additional benefits, that injury seems also to rest on a determination that Plaintiffs were actually due those benefits.

(Bench Ruling at 6–7). Nothing in the Third Amended Complaint or Plaintiffs' briefing indicates to this Court that the Third Amended Complaint fixes these deficiencies. As described above, Plaintiffs have once more failed to sufficiently allege that they were underpaid under the Plans, because they have failed to allege their normal charges. They have thus also failed to allege an injury caused by Defendants' RICO violations.

Further, for the § 1962(a) claims, Plaintiffs have additionally failed to allege injury "specifically linked to the use or investment of income in any named enterprise." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991). Section 1962(a) makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income" in any enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). The provision "requires that a plaintiff's injury be caused by the use or investment of income in [an] enterprise." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir. 1991) (quoting *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989); *see also Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 360 (3d Cir. 2010). All of the harms alleged by Plaintiffs stem from Defendants' predicate acts themselves—underpayment—not investment of the proceeds of such acts. The Court is unpersuaded by Plaintiffs' cursory argument that they have alleged investment-based harm by alleging "diversion of Cigna Plan Funds otherwise due and payable to Plaintiffs away from Plaintiffs and into Cigna and its Repricing Companies," because Plaintiffs do not explain how the *investment* of the funds—rather than the mere failure to pay Plaintiffs what they allege they were owed—harmed them. Thus, Plaintiffs have failed to allege a sufficient injury to support their § 1962(a) claims.[11] And, because Plaintiffs' RICO claims fail, their RICO conspiracy claims under 18 U.S.C. § 1962(d) necessarily fail as well. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). Thus, Plaintiffs' RICO claims are dismissed. The dismissal is *with prejudice* because, as the Court explained above, further

---

[11]     Because the Court finds that Plaintiffs do not have standing to bring their RICO claims, the Court declines to address Defendants' arguments regarding the merits of those claims.

amendment regarding Plaintiffs' allegations of underpayment appears futile, and therefore further amendment of the RICO claims (which are premised upon underpayment) also appears futile.

### D. State Law Claims

Plaintiffs' remaining claims—breach of contract (Count VII) and breach of the covenant of good faith and fair dealing (Count VII)—all fall under state law.  Because the Court is dismissing the only federal claims in this case,[12] the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3) ("[T]he district court[ ] may decline to exercise supplemental jurisdiction [if] . . . the district court has dismissed all claims over which it has original jurisdiction."); *Demaria v. Horizon Healthcare Servs.*, No. 11-7298, 2012 WL 5472116, at *5 (D.N.J. Nov. 9, 2012) (dismissing ERISA claims and declining to exercise supplemental jurisdiction over remaining state law claims); *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs.*, No. 19-8783, 2021 WL 3661326, at *8–9 (D.N.J. Aug. 18, 2021) (same); *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

---

[12]     Federal jurisdiction in this case is premised solely on 28 U.S.C. § 1331 federal question jurisdiction and supplemental jurisdiction.  (TAC ¶¶ 60–62).

## IV.      CONCLUSION

For the reasons stated above, Defendant's Motion to dismiss the Third Amended Complaint

is **GRANTED**.  The Third Amended Complaint is dismissed *with prejudice*.  An appropriate Order

follows.


**Dated:** June 25, 2024                                         *s/Esther Salas*
                                                                **Esther Salas, U.S.D.J.**